IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) C.A. No. 06-544-GMS |
| TD BANKNORTH INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; COMERICA INCORPORATED; COMERICA BANK & TRUST, NATIONAL ASSOCIATION; COMERICA SECURITIES, INC.; CERIDIAN CORPORATION; COMDATA CORPORATION; DILLARD'S, INC.' DILLARD INVESTMENT CO., INC.; LASALLE BANK CORPORATION; LASALLE BANK NATIONAL ASSOCIATION; LASALLE FINANCIAL SERVICES, INC.; ABN AMRO MORTGAGE GROUP, INC., | ) ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

---

### DEFENDANT TD BANKNORTH INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S COMPLAINT FOR PATENT INFRINGEMENT

Defendant TD Banknorth Inc. ("TD Banknorth") hereby sets forth its Answer,

Affirmative Defenses and Counterclaim to the Complaint for Patent Infringement of Plaintiff

Ronald A. Katz Technology Licensing, L.P. ('RAKTL" or "Plaintiff"), filed on September 1,

2006 ("Complaint").

### TD BANKNORTH'S ANSWER

Responding to the individually enumerated paragraphs of the Complaint, TD Banknorth

states as follows:

**The Parties**

1.    Denied.  TD Banknorth lacks sufficient information to form a belief as to the truth of the averments of Paragraph 1 of the Complaint, and therefore denies them.

2.    Admitted.  TD Banknorth admits that it is a Delaware corporation with its principal executive offices located at Two Portland Square, Portland, ME 04112-9540.

3.    Denied.  The averments of Paragraph 3 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

4.    Denied.  The averments of Paragraph 4 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

5.    Denied.  The averments of Paragraph 5 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

6.    Denied.  The averments of Paragraph 6 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

7.    Denied.  The averments of Paragraph 7 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD

Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

8.    Denied.  The averments of Paragraph 8 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

9.    Denied.  The averments of Paragraph 9 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

10.    Denied.  The averments of Paragraph 10 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

11.    Denied.  The averments of Paragraph 11 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

12.    Denied.  The averments of Paragraph 12 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

13.     Denied. The averments of Paragraph 13 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth. Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

14.     Denied. The averments of Paragraph 14 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth. Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

### Jurisdiction and Venue

15.     Admitted in part; denied in part. TD Banknorth admits that the Complaint purports to bring an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 101 *et seq*., but TD Banknorth denies that Plaintiff has any viable claim thereunder. Further answering, TD Banknorth admits that this Court has jurisdiction over the subject matter of the Complaint, but denies the legal sufficiency of Plaintiff's claims and allegations.

16.     Admitted in part, denied in part. TD Banknorth admits that it is a Delaware corporation, that it has designated an agent for service of process in the State of Delaware and that it is subject to this Court's personal jurisdiction, but TD Banknorth denies the legal sufficiency of Plaintiff's claims and allegations.

17.     Denied. The averments of Paragraph 17 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth. Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

18.     Denied.  The averments of Paragraph 18 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

19.     Denied.  The averments of Paragraph 19 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

20.     Denied.  The averments of Paragraph 20 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

21.     Denied.  The averments of Paragraph 21 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those averments, and on that basis denies them.

22.     Admitted in part; denied in part.  TD Banknorth admits that venue with respect to TD Banknorth is proper in this judicial district, but denies the legal sufficiency of Plaintiff's claims and allegations.  Further answering, the remaining averments of Paragraph 22 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth.  Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those remaining averments, and on that basis denies them.

**Background**

23.    Admitted in part; denied in part. TD Banknorth admits that Ronald A. Katz is listed as the named inventor on the face of each of the patents-in-suit. TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining averments in Paragraph 23 of the Complaint, and on that basis denies them.

24.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 24 of the Complaint, and on that basis denies them.

25.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 25 of the Complaint, and on that basis denies them.

26.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 26 of the Complaint, and on that basis denies them.

27.    Admitted in part; denied in part. TD Banknorth admits that Ronald A. Katz is listed as the named inventor on the face of each of the patents-in-suit. TD Banknorth further admits that one of the patents-in-suit, U.S. Patent No. 4,792,968, states on its face that the patent issued on December 20, 1988. Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining averments in Paragraph 27 of the Complaint, and on that basis denies them.

28.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 28 of the Complaint, and on that basis denies them.

29.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 29 of the Complaint, and on that basis denies them.

30.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 30 of the Complaint, and on that basis denies them.

31.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 31 of the Complaint, and on that basis denies them.

32.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 32 of the Complaint, and on that basis denies them.

33.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the averments in Paragraph 33 of the Complaint, and on that basis denies them.

34.    Admitted in part; denied in part. TD Banknorth admits that it has been contacted by A2D, L.P. TD Banknorth further admits that it has not taken a license to any of the patents-in-suit, but denies that any such license is warranted or necessary since TD Banknorth does not infringe any valid, enforceable claim of any of the patents-in-suit. Further answering, the remaining averments of Paragraph 34 of the Complaint are not directed to TD Banknorth and therefore require no answer on the part of TD Banknorth. Further answering, TD Banknorth lacks sufficient information to form a belief as to the truth of those remaining averments, and on that basis denies them.

### The Asserted Patents

35.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 4,792,968 ("the '968 patent") is entitled "Statistical Analysis System For Use With Public Communication Facility" and on its face lists Ronald A. Katz as sole inventor and December 20, 1988 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 35 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

36.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 4,930,150 ("the '150 patent") is entitled "Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and May 29, 1990 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 36 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

37.    Admitted in part; denied in part. TD Banknorth admits that U. S. Patent No. 5,128,984 ("the '984 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and July 7, 1992 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 37 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

38.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,251,252 ("the '252 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 38 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are

deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

39.    Admitted in part; denied in part. TD Banknorth admits that U. S. Patent No. 5,351,285 ("the '285 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and September 27, 1994 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 39 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

40.    Admitted in part, denied in part. TD Banknorth admits that U.S. Patent No. 5,684,863 ("the '863 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and November 4, 1997 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 40 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

41.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,815,551 ("the '551 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and September 29, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 41 of the Complaint are legal conclusions and therefore

require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

42.     Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,828,734 ("the '734 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 27, 1998 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 42 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

43.     Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,898,762 ("the '762 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and April 27, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 43 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

44.     Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,917,893 ("the '893 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as sole inventor and June 29, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the

remaining allegations of Paragraph 44 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

45. Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 5,974,120 ("the '120 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and October 26, 1999 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 45 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

46. Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 6,035,021 ("the '021 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and March 7, 2000 as the issue date, but, for the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the remaining allegations of Paragraph 46 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

47. Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 6,148,065 ("the '065 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and November 14, 2000 as the issue date, but,

for the reasons set forth below, denies that the patent was valid or enforceable. Further

answering, the remaining allegations of Paragraph 47 of the Complaint are legal conclusions and

therefore require no response from TD Banknorth. To the extent those remaining allegations are

deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth

of the remaining allegations, and on that basis denies them.

48.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No.

6,335,965 ("the '965 patent") is entitled "Voice-Data Telephonic Interface Control System" and

on its face lists Ronald A. Katz as sole inventor and January 1, 2002 as the issue date, but, for the

reasons set forth below, denies that the patent is valid or enforceable. Further answering, the

remaining allegations of Paragraph 48 of the Complaint are legal conclusions and therefore

require no response from TD Banknorth. To the extent those remaining allegations are deemed

to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the

remaining allegations, and on that basis denies them.

49.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No.

6,349,134 ("the '134 patent") is entitled "Telephonic-Interface Statistical Analysis System," and

on its face lists Ronald A. Katz as sole inventor and February 19, 2002 as the issue date, but, for

the reasons set forth below, denies that the patent is valid or enforceable. Further answering, the

remaining allegations of Paragraph 49 of the Complaint are legal conclusions and therefore

require no response from TD Banknorth. To the extent those remaining allegations are deemed

to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the

remaining allegations, and on that basis denies them.

50.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No.

6,424,703 ("the '703 patent") is entitled "Telephonic-Interface Lottery System" and on its face

lists Ronald A. Katz as sole inventor and July 23, 2002 as the issue date, but, for the reasons set forth below, denies that the patent was valid or enforceable. Further answering, the remaining allegations of Paragraph 50 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

51.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 6,434,223 ("the '223 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as sole inventor and August 13, 2002 as the issue date, but, for the reasons set forth below, denies that the patent was valid or enforceable. Further answering, the remaining allegations of Paragraph 51 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

52.    Admitted in part; denied in part. TD Banknorth admits that U.S. Patent No. 6,512,415 ("the '415 patent") is entitled "Telephonic Interface Game Control System" and on its face lists Ronald A. Katz as sole inventor and January 28, 2003 as the issue date, but, for the reasons set forth below, denies that the patent was valid or enforceable. Further answering, the remaining allegations of Paragraph 52 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

53.     Admitted in part; denied in part. TD Banknorth admits that U. S. Patent No. 6,678,360 ("the '360 patent") is entitled "Telephonic Interface Statistical Analysis System" and on its face lists Ronald A. Katz as sole inventor and January 13, 2004 as the issue date, but, for the reasons set forth below, denies that the patent was valid or enforceable. Further answering, the remaining allegations of Paragraph 53 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those remaining allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

### First Claim

54.     TD Banknorth repeats and incorporates its answers to the averments of Paragraphs 1- 53 of the Complaint as if set forth herein in full.

55.     Admitted in part; denied in part. TD Banknorth solely admits that some of its subsidiaries provide banking and financial services to customers in Maine, New Hampshire, New York, Vermont, Massachusetts, New Jersey, Pennsylvania and Connecticut. TD Banknorth denies the remaining allegations of Paragraph 55 of the Complaint.

56.     Denied.

57.     Denied. The allegations of Paragraph 57 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

**Second Claim**

62.    TD Banknorth repeats and incorporates its answers to the averments of Paragraphs 1- 53 of the Complaint as if set forth herein in full.

63.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 63 of the Complaint, and on that basis denies them.

64.    Denied. The allegations of Paragraph 64 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 64 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

65.    Denied. The allegations of Paragraph 65 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

66.    Denied. The allegations of Paragraph 66 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 66 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

67.    Denied. The allegations of Paragraph 67 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 67 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

68.    Denied. The allegations of Paragraph 68 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 68 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

69.    Denied. The allegations of Paragraph 69 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 69 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

### Third Claim

70.    TD Banknorth repeats and incorporates its answers to the averments of Paragraphs 1- 53 of the Complaint as if set forth herein in full.

71.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 71 of the Complaint, and on that basis denies them.

72.    Denied. The allegations of Paragraph 72 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 72 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

73.    Denied. The allegations of Paragraph 73 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

74.    Denied. The allegations of Paragraph 74 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 74 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

75.    Denied. The allegations of Paragraph 75 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 75 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

76.    Denied. The allegations of Paragraph 76 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 76 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

77.    Denied. The allegations of Paragraph 77 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 77 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

**Fourth Claim**

78.    TD Banknorth repeats and incorporates its answers to the averments of Paragraphs 1- 53 of the Complaint as if set forth herein in full.

79.    Denied.  TD Banknorth lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 79 of the Complaint, and on that basis denies them

80.    Denied.  The allegations of Paragraph 80 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth.  To the extent Paragraph 80 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

81.    Denied.  The allegations of Paragraph 81 of the Complaint are legal conclusions and therefore require no response from TD Banknorth.  To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

82.    Denied.  The allegations of Paragraph 82 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth.  To the extent Paragraph 82 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

83.    Denied.  The allegations of Paragraph 83 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth.  To the extent Paragraph 83 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

84.    Denied.  The allegations of Paragraph 84 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth.  To

the extent Paragraph 84 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

85.    Denied. The allegations of Paragraph 85 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 85 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

**Fifth Claim**

86.    TD Banknorth repeats and incorporates its answers to the averments of Paragraphs 1- 53 of the Complaint as if set forth herein in full.

87.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 87 of the Complaint, and on that basis denies them.

88.    Denied. The allegations of Paragraph 88 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 88 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

89.    Denied. The allegations of Paragraph 89 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

90.    Denied. The allegations of Paragraph 90 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To

the extent Paragraph 90 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks

sufficient information to form a belief as to the truth of those allegations, and on that basis denies

them.

91.    Denied. The allegations of Paragraph 91 of the Complaint are legal conclusions

and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To

the extent Paragraph 91 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks

sufficient information to form a belief as to the truth of those allegations, and on that basis denies

them.

92.    Denied. The allegations of Paragraph 92 of the Complaint are legal conclusions

and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To

the extent Paragraph 92 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks

sufficient information to form a belief as to the truth of those allegations, and on that basis denies

them.

93.    Denied. The allegations of Paragraph 93 of the Complaint are legal conclusions

and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To

the extent Paragraph 93 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks

sufficient information to form a belief as to the truth of those allegations, and on that basis denies

them.

### Sixth Claim

94.    TD Banknorth repeats and incorporates its answers to the averments of

Paragraphs 1- 53 of the Complaint as if set forth herein in full.

95.    Denied. TD Banknorth lacks sufficient information to form a belief as to the truth

of the allegations of Paragraph 95 of the Complaint, and on that basis denies them.

96.     Denied. The allegations of Paragraph 96 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 96 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

97.     Denied. The allegations of Paragraph 97 of the Complaint are legal conclusions and therefore require no response from TD Banknorth. To the extent those allegations are deemed to allege facts, TD Banknorth lacks sufficient information to form a belief as to the truth of the remaining allegations, and on that basis denies them.

98.     Denied. The allegations of Paragraph 98 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 98 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

99.     Denied. The allegations of Paragraph 99 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 99 is deemed to allege facts directed to TD Banknorth, TD Banknorth lacks sufficient information to form a belief as to the truth of those allegations, and on that basis denies them.

100.     Denied. The allegations of Paragraph 100 of the Complaint are legal conclusions and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To the extent Paragraph 100 is deemed to allege facts directed to TD Banknorth, TD Banknorth

lacks sufficient information to form a belief as to the truth of those allegations, and on that basis

denies them.

101. Denied. The allegations of Paragraph 101 of the Complaint are legal conclusions

and are not directed to TD Banknorth, and therefore require no response from TD Banknorth. To

the extent Paragraph 101 is deemed to allege facts directed to TD Banknorth, TD Banknorth

lacks sufficient information to form a belief as to the truth of those allegations, and on that basis

denies them.

## TD BANKNORTH'S AFFIRMATIVE DEFENSES

TD Banknorth asserts the following affirmative defenses to Plaintiff's Complaint.

### First Affirmative Defense

TD Banknorth does not infringe any claim of the patents-in-suit directly, by inducement

or by contribution.

### Second Affirmative Defense

The claims of the patents-in-suit are invalid for failure to meet the requirements of the

United States Patent Laws, 35 U. S.C. § 1, *et. seq.*, including, but not limited to, 35 U. S.C. §§ 101,

102, 103 and 112.

### Third Affirmative Defense

One or more of the patents-in-suit are unenforceable due to inequitable conduct by

RAKTL, Ronald A. Katz and/or their agents and attorneys before the United States Patent and

Trademark Office as part of the prosecution of the patents-in-suit and the prosecution of related

patent applications as described with particularity in the averments of Count III of TD

Banknorth's Counterclaims below, the averments of which are alleged and incorporated here by reference as if set forth in full.

## Fourth Affirmative Defense

The patents-in-suit are unenforceable by the doctrine of prosecution laches due to the Plaintiff's unreasonable delay in seeking issuance of the patents-in-suit.

## Fifth Affirmative Defense

The claims against TD Banknorth in the Complaint are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel due to Plaintiff's unreasonable delay in asserting the patents-in-suit.

## Sixth Affirmative Defense

The claims against TD Banknorth in the Complaint are barred, at least in part, pursuant to the statute of limitations set forth in 35 U.S.C. § 286, at least with respect to all events occurring more than six years prior to Plaintiff's filing of the Complaint.

## Seventh Affirmative Defense

Plaintiff is barred from recovering damages from TD Banknorth for any alleged infringement of the patents-in-suit until the date Plaintiff provided proper notice to TD Banknorth pursuant to 35 U.S.C. § 287(a).

## Eighth Affirmative Defense

The claims against TD Banknorth in the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

### Ninth Affirmative Defense

The claims against TD Banknorth in the Complaint are barred in whole or in part because Plaintiff has engaged in patent misuse by initiating this sham litigation and trying to enforce the patents-in-suit in bad faith with knowledge that at least one claim in each of the patents-in-suit is invalid.

### Tenth Affirmative Defense

Prosecution history estoppel applies to preclude Plaintiff from maintaining that any claim of the patents-in-suit covers, either literally or under the doctrine of equivalents, any of the accused call processing systems set forth in Paragraph 56 of the Complaint.

### Eleventh Affirmative Defense

The prior art known before the alleged inventions covered by the patents-in-suit limits and restricts the scope of the patents-in-suit so that the accused call processing systems set forth in Paragraph 56 of the Complaint do not infringe any claims of the patents-in-suit.

### Twelfth Affirmative Defense

Plaintiff's claims are barred in whole or in part by express or implied license and/or by the doctrine of patent exhaustion.

### TD BANKNORTH'S COUNTERCLAIMS

As for its counterclaims against RAKTL, TD Banknorth avers as follows:

1.      TD Banknorth is a corporation organized under the laws of the State of Delaware, having executive offices located at Two Portland Square, Portland, ME 04112-9540.

2.     According to Plaintiff's Complaint, RAKTL is a limited partnership organized under the laws of the State of California, having a principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

3.     This Court has subject matter jurisdiction over this actions pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201.

4.     RAKTL is subject to personal jurisdiction in this judicial district at least by virtue of having filed the Complaint with this Court.

5.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## Count I
## (For Declaratory Judgment of Non-Infringement)

6.     TD Banknorth repeats and realleges the allegations of Paragraphs 1-5 of its Counterclaims as if fully set forth herein.

7.     TD Banknorth is not infringing, and has not infringed, either directly, by inducement or contributorily, any valid and asserted claim of the '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968 or '984 Patents (collectively the "Katz asserted patents").

8.     To resolve the legal and factual questions raised by RAKTL, and to afford relief from the uncertainty and controversy that RAKTL's accusations have precipitated, TD Banknorth is entitled to a declaratory judgment that it does not infringe any valid and asserted claims of any of the Katz asserted patents.

## Count II
### (For Declaratory Judgment of Invalidity)

9.      TD Banknorth repeats and realleges the allegations of Paragraphs 1-8 of its

Counterclaims as if fully set forth herein.

10      The claims of the Katz asserted patents are invalid under one or more of the

sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102,

103 and 112.

11.     To resolve the legal and factual questions raised by RAKTL, and to afford relief

from the uncertainty and controversy that RAKTL's accusations have precipitated, TD

Banknorth is entitled to a declaratory judgment that the Katz asserted patents are invalid.

## Count III
### (For Declaratory Judgment of Unenforceability Based on Inequitable Conduct)

12.     TD Banknorth repeats and realleges the allegations of Paragraphs 1-11 of its

Counterclaims as if fully set forth herein.

13.     Each of the patents-in-suit is unenforceable in whole or in part for inequitable

conduct committed before the United States Patent and Trademark Office during the prosecution

of the applications that issued as the patents-in-suit and/or related applications.

14.     During the prosecution of the applications that ultimately led to the issuance of the

patents-in-suit or the applications upon which priority is claimed, the named inventor, Ronald A.

Katz, and/or his attorneys and appointed representatives (collectively "Katz") engaged in

inequitable conduct, thereby rendering the patents-in-suit unenforceable for failure to comply

with the duty of candor in the United States Patent and Trademark Office.

15.     Upon information and belief, Katz exercised a pattern and practice of conduct

during the prosecution of the applications that issued as the patents-in-suit and/or related

applications in the Patent and Trademark Office that violated the duty of candor owed by patent applicants with the intent to deceive the Patent and Trademark Office and its agents into issuing patent claims of a scope beyond any to which Mr. Katz was entitled. This pattern included: (i) failing to disclose material prior art known to Katz; (ii) failing to inform the PTO of inconsistent positions taken during prosecution; (iii) failing to identify and disclose material information from related litigation or proceedings; (iv) failing to inform patent examiners of adverse findings by other examiners; (v) making false claims of priority so as to avoid prior art; and (vi) engaging in a pattern of delaying disclosure of known prior art to the PTO and mischaracterizing the relevance of that prior art.

16.    Katz's repeated and intentional violations of the duty of candor, good faith and honesty, which are set forth in detail below, render the patents-in-suit unenforceable. TD Banknorth's investigation is ongoing. TD Banknorth reserves the right to seek leave to amend its Answer, Affirmative Defenses and Counterclaim to include additional facts or bases of inequitable conduct as they become known.

### Withholding Material Prior Art

### Periphonics

17.    By way of example, upon information and belief, Katz intentionally withheld from the Patent and Trademark Office highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Mr. Katz was not entitled. Upon information and belief, in April 1993, in connection with First Data Resources, Inc. v. West Interactive Corp., CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was

involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the patents-in-suit.

18.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

19.    Katz made the same statements in the applications that issued as U.S. Patent No. 5,561,707 ("the '707 patent") (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

20.    In connection with making these statements and references during prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials. In addition to those submitted, the original West materials further included a number of Periphonics references, including 1) Bank-From-Home Product Description, Publication

#3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095) and 2)

Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide,

Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

21.    The Bank-From-Home reference and the VoicePac reference are highly relevant

to many claims of the patents-in-suit. The Bank-From-Home reference describes such

limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying,

switching, processing, voice generation, verifying credit and designating, as related to callers to

the disclosed system. The VoicePac reference describes such limitations of claims of the

patents-in-suit as interfacing callers to the system and transferring callers to a customer service

representative.

22.    While other references containing Bates numbers within the range of the West

materials were submitted to the Patent and Trademark Office during prosecution of the '707,

'965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references

were, upon information and belief, knowingly withheld during prosecution of at least these

patents with knowledge of their materiality. Katz's failure to disclose this material prior art was

a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and

constitutes inequitable conduct. Thus, at least the '965, '285, '893, '863, '762 and '551 patents

are rendered unenforceable due to the inequitable conduct that occurred during prosecution of

their respective applications.

23.    Other patents-in-suit are directly related to these patents, and are thus rendered

unenforceable through infectious unenforceability. For example, the '134, '065 and '360 patents

have specifications substantially identical to those of the '707, '863, '762 and '551 patents, and

rely for priority on U.S. Patent No. 4,845,739 ("the '739 patent"), also having a substantially

identical specification. The '134, '065 and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '707, '863, '762, '551 and '739 patents. In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

24.    Thus, Katz's inequitable conduct renders each of the '965, '285, '893, '863, '762, '551 '134, '065 and '360 patents unenforceable in its entirety.

**Barger**

25.    In another example, Katz's pattern of misconduct included Katz's failure to disclose to the Patent and Trademark Office U.S. Patent No. 4,071,698 to Barger, Jr. et al. ("the Barger patent") during the prosecution of many of Mr. Katz's patents, including numerous that issued as the patents-in-suit and other applications from which priority is claimed. Upon information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to claims pending before the Patent and Trademark Office.

26.    The Barger patent teaches an interactive voice system for marketing merchandise. The customer selects and listens to an audio demonstration and may arrange payment by credit card or other means. The system maintains a complete record of all transactions, including requests for demonstrations played by each customer, in order to maintain current inventory records and to determine trends. The system can use this transaction history to determine whether a customer is a "free loader," and accordingly limit his access to the system.

27.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains required information from the customer that is placed in a database.

When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer. Upon completion of the demonstration, the customer is returned to a live operator, who will take the order.

28.     Many features disclosed in the Barger patent are relevant to Mr. Katz's claims. For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information. In addition, the Barger patent has been relied upon in third party requests for reexamination of each of the '707 patent and U.S. Patent No. 6,292,547 ("the '547 patent"), which have specifications substantially identical to that of the '739 patent.

29.     Because the Barger patent discloses many of the central features claimed by Mr. Katz, it would have been material to the Patent and Trademark Office in deciding whether to allow Mr. Katz's pending claims. The materiality of the Barger patent was confirmed by the Patent and Trademark Office Board of Patent Appeals And Interferences that, in 1998, affirmed an examiner's rejection of certain of Mr. Katz's pending claims based in part on the teachings of the Barger patent. Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13.

30.     The Barger patent was filed in the Patent and Trademark Office on January 10, 1977, a full eight years before Mr. Katz's first application.

31.     Upon information and belief, Katz became aware of the Barger patent and its materiality to Mr. Katz's claims at least as early as January 1989. Upon information and belief, on or about December 1988, the European Patent Office sent a search report for one of Mr. Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles. Upon information and belief, Mr. Coles sent a copy of the search report to

Byard Nilsson, an attorney handling prosecution of many of Mr. Katz's applications, in January 1989. This search report identified the Barger patent as being "particularly relevant" to Mr. Katz's application.

32.     Notwithstanding Katz's knowledge of the Barger patent and of its materiality as alleged herein, Katz failed to disclose this prior art to the Patent and Trademark Office during the prosecution of at least U.S. Patent Nos. 5,073,929 ("the '929 patent") and the '739, '984, '150, '285 and '965 patents. Katz was under a duty to disclose to the Patent and Trademark Office information material to Mr. Katz's applications (including prior art cited in foreign patent prosecutions). Katz's failure to disclose the Barger patent, with knowledge of its materiality, constitutes inequitable conduct.

33.     On information and belief, Katz deliberately withheld the Barger patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in at least the '739, '929, '984, '150, '285 and '965 patents.

34.     As Katz was aware of both the significance and relevance of the Barger patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '739, '929, '984, '150, '252, '285 and '965 patents constituted inequitable conduct. Other patents-in-suit are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.

35.     At least the '984, '150, '252, '285 and '965 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

36.     The '893, '863, '551, '065, '360, '762 and '134 patents are closely related to at least the '739 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762 and '134 patents any patent term subsequent to the

patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

37.     All of the patents-in-suit except the '968 and '150 patents claim priority from the '739 patent. These patents-in-suit each contain claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which Barger would have been relevant. Thus the '984, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

38.     The '734, '120 and '223 patents claim priority from the '984, '929 and '739 patents.

39.     The '734, '120 and '223 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '984, '929 and '739 patents and to which Barger would have been relevant. Thus, the '734, '120 and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '984, '929 and '739 patents.

40.     The '285, '150 and '739 patents are rendered unenforceable for conduct concerning the Barger patent that occurred during the prosecution thereof.

41.     The '893 patent claims priority to the '285, '150 and '739 patents.

42.     The '893 patent contains claims with subject matter that includes subject matter that was at issue during prosecution of the '285, '150 and '739 patents and to which Barger would have been relevant. Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '285, '150 and '739 patents.

43.    The inequitable conduct concerning the Barger patent renders unenforceable at least the '984, '150, '252, '285, '893, '863, '551, '065, '360, '762,'134, '734, '120, '223 and '965 patents.

### DeBruyn

44.    In another example, Katz withheld European Patent Specification No. 32,410 to DeBruyn (the "DeBruyn patent") from the Patent and Trademark Office during the prosecution of many of Mr. Katz's earlier patents. Upon information and belief, Katz was well aware of the materiality of the DeBruyn patent to Mr. Katz's pending claims.

45.    The DeBruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery. It was cited in the same European search report that identified the Barger patent. Thus, upon information and belief, Katz also became aware of the DeBruyn patent at least as early as January 1989.

46.    The European search report identified the DeBruyn patent as "particularly relevant." The DeBruyn patent is also substantively identical to Canadian Patent 1,162,336 ("the DeBruyn Canadian patent"), which has been relied upon by the Director of the Patent and Trademark Office in ordering the reexamination of several of Mr. Katz's patents related to the patents-in-suit, including the '707 patent and U.S. Patent Nos. 5,255,309 ("the '309 patent") and 5,259,023 ("the '023 patent"). With respect to the '309 patent, for example, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6. The Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 and '707 patents

under 35 U.S.C. § 102. Like most of the patents-in-suit, each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

47.    The DeBruyn patent and DeBruyn Canadian patent disclose many features relevant to Mr. Katz's claims, including receiving a caller's telephone number from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers. For example, an Examiner at the Patent and Trademark Office has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19. The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 under 35 U.S.C. § 103. Id. at 2, 32-43.

48.    The Examiner has further determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21 and 22-27 of the '023 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9. The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22 and 23 under 35 U.S.C. § 103. Id. at 24-26, 28.

49.    On information and belief, Katz deliberately withheld the DeBruyn patent with knowledge of its materiality with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled at least the '739, '252, '150, '929, '984 and '252 patents.

50.    As Katz was aware of both the significance and materiality of the DeBruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during

prosecution of at least the '739, '252, '150, '929, '984 and '252 patents constituted inequitable conduct. At least the '150, '252 and '984 patents asserted against TD Banknorth are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications. Many of the patents-in-suit are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.

51.    The '893, '863, '551, '065, '360, '762 and '134 patents are closely related at least the '739 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762 and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

52.    All of the patents-in-suit except the '968 and '150 patents claim priority from the '739 patent. These patents-in-suit all contain claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which DeBruyn would have been relevant. Thus the '984, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

53.    On information and belief, Katz deliberately withheld the DeBruyn patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in at least the '150 patent.

54.    As Katz was aware of both the significance and relevance of the DeBruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '150 patent constituted inequitable conduct.

55.    The '285 and '893 patents claim priority to the '150 patent.

56.    The '285 and '893 patents all contain claims with subject matter that includes subject matter that was at issue during the '150 patent prosecution and to which DeBruyn would have been relevant.  Thus, the '150, '285 and '893 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150 patent.

57.    On information and belief, Katz deliberately withheld the DeBruyn patent with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in at least the '929 and '984 patents and U.S. Patent No. 5,251,252 ("the '252 patent").

58.    As Katz was aware of both the significance and relevance of the DeBruyn patent as alleged herein, Katz's failure to disclose it to the Patent and Trademark Office during prosecution of at least the '929, '984 and '252 patents constituted inequitable conduct.

59.    The '734, '120 and '223 patents claim priority to the '929, '984 and '252 patents.

60.    The '734, '120 and '223 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '929, '984 and '252 patents and to which DeBruyn would have been relevant.  Thus, the '734, '120 and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '929, '984 and '252 patents.

61.    The inequitable conduct concerning the DeBruyn patent renders unenforceable at least the '984, '150, '252, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '252, '223 and '965 patents.

**Katz PCT Application**

62.    In yet another example, Katz failed to disclose the publication of Mr. Katz's own '375 application (PCT application WO 87/00375) during the prosecution of at least the '739

patent. The published '375 application is highly material because it is relevant to many of the basic elements under consideration by the Patent and Trademark Office.

63.    The '375 application was published on January 15, 1987. The '375 application would therefore be considered prior art for any claims with a filing date more than a year after the publication date (January 15, 1987). 35 U.S.C. § 102(b).

64.    In particular, the published '375 application constituted prior art to all the claims that incorporated any new subject matter added in the application for the '739 patent, which was filed on May 16, 1988.

65.    The published '375 application would have been material to the examiner in determining what claims, if any, Mr. Katz might be entitled to relating to the '739 patent. The published '375 application would have been relevant to many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

66.    The filing date of the application that issued as the '739 patent was more than one year after the '375 publication. Accordingly, Katz's knowing failure to cite this reference to the Patent and Trademark Office as alleged herein constitutes inequitable conduct. As the '739 patent is relied up by Katz as a parent of all of the patents-in-suit except the '968 and '150 patents, these subsequent patents are rendered unenforceable by Katz's earlier omission to the Patent and Trademark Office.

67.    Despite knowledge of this reference and its materiality, Katz did not bring the published '375 application to the attention of the patent examiner during the prosecution of the

'739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

68.    The patents-in-suit all contain claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant, and are thus rendered unenforceable through infectious unenforceability. For example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134 and '739 patents, Katz has disclaimed for each of the '893, '863,'551,'065,'360,'762 and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. The inequitable conduct concerning the '375 application renders unenforceable at least the '984, '252, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents.

### The Yoshizawa Reference

68.    In yet another example, Katz failed to disclose a prior art article entitled "Voice Response System For Telephone Betting" by Yoshizawa, et al. ("the Yoshizawa article") as part of the prosecution of at least US Patent No. 5,365,575 ("the '575 patent") and the '252, '734 and '965 patents. The article appeared in the 1977 issue of Hitachi Review magazine.

69.    The Yoshizawa article discloses an automatic off-track betting system. The system includes a voice response unit, a public telephone network and a central processing unit. Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets, for example, a wager on a horse to "show." The entered data is then stored in the caller's account file. Each wager is counted against a preset daily wagering limit. The caller is provided with a registration number

referencing the transaction. Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account. The article specifically mentions that the system could be used for "winning lot number service," or a lottery.

70.    Many features relevant to at least the '575, '252, '734 and '965 patents are disclosed in the Yoshizawa article. For example, Yoshizawa discloses limiting access and use to a telephone-based gambling or lottery system and qualifying callers based on an account number.

71.    Upon information and belief, Katz was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, well before the issuance of the '575, '252, '734 and '965 patents, when it was cited in response to interrogatories in the First Data Resources, Inc. v. West Interactive Corp., Civil Action No. 91-4471-TJH (C.D. Cal 1991) litigation.

72.    Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality to at least the '575 patent, upon information and belief, Katz failed to disclose the reference to the PTO as part of the prosecution of at least the '575, '252, '734 and '965 patents in violation of Katz's duty of candor.

73.    Upon information and belief, Katz withheld the material Yoshizawa article from the PTO as part of the prosecution of at least the '575, '252, '734 and '965 patents with intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575, '252, '734 and '965 patents unenforceable.

74.    At least the '120, '223, '360, '551, '863 and '893 patents are related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material. Accordingly, at least the '120, '223, '360, '551, '863 and '893 patents are rendered unenforceable by inequitable conduct by Katz's failure to disclose the Yoshizawa article.

### The Corbett Reference

75.    Additionally, upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") as part of the prosecution of at least the '965 and '285 patents-in-suit. Upon information and belief, Katz unreasonably delayed disclosing the Corbett reference to the PTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, '134, '223 and the '252 patents.

76.    Upon information and belief, Katz had knowledge of the Corbett reference and its materiality at least as early as August 13, 1993 when it was disclosed in connection with the First Data Resources Inc. v. West Interactive Corp. litigation in the United States District Court for the Central District of California. Upon information and belief, First Data Resources (which later became known as RAKTL) had knowledge of the Corbett reference in connection with West Interactive's motion for summary judgment of invalidity of the Katz patents at issue in that case.

77.    The Corbett reference is material to certain of the claimed subject matter of at least the '965, '285, '120, '134, '223 and the '252 patents. Corbett teaches use of identification to qualify access to a system (user name and password), limited use based on key numbers relating to limits on use (limiting the number of times a particular user can play a game), selectively repeating cues based on user identification, receiving entry of product identifier to check stock availability and price, and use of a single system to implement several different types of services.

78.    Because the Corbett Reference discloses many of the features claimed in the '965, '285, '120, '134, '223 and '252 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

79.    Upon information and belief, Katz intentionally withheld the material Corbett Reference patent from the PTO during the prosecution of at least the '965 and '285 patents with

the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 and '285 patents unenforceable.

80.    Upon information and belief, Katz intentionally delayed disclosing the material Corbett Reference from the PTO during the prosecution of at least the '120, '134, '223 and the '252 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents. Upon information and belief, Katz also mischaracterized the materiality of the Corbett Reference to the PTO. Upon information and belief, Katz took those actions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120, '134, '223 and the '252 patents unenforceable.

### The Moosemiller Reference

81.    Further, upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "AT&T's Conversant I Voice System" as part of the prosecution of at least the '965 and '734 patents-in-suit with an intent to deceive the PTO.

82.    "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller Reference"), was published in the March/April 1986 issue of "Speech Technology." Upon information and belief, Katz had knowledge of the Moosemiller Reference at least as early as July 21, 1998 in connection with a lawsuit brought by RAKTL and MCI Telecommunications Corp. against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), in which RAKTL asserted that AT&T infringed certain patents owned by RAKTL.

83.     The Moosemiller Reference is material to certain of the claimed subject matter in at least the '965 and '734 patents. Moosemiller discloses use of DNIS to allow advance classification of incoming calls for different applications which are greeted by appropriate transaction prompts, system use in conjunction with ACD/PBX, qualification based on user identification input, bridging to an attendant for help, or completing a partially automated transaction, and application of IVR technology to several areas including financial services, credit authorization, wholesale and retail distribution, sales order entry, direct marketing, transportation scheduling and dispatching, college registration, communication services.

84.     Because the Moosemiller Reference discloses many of the features claimed in the '965 and '734 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

85.     Upon information and belief, Katz intentionally withheld the material Moosemiller Reference patent from the PTO during the prosecution of at least the '965 and '734 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 and '734 patents unenforceable.

### The Daudelin '995 patent

86.     Finally, upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") as part of the prosecution of at least the '120 patent-in-suit.

87.     The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent. The Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers

associated with either business or consumer products. Callers are provided product information and can place orders, using automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

88.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the PTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent claims receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

89.    Upon information and belief, Katz was aware of the Daudelin '995 patent, having cited it to the PTO more than two years prior to the issuance of the '120 patent. Upon information and belief, Katz listed the Daudelin '995 patent in previous IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

90.    Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the PTO during the prosecution of at least the '120 patent with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

91.    The inequitable conduct committed by Katz with respect to the '120 patent taints other related patents, which claim priority to '120 patent and which claim related subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

92.    At least, the '223 patent-in-suit claims priority to the '120 patent and claims subject matter related to the '120 patent to which the Daudelin '995 patent is material. Indeed, at least the '223 and '120 patents share a common specification and related claimed subject matter.

Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.

93.     Accordingly, at least the '120 and '223 patents-in-suit are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the PTO.

### Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During Prosecution Regarding the Daudelin Patent

94.     At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of Katz patents-in-suit and related patents. The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

95.     Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the patents-in-suit and failed to inform the different patent examiners of Katz's inconsistent positions.

96.     For example, as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent as not disclosing "DNIS or like function."

97.     Whereas, contrary to the position Katz took as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent, as part of the prosecution of the '551 patent, as disclosing "DNIS or like function."

98.     Likewise, during the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function."

99.    Subsequently, however, contrary to the positions taken as part of the prosecution of the '551 and '893 patents, Katz took the position as part of the prosecution of the '360 patent that "Daudelin does not teach DNIS."

100.    Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734, '893 and '360 patents-in-suit unenforceable.

101.    At least, the '120 and '223 patents, which are patents-in-suit, claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material. Accordingly, at least the '120 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

102.    Accordingly, at least the '551, '734, '893, '120, '223 and '360 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

### Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During Prosecution Regarding the Riskin Patent

103.    Upon information and belief, Katz also failed to inform the PTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

104.    As part of the prosecution of the US Patent No. 5,048,075 ("the '075 patent"), Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing. . . ."

105.    Contrary to Katz's characterization of the Riskin patent in the '075 patent, Katz maintained as part of the prosecution of the '120 patent-in-suit that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

106.    By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

107.    At least the '223 patent-in-suit claims priority to one or more of the '075 and '120 patents and claims subject matter related to these patent to which the Riskin patent is material. Accordingly, at least the '223 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

108.    Accordingly, at least the '120 and '223 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

**Katz's Intentional Failure to Identify or Disclose**
**Material Information From Related Litigations or Proceedings**

109.    Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the PTO has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising therefrom."

110.    Upon information and belief, as set forth below, as part of the prosecution of several of the patents-in-suit, Katz failed to identify or disclose material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

**Failure to Disclose the <u>West Interactive Corp.</u> Litigation**

111.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska. West alleged, among other things, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several theories including prior use and prior art.

112.    West's allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents-in-suit all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

113.    Upon information and belief, Katz was aware of the <u>West Interactive Corp. v. First Data Resources, Inc.</u> litigation during the prosecution of these patents-in-suit.

114.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the West Interactive Corp. v. First Data Resources, Inc. litigation and of the subject matter of West's allegations to the PTO as part of the prosecution of at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents-in-suit  with the intent deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

### Failure to Disclose the 900 Million, Inc. Litigation

115.    On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

116.    The defendants in the First Data Resources, Inc. v. 900 Million, Inc. litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

117.    The defendants' counterclaims in the First Data Resources, Inc. v. 900 Million, Inc. litigation are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents-in-suit, all of which claim priority to at least the '739 patent.

118.    Upon information and belief, Katz was aware of the First Data Resources, Inc. v. 900 Million, Inc. litigation during the prosecution of these patents-in-suit.

119.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the First Data Resources, Inc. v. 900 Million, Inc. litigation and the subject matter of the defendants' allegations to the PTO as part of the prosecution of at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Failure to Disclose the Second <u>West Interactive Corp.</u> Litigation**

120.    On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 patents as well as US Patent No. 5,014,298 ("the '298 patent).

121.    The defendants in the <u>First Data Resources Inc. v. West Interactive Corp.</u> litigation filed a counterclaim alleging, among other things, the invalidity and unenforceability of the '739, '298 and '150 patents.

122.    The defendants' allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120 and '134 patents-in-suit, all of which claim priority to at least the '739 patent.

123.    Upon information and belief, Katz was aware of the <u>First Data Resources Inc. v. West Interactive Corp.</u> litigation during the prosecution of these patents-in-suit.

124.    Nonetheless, upon information and belief, as part of the prosecution of at least the '863, '551, '734, '893, '120 and '134 patents-in-suit, Katz failed to disclose to the PTO the existence of the <u>First Data Resources Inc. v. West Interactive Corp.</u> litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Failure to Disclose the <u>Micro Voice Applications, Inc.</u> Litigation**

125.    On February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern

District of California for infringement of the '739, '153, '252, '285, '863 and '734 patents and U.S. Patent Nos. 5,259,023 ("the '023 patent") and 5,561,707 ("the '707 patent").

126.    In response to RAKTL's Complaint, the defendants in the <u>RAKTL v. Micro Voice Applications, Inc.</u> litigation, alleged, among other things, that the '739, '153, '252, '023, '285, '707, '863 and '734 patents were invalid and/or unenforceable.

127.    The defendant's allegations in the <u>Micro Voice Applications, Inc.</u> litigation are material to at least the '965 and '134 patents-in-suit, which are related patents to the patents at issue in that suit.

128.    Upon information and belief, Katz was aware of the <u>Micro Voice Applications, Inc.</u> litigation during the prosecution of these patents-in-suit.

129.    Nonetheless, upon information and belief, as part of the prosecution of at least the '965 patent-in-suit, Katz intentionally failed to disclose to the PTO of the existence of the <u>Micro Voice Applications, Inc.</u> litigation (or in the case of the '134 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

## Failure to Disclose the <u>AT&T Corp.</u> Litigation

130.    On July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '023, '285, '120, '707 and '863 patents and U.S. Patent Nos. 5,218,631 ("the '631 patent"), 5,349,633 ("the '633 patent") and 5,359,645 ("the '645 patent").

131.    In reply, AT&T Corp. asserted, among other things, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents were invalid.

132    AT&T Corp.'s allegations in the <u>RAKTL v. AT&T Corp.</u> litigation are material to at least the '893 and '120 patents-in-suit, which are related to and claim related subject matter to the patents involved in that litigation.

133.    Upon information and belief, Katz was aware of the <u>AT&T Corp.</u> litigation during the prosecution of the '893 and '120 patents-in-suit.

134.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the <u>AT&T Corp.</u> litigation and of the subject matter of AT&T Corp.'s allegations to the PTO as part of the prosecution of at least the '893 and '120 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Failure to Disclose Patent Interference No. 103,697**

135.    Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996. One conclusion of the Board of Patent Appeals and Interferences in that patent inference was that the '968 patent specification did not provide written support for certain limitations claimed by Katz, which included transferring calls to an operator in certain circumstances.

136.    The Board of Patent Appeals and Interferences' conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '965, '734, '893, '120 and '134 patents-in-suit, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art. Indeed,

upon information and belief, all of these patents-in-suit claim priority to the '968 patent, and many of them, including at least the '863 and '134 patents, are disclaimed with respect to the '968 patent.

137.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the existence of Patent Interference No. 103,697 and the Board of Patent Appeals and Interferences' findings to the patent examiners of at least the '863, '965, '734, '893, '120 and '134 patents-in-suit with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

## Failure to Disclose Adverse Findings From Appeal Rulings

138.    Upon information and belief, Katz failed to inform the patent examiners of certain of the patents-in-suit of the existence and outcome of certain Appeal Rulings of related patents that were adverse or contrary to positions Katz took during the prosecution of the patents-in-suit.

139.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents-in-suit, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

140.    The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '893, '120, '965 and '134 patents with respect to any claims reciting a multiple format limitation.

141.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the PTO into issuing patent claims of a scope beyond

which Katz was entitled, thereby committing inequitable conduct and rendering at least the '734,
'893, '120, '965 and '134 patents unenforceable.

142.    The inequitable conduct committed by Katz with respect to the '734, '893, '120,
'965 and '134 patents taints other related patents, which claim priority to these patents and which
claim related subject matter to which the Board of Patent Appeals and Interferences' finding with
respect to the scope of disclosure of the Barger patent would have been material, thereby,
rendering these related patents, including at least the '223 and '360 patents, unenforceable.

### False and Misleading Statements

143.    Upon information and belief, to obtain from the Patent and Trademark Office
claims to which Mr. Katz was not entitled, Katz made false and misleading statements about the
priority dates to which claims of pending applications were entitled, with the intent to thereby
remove as prior art references that were before the Patent and Trademark Office in Mr. Katz's
pending applications.

144.    Katz's pattern and practice of inequitable conduct was repeated during the
prosecution of other applications leading to the patents-in-suit, infecting either directly or
indirectly all of the applications, and thereby rendering all of the patents-in-suit unenforceable in
their entirety.

145.    By way of example, this pattern of misconduct included statements made by Katz
during prosecution of application serial number 07/425,779, which issued as the '984 patent.
Specifically, during prosecution of application serial number 07/425,779, Katz made the false
claim that an international application WO 87/00375 ("the '375 application") "is not properly a
reference against the present case." Katz's Amendment dated June 20, 1991. Upon information
and belief, Katz's statement was knowingly false and in violation of the duty of candor owed by

patent applicants to the Patent and Trademark Office in that the '375 application was in fact properly cited by the Patent Examiner as a reference.

147.    Likewise, during prosecution of the '734 patent, Katz identified U. S. Patent No. 4,792,461 to ("the Brown patent") to the PTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12. In fact, the relevant pending application's claims did not predate Brown because in the '150 patent there is no suggestion of multiple call modes, as claimed in the '734 patent. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

148.    Similarly, upon information and belief, during prosecution of the '734 patent, Katz used the same approach to mislead the patent examiner in order to antedate a prior art reference by Hester. Katz stated "the reference by Hester bears a date of 1985, apparently 'September'. In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." The parent application Katz referenced, however, does not disclose toll free calls nor 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such limitations is entitled to claim priority to that parent application's filing date. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Hester reference.

149.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz mischaracterized his pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon

information and belief, Katz's statement was false at the time it was made since there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter, and were, therefore, not entitled to an earlier priority date. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

150.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

151.    The '120 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120 and '223 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '984 and '734 patents also renders the '120 and '223 patents unenforceable.

152.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents-in-suit and/or other related patents that infected, either directly or indirectly, all of the patents-in-suit, thereby rendering them unenforceable for inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, TD Banknorth respectfully requests that this Court enter judgment in its favor and grant the following relief:

1.    A declaration that TD Banknorth has not infringed any valid and asserted claim of any of the Katz asserted patents;

2.    A declaration that the Katz asserted patents are invalid;

3.    A declaration that the patents-in-suit are unenforceable;

4.    Dismissal of all of Plaintiff's claims in their entirety with prejudice;

5.    A declaration that Plaintiff take nothing by way of its Complaint;

6.    A declaration that this case is exceptional and awarding TD Banknorth its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

7.    Such additional relief as the Court may deem appropriate and just under the circumstances.

OF COUNSEL:

Martin J. Black
Andrew J. Mottes
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793


Dated: October 26, 2006

William J. Wade (#704)
Anne Shea Gaza (#4093)
wade@rlf.com
gaza@rlf.com
Richards, Layton & Finger P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
 *Attorneys for Defendant*
 *TD Banknorth, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

Mary B. Graham
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Richard L. Horwitz
Potter Anderson & Corroon, LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Paul J. Lockwood
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Philip A. Rovner
Potter Anderson & Corroon, LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

I hereby certify that on October 26, 2006, I caused to be sent by Federal Express the

foregoing document to the following non-registered participant:

Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Thomas Dunham
Howrey LLP
1299 Pennsylvania Ave, NW
Washington, DC 20004

Daniel A. DeVito
Guy Perry
Marti Johnson
Elizabeth Weiskopf
Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, NY 10036

Kenneth R. Adamo
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Samuel J. Najim
Olivia E. Marbutt
Jones Day
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053

David Roodman
Lisa Martin
Ameer Gado
Bryan Cave LLP
One Metropolitan Sq.
211 N. Broadway, Suite 3600
St. Louis, MO 63102

Kevin G. McBride
Jones Day
555 South Flower St.
Fiftieth Floor
Los Angeles, CA 90071

Anne Shea Gaza
Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700