**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) C. A. No. 06-544 (GMS) |
| TD BANKNORTH INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; COMERICA INCORPORATED; COMERICA BANK & TRUST, NATIONAL ASSOCIATION; COMERICA SECURITIES, INC.; CERIDIAN CORPORATION; COMDATA CORPORATION; DILLARD'S INC.; DILLARD INVESTMENT CO., INC.; LASALLE BANK CORPORATION; LASALLE BANK NATIONAL ASSOCIATION; LASALLE FINANCIAL SERVICES, INC.; ABN AMRO MORTGAGE GROUP, INC., | ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**CERIDIAN CORPORATION AND COMDATA NETWORK, INC.'S
ANSWER AND COUNTERCLAIMS TO RONALD A. KATZ TECHNOLOGY
LICENSING, L.P.'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendants Ceridian Corporation and Comdata Network, Inc. (collectively

"Ceridian") hereby answer plaintiff Ronald A. Katz Technology Licensing, L.P.'s

("RAKTL") Complaint For Patent Infringement ("Complaint") as follows:

**THE PARTIES**

1.    Ceridian lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 1 of the Complaint and therefore denies the same.

2.    Ceridian lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 2 of the Complaint and therefore denies the same.

3.    Ceridian lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 3 of the Complaint and therefore denies the same.

4.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore denies the same.

5.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies the same.

6.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies the same.

7.    Ceridian admits the allegations of paragraph 7 of the Complaint.

8.    Ceridian admits Comdata Network, Inc. has its principal place of business at 5301 Maryland Way, Brentwood, Tennessee 37027. Ceridian further admits that Comdata Network, Inc. is a subsidiary of Ceridian Corporation. Ceridian denies the remaining allegations in paragraph 8 of the Complaint.

9.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore denies the same.

10.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore denies the same.

11.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies the same.

12.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and therefore denies the same.

14.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint and therefore denies the same.

## JURISDICTION AND VENUE

15.     Ceridian admits that this is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. §§101 *et seq*. Ceridian admits that this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

16.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies the same.

19.     Ceridian admits it is subject to this Court's personal jurisdiction because it does substantial business in this judicial district. Ceridian further admits that it has a registered agent for service of process in the State of Delaware. Ceridian denies the remaining allegations in paragraph 19 of the Complaint.

20.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and therefore denies the same.

21.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and therefore denies the same.

22.    Ceridian denies the allegations in paragraph 22 of the Complaint.

## BACKGROUND

23.    Ceridian admits that on their face, U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,930,150 ("the '150 patent"), 5,128,984 ("the '984 patent"), 5,251,252 ("the '252 patent"), 5,351,285 ("the '285 patent"), 5,684,863 ("the '863 patent"), 5,815,551 ("the '551 patent"), 5,828,734 ("the '734 patent"), 5,898,762 ("the '762 patent"), 5,917,893 ("the '893 patent"), 5,974,120 ("the '120 patent"), 6,035,021 ("the '021 patent"), 6,148,065 ("the '065 patent"), 6,335,965 ("the '965 patent"), 6,349,134 ("the '134 patent"), 6,424,703 ("the '703 patent"), 6,434,223 ("the '223 patent"), 6,512,415 ("the '415 patent") and 6,678,360 ("the '360 patent") list Ronald A. Katz as inventor. Ceridian denies the remaining allegations in paragraph 23 of the Complaint.

24.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies the same.

25.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and therefore denies the same.

26.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 and therefore denies the same.

27.    Ceridian admits that on its face, the '968 patent lists December 20, 1988 as the issue date.  Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27 and therefore denies the same.

28.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore denies the same.

29.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies the same.

30.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore denies the same.

31.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore denies the same.

32.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and therefore denies the same.

33.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and therefore denies the same.

34.    Ceridian denies that it employs the inventions of the '968, '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents.  Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 and therefore denies the same.

## THE ASSERTED PATENTS

35.    Ceridian admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face lists Ronald A. Katz as sole inventor and December 20, 1988 as the issue date.  Ceridian denies the remaining allegations in paragraph 35 of the Complaint.

36.    Ceridian admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and May 29, 1990 as the issue date.  Ceridian denies the remaining allegations in paragraph 36 of the Complaint.

37.    Ceridian admits that the '984 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole

inventor and July 7, 1992 as the issue date. Ceridian denies the remaining allegations in paragraph 37 of the Complaint.

38.     Ceridian admits that the '252 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date. Ceridian denies the remaining allegations in paragraph 38 of the Complaint.

39.     Ceridian admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and September 27, 1994 as the issue date. Ceridian denies the remaining allegations in paragraph 39 of the Complaint.

40.     Ceridian admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 4, 1997 as the issue date. Ceridian denies the remaining allegations in paragraph 40 of the Complaint.

41.     Ceridian admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and September 29, 1998 as the issue date. Ceridian denies the remaining allegations in paragraph 41 of the Complaint.

42.     Ceridian admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 27, 1998 as the issue date. Ceridian denies the remaining allegations in paragraph 42 of the Complaint.

43.     Ceridian admits that the '762 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and April 27, 1999 as the issue date. Ceridian denies the remaining allegations in paragraph 43 of the Complaint.

44.    Ceridian admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and June 29, 1999 as the issue date. Ceridian denies the remaining allegations in paragraph 44 of the Complaint.

45.    Ceridian admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 26, 1999 as the issue date. Ceridian denies the remaining allegations in paragraph 45 of the Complaint.

46.    Ceridian admits that the '021 patent is entitled "Telephone-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and March 7, 2000 as the issue date. Ceridian admits that the term of the '021 patent extended no later than December 20, 2005. Ceridian denies the remaining allegations in paragraph 46 of the Complaint.

47.    Ceridian admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 14, 2000 as the issue date. Ceridian admits that the term of the '065 patent extended no later than July 10, 2005. Ceridian denies the remaining allegations in paragraph 47 of the Complaint.

48.    Ceridian admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and January 1, 2002 as the issue date. Ceridian denies the remaining allegations in paragraph 48 of the Complaint.

49.    Ceridian admits that the '134 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and February 19, 2002 as the issue date. Ceridian denies the remaining allegations in paragraph 49 of the Complaint.

50.    Ceridian admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and July 23, 2002 as the issue date.  Ceridian admits that the term of the '703 patent extended no later than July 10, 2005.  Ceridian denies the remaining allegations in paragraph 50 of the Complaint.

51.    Ceridian admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and August 13, 2002 as the issue date.  Ceridian admits that the term of the '223 patent extended no later than July 10, 2005.  Ceridian denies the remaining allegations in paragraph 51 of the Complaint.

52.    Ceridian admits that the '415 patent is entitled "Telephonic-Interface Game Control System," and on its face lists Ronald A. Katz as sole inventor and January 28, 2003 as the issue date.  Ceridian admits that the term of the '415 patent extended no later than July 10, 2005.  Ceridian denies the remaining allegations in paragraph 52 of the Complaint.

53.    Ceridian admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and January 13, 2004 as the issue date.  Ceridian admits that the term of the '360 patent extended no later than July 10, 2005.  Ceridian denies the remaining allegations in paragraph 53 of the Complaint.

## FIRST CLAIM
### (PATENT INFRINGEMENT BY TD BANKNORTH)

54.    Ceridian incorporates by reference its responses to paragraphs 1-53.

55.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint and therefore denies the same.

56.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint and therefore denies the same.

57.    Ceridian admits that on their face the '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list Ronald A. Katz as inventor and the '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list RAKTL as the assignee.  Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 and therefore denies the same.

58.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint and therefore denies the same.

59.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint and therefore denies the same.

60.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint and therefore denies the same.

61.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint and therefore denies the same.

**SECOND CLAIM**
**(PATENT INFRINGEMENT BY EXPERIAN)**

62.    Ceridian incorporates by reference its responses to paragraphs 1-53.

63.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint and therefore denies the same.

64.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint and therefore denies the same.

65.    Ceridian admits that on their face the '065, '120, '150, '223, '252, '285, '360, '415, '551, '734, '762, '863, '965, '968, and '984 patents list Ronald A. Katz as inventor and the '065, '120, '150, '223, '252, '285, '360, '415, '551, '734, '762, '863, '965, '968, and '984 patents list RAKTL as the assignee. Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 and therefore denies the same.

66.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint and therefore denies the same.

67.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint and therefore denies the same.

68.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint and therefore denies the same.

69.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 of the Complaint and therefore denies the same.

### THIRD CLAIM
### (PATENT INFRINGEMENT BY COMERICA DEFENDANTS)

70.    Ceridian incorporates by reference its responses to paragraphs 1-53.

71.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint and therefore denies the same.

72.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 of the Complaint and therefore denies the same.

73.    Ceridian admits that on their face the '120, '134, '150, '223, '252, '285, '551, '734, '762, '863, '968, and '984 patents list Ronald A. Katz as inventor and the '120, '134, '150, '223, '252, '285, '551, '734, '762, '863, '968, and '984 patents list RAKTL as the assignee.  Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73 and therefore denies the same.

74.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the Complaint and therefore denies the same.

75.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 of the Complaint and therefore denies the same.

76.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the Complaint and therefore denies the same.

77.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint and therefore denies the same.

## FOURTH CLAIM
### (PATENT INFRINGEMENT BY CERIDIAN DEFENDANTS)

78.    Ceridian incorporates by reference its responses to paragraphs 1-53.

79.    Ceridian admits the allegations of paragraph 79 of the Complaint.

80.    Ceridian denies the allegations of paragraph 80 of the Complaint.

81.    Ceridian admits that on their face the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list Ronald A. Katz as inventor and the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list RAKTL as the assignee. Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 and therefore denies the same.

82.    Ceridian denies the allegations of paragraph 82 of the Complaint.

83.    Ceridian denies the allegations of paragraph 83 of the Complaint.

84.    Ceridian denies the allegations of paragraph 84 of the Complaint.

85.    Ceridian denies the allegations of paragraph 85 of the Complaint.

**FIFTH CLAIM**
**(PATENT INFRINGEMENT BY DILLARD'S DEFENDANTS)**

86.    Ceridian incorporates by reference its responses to paragraphs 1-53.

87.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint and therefore denies the same.

88.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint and therefore denies the same.

89.    Ceridian admits that on their face the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list Ronald A. Katz as inventor and the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents list RAKTL as the assignee. Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 89 and therefore denies the same.

90.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint and therefore denies the same.

91.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91 of the Complaint and therefore denies the same.

92.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint and therefore denies the same.

93.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint and therefore denies the same.

**SIXTH CLAIM**
**(PATENT INFRINGEMENT BY LASALLE DEFENDANTS)**

94.    Ceridian incorporates by reference its responses to paragraphs 1-53.

95.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95 of the Complaint and therefore denies the same.

96.    Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 of the Complaint and therefore denies the same.

97.    Ceridian admits that on their face the '021, '065, '120, '134, '150, '223, '252, '285, '415, '551, '703, '734, '762, '863, '893, '965, '968, and '984 patents list Ronald A. Katz as inventor and the '021, '065, '120, '134, '150, '223, '252, '285, '415, '551, '703, '734, '762, '863, '893, '965, '968, and '984 patents list RAKTL as the

assignee. Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97 and therefore denies the same.

98.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the Complaint and therefore denies the same.

99.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint and therefore denies the same.

100.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 of the Complaint and therefore denies the same.

101.     Ceridian lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 of the Complaint and therefore denies the same.

102.     Ceridian denies any allegation of the Complaint not expressly admitted herein. Ceridian also denies that RAKTL is entitled to any of the relief that it is requesting in its Prayer For Relief.

## DEFENSES

### FIRST DEFENSE

### (Non-Infringement)

103.     Ceridian does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the one or more claims asserted by RAKTL of the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents ("patents-in-suit"), individually or collectively.

### SECOND DEFENSE

### (Prosecution History Estoppel)

104.    By reason of proceedings in the United States Patent and Trademark Office during the prosecution of the applications that ultimately led to the issuance of the patents-in-suit, RAKTL is estopped from maintaining that any claim of the RAKTL patents-in-suit covers any automated telephone system operated by or on behalf of Ceridian.

### THIRD DEFENSE

### (Invalidity under 35 U.S.C. §§ 101, 102, 103, 112 and 120)

105.    Each asserted claim of the RAKTL patents-in-suit is invalid for failure to comply with one or more provisions of Title 35, United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112 and 120.

### FOURTH DEFENSE

### (Inequitable Conduct)

106.    Each of the patents-in-suit is unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as the patents-in-suit and/or related applications as described with particularity in the averments of Ceridian's Counterclaim below, which averments are realleged and reincorporated herein by reference as if set forth in full.

### FIFTH DEFENSE

### (Unclean Hands/Patent Misuse)

107.    RAKTL is barred from any relief in this action and at least the '734, '120, '134 and '223 patents are unenforceable under the doctrines of unclean hands and/or patent misuse because RAKTL has asserted the '734, '120, '134 and '223 patents with knowledge that at least one claim in each of these patents is invalid.

## SIXTH DEFENSE

### (Laches)

108.    RAKTL is barred from recovering pre-filing damages under the doctrine of laches. RAKTL and/or its predecessors in interest with respect to the patents-in-suit, with full knowledge of Ceridian's activities, have unduly delayed in asserting the patents-in-suit. RAKTL's conduct, and the conduct of RAKTL's predecessors in interest with respect to the patents-in-suit, constituted a misleading course of conduct indicating that Ceridian would not be disturbed in its activities. Ceridian would now be materially prejudiced if RAKTL were allowed to maintain a cause of action against it.

## SEVENTH DEFENSE

### (Prosecution Laches)

109.    The patents-in-suit are unenforceable due to prosecution laches in light of RAKTL's unreasonable delay in seeking the claims of the patents-in-suit.

110.    Upon information and belief, Ronald A. Katz and/or his agents and ensigns filed the applications underlying the patents-in-suit starting in 1985, with various continuations, continuations-in-part and divisionals filed over the years 1987 to date. Each of the patents-in-suit is the product of a long chain of continuation or divisional applications that RAKTL contends are entitled to the benefit of applications Mr. Katz filed as early as 1985 to 1988.

111.    Upon information and belief, Ronald A. Katz and/or his agents and assigns delayed filing the claims of the patents-in-suit in order to wait for the development of innovations by other individuals in the years following Mr. Katz's initial filings in 1985 to 1988. Only after these developments by others were in the public domain did Mr. Katz present claims to the United States Patent and Trademark Office ("Patent Office") directed towards those specific developments. Other than waiting for the developments of others to occur, nothing prevented Mr. Katz from filing the claims of the patents-in-suit many years earlier.

112.    Upon information and belief, Mr. Katz filed the applications for the patents-in-suit and sought vaguely worded claims. Upon information and belief, these vaguely worded claims were calculated to read-on and claim for Mr. Katz and/or his agents and assigns the developments and technological advances that were made by others who had no knowledge of or did not rely on the alleged invention disclosed by Mr. Katz in the 1985 to 1988 applications.

113.    By virtue of the delays in presenting many of the claims of the patents-in-suit to the Patent Office for examination, Mr. Katz has subjected Ceridian and others to significant harm, including expensive patent infringement litigation and assertions that technology developed by others belongs to RAKTL.

114.    Mr. Katz unreasonably and inexcusably delayed seeking and obtaining the claims of the patents-in-suit with consequent harm to Ceridian and other members of the public. The unreasonable and inexcusable delays of Mr. Katz and/or his agents and assigns constitute prosecution laches and render the claims of the patents-in-suit unenforceable.

## EIGHTH DEFENSE

### (Statute of Limitations)

115.    RAKTL's claims are barred, at least in part, pursuant to 35 U.S.C. § 286 for all events occurring more than six years prior to the filing in this action.

## NINTH DEFENSE

### (Notice and Marking)

116.    RAKTL has failed to provide Ceridian with actual notice of RAKTL's allegations of infringement, as required by law, and therefore RAKTL cannot obtain any damages for Ceridian's actions before the institution of this litigation.

## COUNTERCLAIM
### (Declaratory Judgment Regarding Unenforceability)

Counterclaim plaintiffs Ceridian Corporation and Comdata Network, Inc. (collectively "Ceridian") allege the following counterclaims against Counterdefendant RAKTL:

117.    Ceridian incorporates by reference its responses to paragraphs 1-101 of the Complaint.

118.    Ceridian Corporation is a corporation organized under the laws of the State of Delaware, having its principal place of business at 3311 East Old Shakopee Road, Minneapolis, Minnesota 55425.  Comdata Network, Inc. is a corporation organized under the laws of the State of Maryland, having its principal place of business at 5301 Maryland Way, Brentwood, Tennessee 37027, and is a subsidiary of Ceridian Corporation

119.    On information and belief, RAKTL is a limited partnership organized under the laws of the State of California, and having a principal place of business at 9220 Sunset Blvd. #315, Los Angeles, California 90069.

120.    This counterclaim arises at least under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the patent laws of the United States.

121.    This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201 and 2202, and 35 U.S.C. § 1, *et seq.*

122.    By filing the complaint in this action, RAKTL has submitted to the personal jurisdiction of this Court for the purposes of this counterclaim against it.

123.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because RAKTL filed this action in this district.

124.    RAKTL purports to be the sole holder of the entire right, title and interest in the '968, '150, '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223, and '360 patents ("patents-in-suit").

125.    RAKTL has sued Ceridian in the present action, alleging infringement of one or more claims of the patents-in-suit. Thus, an immediate, real and justiciable controversy exists between RAKTL and Ceridian with respect to the alleged enforceability of the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 patents.

126.    Ceridian does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of one or more valid and enforceable claims of the patents-in-suit under any theory, including literal infringement or infringement under the doctrine of equivalents.

127.    To the extent that Ceridian is found to infringe one or more claims of the patents-in-suit, the one or more claims for which Ceridian is found to infringe are invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103, 112 or 120, *et al.* and/or unenforceable.

128.    Ceridian requests a declaratory judgment that each of the '150, '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit is unenforceable.

129.    Each of the '150, '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit is unenforceable for inequitable conduct committed before the United States Patent and Trademark Office during the prosecution of the applications that issued as the patents-in-suit and/or related applications.

130.    During the prosecution of the applications that ultimately led to the issuance of the patents-in-suit or the applications upon which priority is claimed, the named inventor, Ronald A. Katz, and/or his attorneys and appointed representatives, individually or collectively (hereafter "Katz") engaged in inequitable conduct, thereby rendering the patents-in-suit unenforceable.

131.    Upon information and belief, Katz committed acts or omissions, or exercised a pattern or practice of conduct during the prosecution of the applications that

issued as the patents-in-suit and/or related applications in the Patent and Trademark

Office, which violated the duty of candor owed by patent applicants, with the intent to

deceive the Patent and Trademark Office and its agents into issuing patent claims of a

scope beyond any to which Katz was entitled. This conduct included intentionally

withholding material prior art from the Patent and Trademark Office, and making false

and misleading statements.

**I.      Withholding Material Prior Art**

**A.      Barger**

132.    Katz's acts, omissions, pattern or practice of misconduct included, for

example, its failure to disclose U.S. Patent No. 4,071,698 to Barger, Jr. et al. ("the Barger

patent") to the Patent and Trademark Office during the prosecution of many of Katz's

patents. The Barger patent issued in January 1978.

133.    One or more of the patents-in-suit are unenforceable as a result of Katz's

misconduct pertaining to the Barger patent. Such misconduct occurred in one or more

acts before the Patent and Trademark Office during the prosecution of the patents-in-suit,

or patents related thereto, or applications to which the patents-in-suit allege priority.

Misconduct also occurred in one or more acts before the Patent and Trademark Office

during the prosecution of U.S. Patent Nos. 6,292,547 ("the '547 patent"), 5,073,929 ("the

'929 patent"), 5,561,707 ("the '707 patent"), the '739, '150, and '285 patents. The

misconduct includes, but is not limited to the following:

**i.      Materiality**

134.    The Barger patent teaches an interactive telephone voice system for

marketing merchandise. The Barger patent discloses among other things that the

customer selects and listens to an audio demonstration and may arrange payment by

credit card or other means. The disclosed system maintains, for example, a complete

record of all transactions, including demonstrations selected by each customer, in order to

maintain current inventory records and to determine trends. The system can use this

transaction history, for example, to determine whether a customer is a "free loader," and accordingly limit a customer's access to the system.

135.    As a further example, the system disclosed in the Barger patent is capable of assigning a caller to an operator, who obtains required information from the customer that is placed in a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer. Upon completion of the demonstration, the customer call reverts to a live operator, who will take the order.

136.    The Barger patent is relevant to claims prosecuted by Katz in many respects. As one example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

137.    The Barger patent discloses many of the central features claimed by Katz in various patent applications.

138.    The Barger patent would have been material or relevant to the Patent and Trademark Office in deciding whether to issue patents on Katz's various patent applications.

139.    With respect to other Katz patents in the same or similar families as the patents-in-suit, third parties have relied on the Barger patent to petition the Patent and Trademark Office to reexamine certain Katz patents, including the '707 patent and the '547 patent. An examiner rejected certain of Katz's pending claims in the '707 or '547 patent applications based in part on the teachings of the Barger patent, and the Patent and Trademark Office Board of Patent Appeals And Interferences affirmed that rejection in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13. The '707 and '547 patents contain specifications substantially identical to that of the '739 patent.

### ii.    Intent

140.    The Barger patent was filed in the Patent and Trademark Office in or about January 1978, a full seven years before Katz's first relevant application. Upon information and belief, Katz had knowledge of the relevance and materiality of the Barger patent to Katz's various claims pending before the Patent and Trademark Office since at least as early as December 1988.

141.    Upon information and belief, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederick Coles in or about December 1988. Upon information and belief, Mr. Coles sent a copy of the search report to Byard Nilsson, an attorney handling prosecution of many of Katz's applications, in or about January 1989.

142.    That search report identified the Barger patent as being "particularly relevant" to Katz's applications.

143.    Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications (including prior art cited in foreign patent prosecutions). Katz failed to disclose the Barger patent to the Patent and Trademark Office during the prosecution of at least the '739, '929, '984, '150, '285 and '965 patents.

144.    On information and belief, Katz's failure to disclose the Barger patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '929, '984, '150, '285 and '965 patents.

145.    Katz's intentional failure to disclose the Barger patent, with knowledge of its materiality during prosecution of the '739, '929, '984, '150, '285 and '965 patents, constitutes inequitable conduct.

### iii.    Unenforceability

146.    Katz was aware of both the significance and relevance of the Barger patent as alleged herein. Katz's failure to disclose the Barger patent to the Patent and

22

Trademark Office during prosecution of at least the '739, '929, '984, '150, '285 and '965 patents constituted inequitable conduct.

147. The '984, '150, '285 and '965 patents-in-suit are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

148. The inequitable conduct during prosecution of the '739 patent infects and makes unenforceable the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit, each of which is related to the '739 by virtue of claiming priority from the '739 patent. For each of the above patents, the subject matter of one or more claims includes Barger-related subject matter at issue during the prosecution of the '739 patent.

149. In addition, the inequitable conduct during prosecution of the '739 patent infects and makes unenforceable the '893, '863, '551, '065, '360, and '134 patents, each of which is closely related to the '739 patent (among others). The interrelatedness of these patents and the '739 patent is further demonstrated, for example, by Katz having disclaimed for each of the '893, '863, '551, '065, '360 and '134 patents any patent term subsequent to the patent term of the '739 patent. In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

150. Thus, the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit are each rendered unenforceable due to Katz's inequitable conduct during prosecution of the '739 patent.

151. The inequitable conduct during prosecution of the '929 and '984 patents also infects and makes unenforceable the '965, '984, '252, '734, '120, and '223 patents, which claim priority from the '929 and '984 patents, as well as from the '739 patent. In the '965, '984, '252, '734, '120, and '223 patents, the subject matter of one or more

claims includes Barger-related subject matter at issue during prosecution of the '929, '984, and '739 patents.

152. Thus, the '965, '984, '252, '734, '120, and '223 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '984, '929 and '739 patents.

153. The inequitable conduct during prosecution of the '150 and '285 patents also infects and makes unenforceable the '893 patent, which claims priority from the '150 and '285 patents, as well as from the '739 patent. In the '893 patent, the subject matter of one or more claims includes Barger-related subject matter at issue during prosecution of the '150, '285, and '739 patents.

154. Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '150, '285 and '739 patents.

155. The inequitable conduct concerning the Barger patent renders unenforceable each of the patents-in-suit except for the '968 patent

**B.    DeBruyn**

156. Katz's acts, omissions, pattern or practice of misconduct also included, for example, withholding European Patent Specification No. 32,410 to DeBruyn (the "DeBruyn patent") from the Patent and Trademark Office during the prosecution of many of Katz's early patents. The DeBruyn patent was published on July 22, 1981.

157. One or more of the patents-in-suit are unenforceable as a result of Katz's misconduct pertaining to the DeBruyn patent. Such misconduct occurred in one or more acts before the Patent and Trademark Office during the prosecution of the patents-in-suit, or patents related thereto, or applications for which the patents-in-suit allege priority. Misconduct also occurred in one or more acts before the Patent and Trademark Office during prosecution of U.S. Patent No. 5,048,075 ("the '075 patent") and the '739, '150, '929, '984, and '252 patents. The misconduct includes, but is not limited to the following:

### i.    Materiality

158.    The DeBruyn patent teaches an interactive telephone voice system for implementing a lottery. It is relevant to the Katz claims in many respects.

159.    The DeBruyn patent was cited in the same European search report that identified the Barger patent. The European search report identified the DeBruyn patent as "particularly relevant."

160.    The DeBruyn patent is substantively identical to Canadian Patent 1,162,336 ("the DeBruyn Canadian patent"). The DeBruyn patent and DeBruyn Canadian patent disclose many features relevant to Katz's claims. These include but are not limited to receiving a caller's telephone number from the public telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

161.    The Director of the Patent and Trademark Office has relied on the substantively identical DeBruyn Canadian patent in ordering the reexamination of several of Katz's patents related to the patents-in-suit, including the '707 patent, and U.S. Patent Nos. 5,255,309 ("the '309 patent") and 5,259,023 ("the '023 patent").

162.    As to the '309 patent, for example, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.

163.    Similarly, the Director has determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 and '707 patents under 35 U.S.C. § 102.

164.    An Examiner at the Patent and Trademark Office has determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21 and 22-27 of the '023 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9. The

Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22 and 23 of the '023 patent under 35 U.S.C. § 103. *Id.* at 24-26, 28.

165.    The Examiner also has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19. The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 of the '309 patent under 35 U.S.C. § 103. *Id.* at 2, 32-43.

166.    Each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

### ii.    Intent

167.    The DeBruyn patent was filed in the Patent and Trademark Office on July 22, 1981, nearly four years before Katz's first relevant application. Upon information and belief, Katz had knowledge of the relevance and materiality of the DeBruyn patent to Katz's various claims pending before the Patent and Trademark Office, since at least as early as December 1988 through at least the European search report.

168.    Katz failed to disclose the Debruyn patent to the Patent and Trademark Office during the prosecution of at least the '739, '150, '075, '929, '984, and '252 patents.

169.    On information and belief, Katz's failure to disclose the DeBruyn patent was done deliberately and with the intent to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Katz was entitled in at least the '739, '150, '075, '929, '984, and '252 patents.

170.    Katz's intentional failure to disclose the DeBruyn patent, with knowledge of its materiality during prosecution of the '739, '150, '075, '929, '984, and '252 patents constitutes inequitable conduct.

### iii.    Unenforceability

171.    The '150, '984, and '252 patents-in-suit are rendered unenforceable due to Katz's inequitable conduct during prosecution of their respective applications.

172.    The inequitable conduct during prosecution of the '739 patent infects and makes unenforceable the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit, each of which is related to the '739 by virtue of claiming priority from the '739 patent. For each of the above patents, the subject matter of one or more claims includes DeBruyn-relevant subject matter at issue during the '739 patent prosecution.

173.    The inequitable conduct during prosecution of the '739 patent infects and makes unenforceable also the '893, '863, '551, '065, '360 and '134 patents, each of which is closely related the '739 patent (among others).  The interrelatedness of these patents and the '739 patent is demonstrated, for example, by Katz having disclaimed for each of the '893, '863, '551, '065, '360 and '134 patents any patent term subsequent to the patent term of the '739 patent. In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

174.    Thus, the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit are rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '739 patent.

175.    The inequitable conduct that occurred during prosecution of the '929 and '984 patents also infects and makes unenforceable the '965, '984, '252, '734, '120, and '223 patents, which claim priority from the '252, '929 and '984 patents,

176.    In the '965, '984, '252, '734, '120, and '223 patents, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '252, '984, '929, and '739 patents and to which DeBruyn would have been relevant.

177.    Thus, the '965, '984, '252, '734, '120, and '223 patents are rendered
unenforceable due to the inequitable conduct that occurred during prosecution of the
'929, '984 and '252 patents.

178.    The inequitable conduct during prosecution of the '150 patent also infects
and makes unenforceable the '893 and '285 patents, which claim priority from the '150
patent, as well as from the '739 patent.  In the '893 and '285 patents, the subject matter of
one or more claims includes subject matter that was at issue during prosecution of the
'150 and '739 patents and to which DeBruyn would have been relevant.

179.    Thus, the '893 and '285 patents are rendered unenforceable due to the
inequitable conduct that occurred during prosecution of the '150 and '739 patents.

### C.    Katz PCT

180.    Katz's acts, omissions, pattern or practice of misconduct also included, for
example, failing to disclose to the Patent and Trademark Office the publication of Katz's
own '375 application, PCT application WO 87/00375 (the "375 application"), during the
prosecution of at least the '739 patent. The '375 application was published on January 15,
1987.

### i.    Materiality

181.    The published '375 application would be considered prior art for any
claims with a filing date more than a year after the publication date (January 15, 1987).
35 U.S.C. § 102(b). The filing date of the application that issued as the '739 patent was
more than one year after the '375 application was published.

182.    The published '375 application is relevant to many of the basic elements
under consideration by the Patent and Trademark Office in the '739 and related patents.
In particular, the published '375 application constituted prior art to all the claims that
incorporated any new subject matter added in the application for the '739 patent, which
was filed on May 16, 1988.

183.    The published '375 application would have been material to the examiner in determining what claims, if any, Katz might be entitled to relating to the '739 patent, including many of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

### ii.    Intent

184.    Despite knowledge of this reference, which was itself a Katz application, and its materiality, Katz did not bring the published '375 application to the attention of the patent examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

185.    Accordingly, Katz's knowing failure to cite this reference to the Patent and Trademark Office as alleged herein constitutes inequitable conduct.

### iii.    Unenforceability

186.    As the '739 patent is relied upon by Katz as a parent to each of the patents-in-suit except for the '968 patent and '150 patents, the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit are rendered unenforceable by Katz's earlier omission to the Patent and Trademark Office.

187.    The '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223, and '360 patents-in-suit each contain one or more claims with subject matter that includes subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant. The above patents are thus rendered unenforceable through infectious unenforceability.

188.    The interrelatedness of the '893, '863, '551, '065, '360 and '134 patents is demonstrated, for example, by Katz having disclaimed for each of the '893, '863, '551, '065, '360 and '134 patents any patent term subsequent to the patent term of the '739 patent.

189.    In most instances, the disclaimer was in response to double patenting rejections made by the Patent and Trademark Office, which indicated that the claimed inventions were not patentably distinct.

190.    The inequitable conduct concerning the '375 application renders unenforceable the '984, '252, '285, '863, '551, '734, '893, '120, '065, '965, '134, '223 and '360 patents-in-suit.

### D.    Periphonics

191.    Katz's pattern of misconduct also included, for example, withholding relevant and material prior art by the Periphonics Corporation ("Periphonics") from the Patent and Trademark Office during the prosecution of the '707, '965, '285, '893, '762, and '551 patents. Upon information and belief, the Periphonics prior art became known to Katz at least as early as April 1993.

### i.    Materiality

192.    Upon information and belief, in or about April 1993, Katz obtained copies of numerous items of relevant prior art by Periphonics. Such prior art was provided under Bates numbers W72807-W73756 ("the West materials") to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm") in connection with *First Data Resources, Inc. v. West Interactive Corp*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"). The Nilsson firm was involved in prosecuting many of Katz's patent applications, some of which would ultimately issue as the patents-in-suit.

193.    During prosecution of U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz submitted only some of the West materials, and withheld or failed to submit to the Patent and Trademark Office other relevant and material West materials.

194.    The West materials provided to Katz included a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095) and (2)

Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

195.    The Bank-From-Home reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

196.    The Bank-From-Home reference is highly relevant to many claims of the patents-in-suit. It describes such limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.

197.    The VoicePac reference was, upon information and belief, knowingly withheld by Katz during prosecution of at least these patents with knowledge of their materiality.

198.    The VoicePac reference is highly relevant to many claims of the patents-in-suit. It describes such limitations of claims of the patents-in-suit as interfacing callers to the system and transferring callers to a customer service representative.

### ii.    Intent

199.    The Periphonics prior art and other relevant and material West materials constituting prior art came into Katz's knowledge at least as early as Aril 1993, nineteen months before the '965 patent issued. Upon information and belief, Katz had knowledge of the relevance and materiality of the Periphonics and other West materials to claims pending before the Patent and Trademark Office.

200.    Indicating his knowledge of the existence and materiality of this undisclosed material, Katz's application for the '965 patent stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." U.S. Patent Application No.

08/306,456, Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

201.    Katz made the same statements in other applications, which issued as U.S. Patent No. 5,561,707 ("the '707 patent") (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).

202.    During the prosecution of still other applications, Katz used similar language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

203.    Katz was under a duty to disclose to the Patent and Trademark Office information material to Katz's applications.

204.    Katz withheld and failed to submit this material prior art.

205.    Katz's intentional failure to disclose all of the relevant and material West materials during prosecution of the '707, '965, '285, '863, '762 and '551 patent applications pending before the Patent and Trademark Office, with knowledge of its materiality, was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.

### iii.    Unenforceability

206.    Thus, at least the '965, '285, '863 and '551 patents-in-suit are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

207.    The '065, '134, and '360 patents have specifications substantially identical to those of the '707, '863, '762 and '551 patents.

208.    In addition, they rely for priority on U.S. Patent No. 4,845,739 ("the '739 patent"), also having a substantially identical specification.

209.    The '065, '134, and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '707, '863, '762, '551 and '739 patents.

210.    In addition, due to the interrelatedness of the '893, '065, '134, and '360 patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

211.    The inequitable conduct during prosecution of the '285 patent also infects and makes unenforceable the '893 patent, which claims priority from the '285 patent. In the '893 patent, the subject matter of one or more claims includes subject matter that was at issue during prosecution of the '285 patent and to which the withheld West materials would have been relevant.

212.    Thus, the '893 patent is rendered unenforceable due to the inequitable conduct that occurred during prosecution of the '285 patent.

213.    Thus, Katz's inequitable conduct renders each of the '965, '285, '863, '551, '893, '065, '134, and '360 patents unenforceable.

## II.    False and Misleading Statements

214.    Katz knowingly made false and misleading statements or omissions to the Patent and Trademark Office, including representations about the priority dates for claims of pending Katz applications.

215.    Upon information and belief, such statements were made with the intent that the Patent and Trademark Office would rely upon such false and misleading statements to remove as prior art references that were before the Patent and Trademark Office in Katz's pending applications.

216.    Such false and misleading statements by Katz included statements in the prosecution of application serial number 07/425,779, which issued as the '984 patent. During that prosecution, the Patent Examiner rejected claim 10 of the application under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ('the '375 application')." Office Action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

217.    The '375 application was in fact properly cited by the Patent Examiner as a reference against claim 10 of the application. Nevertheless, claim 10 proceeded and issued as part of the '984 patent-in-suit.

218.    Upon information and belief, Katz's statement leading to the '984 patent was knowingly false and with the intent to deceive the Patent and Trademark Office into issuing patent claims in the '984 patent of a scope beyond any to which Katz was entitled.

219.    Katz's conduct violated the duty of candor owed by patent applicants to the Patent and Trademark Office, and constitutes inequitable conduct.

220.    As a result of Katz's inequitable conduct, the '984 patent-in-suit is unenforceable.

221.    The unenforceability of the '984 patent infects and renders unenforceable the '252, '734, '120, and '223 patents-in-suit through the doctrine of infectious unenforceability.

222.    The '252, '734, '120, and '223 patents shares a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent.

223.    Due to the interrelatedness of the '252, '734, and '120 applications and the '984 patent, Katz disclaimed for the '252, '734, and '120 patents any patent term subsequent to the patent term of the '984 patent. Katz did so in response to double

34

patenting rejections, whereby the Patent and Trademark Office indicated that the claimed inventions in the '252, '734, and '120 patents were not patentably distinct.

224.    Thus, the conduct during prosecution of the '984 patent also renders the '252, '734, '120, and '223 patents unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Ceridian prays that the Court grant it the following relief:

(1)    Deny any and all relief requested by RAKTL, as set forth in the Prayer For Relief of the Complaint, and dismiss the Complaint with prejudice;

(2)    Declare that Ceridian does not infringe any of the patents-in-suit by any product or service provided by Ceridian;

(3)    Declare that the patents-in-suit are invalid;

(4)    Declare that the patents-in-suit are unenforceable;

(5)    Declare this case to be exceptional under 35 U.S.C. §285 and award Ceridian its reasonable attorneys fees and costs; and

(6)    Grant Ceridian such other relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Ceridian hereby demands a trial by jury on all issues so triable pursuant to Fed. R.

Civ. P. 38.


Respectfully submitted,

POTTERANDERSON & CORROON LLP

OF COUNSEL:

By:  /s/ Richard L. Horwitz
     Richard L. Horwitz (#2246)

Thomas M. Dunham
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
Telephone: 202/783-0800
Facsimile: 202/383-6610
dunhamt@howrey.com

     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware  19801
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

Dated:  October 26, 2006

Attorneys For DefendantsCeridian
Corporation and Comdata Network, Inc.

758091/30866

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on October 26, 2006, the attached

document was hand-delivered on the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Mary B. Graham
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
mgraham@mnat.com
jheaney@mnat.com

William J. Wade
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19801
wade@rlf.com

Paul J. Lockwood
Skadden, Arps, Slate,Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
plockwoo@skadden.com

Philip A. Rovner
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
provner@potteranderson.com

*/s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

758110