**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-544 (GMS) |
| TD BANKNORTH INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**ANSWER AND COUNTERCLAIMS OF COMERICA INCORPORATED,
COMERICA SECURITIES, INC. AND COMERICA BANK & TRUST, N.A.**

Defendants Comerica Incorporated, Comerica Securities, Inc. ("Comerica Securities") and Comerica Bank & Trust, N.A. ("Comerica Bank & Trust"), for their Answer And Counterclaims to the Complaint of Plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") in this action, state as follows:

1.      Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2.      Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 2 of the Complaint.

3.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of the Complaint.

4.    Deny the allegations of paragraph 4 of the Complaint, except admit that Comerica Incorporated is a Delaware Corporation with a principal place of business at 500 Woodward Avenue, Detroit, Michigan 48226.

5.    Deny the allegations of paragraph 5 of the Complaint, except admit that Comerica Bank & Trust is a national banking association with its principal place of business at 500 Woodward Avenue, Detroit, Michigan 48226 and a subsidiary of Comerica Incorporated.

6.    Deny the allegations contained in paragraph 6 of the Complaint, except admit that Comerica Securities, Inc. is a Michigan corporation with its principal place of business at 201 West Fort Street, Detroit, Michigan 48226 and a subsidiary of Comerica Incorporated.

7.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 7 of the Complaint.

8.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8 of the Complaint.

9.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 9 of the Complaint.

2

10.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint.

11.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 11 of the Complaint.

12.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 12 of the Complaint.

13.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 13 of the Complaint.

14.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 14 of the Complaint.

15.    Deny the allegations contained in paragraph 15 of the Complaint, except admit that RAKTL purports to have brought this action pursuant to 35 U.S.C. §§ 101 *et seq.* and purports to invoke this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1338.

16.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint.

17.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 17 of the Complaint.

18.    Deny all allegations contained in paragraph 18 of the Complaint except admit that Comerica Incorporated, Comerica Securities and Comerica Bank & Trust are subject to personal jurisdiction in this judicial district.

19.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 19 of the Complaint.

20.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 20 of the Complaint.

21.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 21 of the Complaint.

22.    Deny the allegations contained in paragraph 22 of the Complaint, except admit that venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 28 U.S.C. § 1400(b).

23.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 23 of the Complaint.

24.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 24 of the Complaint.

25.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 25 of the Complaint.

26.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 26 of the Complaint..

27.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 27 of the Complaint.

28.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 28 of the Complaint.

29.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 29 of the Complaint.

30.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 30 of the Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 31 of the Complaint.

32.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 33 of the Complaint.

34.     Deny the allegations contained in paragraph 34 of the Complaint to the extent they relate to Comerica Incorporated, Comerica Securities and Comerica Bank & Trust and deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 34 of the Complaint to the extent they relate to other defendants.

35.    Deny the allegations contained in paragraph 35 of the Complaint, except admit that U.S. Patent No. 4,792,968 ("the '968 patent") expired and on its face is entitled "Statistical Analysis System For Use With Public Communication Facility," lists Ronald A. Katz as inventor and lists December 20, 1988, as the issue date.

36.    Deny the allegations contained in paragraph 36 of the Complaint, except admit that U.S. Patent No. 4,930,150 ("the '150 patent") expired and on its face is entitled "Telephonic Interface Control System," lists Ronald A. Katz as inventor and lists May 29, 1990, as the issue date.

37.    Deny the allegations contained in paragraph 37 of the Complaint, except admit that U.S. Patent No. 5,128,984 (" the '984 patent") on its face is entitled "Telephonic Interface Call Processing System with Call Selectivity," lists Ronald A. Katz as inventor and lists July 7, 1992, as the issue date.

38.    Deny the allegations contained in paragraph 38 of the Complaint, except admit that U.S. Patent No. 5,251,252 ("the '252 patent") on its face is entitled "Telephone Interface Call Processing System with Call Selectivity," lists Ronald A. Katz as inventor and lists October 5, 1993, as the issue date.

39.    Deny the allegations contained in paragraph 39 of the Complaint, except admit that U.S. Patent No. 5,351,285 ("the '285 patent") expired and on its face is entitled

"Multiple Format Telephonic Interface Control System," lists Ronald A. Katz as inventor and lists September 27, 1994, as the issue date.

      40.    Deny the allegations contained in paragraph 40 of the Complaint, except admit that U.S. Patent No. 5,684,863 ("the '863 patent") expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists November 4, 1997, as the issue date.

      41.    Deny the allegations contained in paragraph 41 of the Complaint, except admit that U.S. Patent No. 5,815,551 ("the '551 patent") expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and September 29, 1998, as the issue date.

      42.    Deny the allegations contained in paragraph 42 of the Complaint, except admit that U.S. Patent No. 5,828,734 ("the '734 patent") on its face is entitled "Telephone Interface Call Processing System with Call Selectivity," lists Ronald A. Katz as inventor and lists October 27, 1998, as the issue date.

      43.    Deny the allegations contained in paragraph 43 of the Complaint, except admit that U.S. Patent No. 5,898,762 ("the '762 patent") expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists April 27, 1999, as the issue date.

44.    Deny the allegations contained in paragraph 44 of the Complaint, except admit that U.S. Patent No. 5,917,893 ("the '893 patent") expired and on its face is entitled "Multiple Format Telephonic Interface Control System," lists Ronald A. Katz as inventor and lists June 29, 1999, as the issue date.

45.    Deny the allegations contained in paragraph 45 of the Complaint, except admit that U.S. Patent No. 5,974,120 ("the '120 patent) on its face is entitled "Telephone Interface Call Processing System with Call Selectivity," lists Ronald A. Katz as inventor and lists October 26, 1999, as the issue date.

46.    Deny the allegations contained in paragraph 46 of the Complaint, except admit that U.S. Patent No. 6,035,021 ("the '021 patent) expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists March 7, 2000, as the issue date.

47.    Deny the allegations contained in paragraph 47 of the Complaint, except admit that U.S. Patent No. 6,148,065 ("the '065 patent") expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists November 14, 2000, as the issue date.

48.    Deny the allegations contained in paragraph 48 of the Complaint, except admit that U.S. Patent No. 6,335,965 ("the '965 patent) expired and on its face is entitled "Voice-

Data Telephonic Interface Control System," lists Ronald A. Katz as inventor and lists January 1, 2002, as the issue date.

49.    Deny the allegations contained in paragraph 49 of the Complaint, except admit that U.S. Patent No. 6,349,134 ("the '134 patent") expired and on its face is entitled "Telephonic-Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists February 19, 2002, as the issue date.

50.    Deny the allegations contained in paragraph 50 of the Complaint, except admit that U.S. Patent No. 6,424,703 ("the '703 patent") expired and on its face is entitled "Telephonic-Interface Lottery System," lists Ronald A. Katz as sole inventor and lists July 23, 2002, as the issue date.

51.    Deny the allegations contained in paragraph 51 of the Complaint, except admit that U.S. Patent No. 6,434,223 ("the '223 patent") expired and on its face is entitled "Telephone Interface Call Processing System with Call Selectivity," lists Ronald A. Katz as inventor and lists August 13, 2002, as the issue date.

52.    Deny the allegations contained in paragraph 52 of the Complaint, except admit that U.S. Patent No. 6,512,415 ("the '415 patent") expired and on its face is entitled "Telephonic Interface Game Control System," lists Ronald A. Katz as inventor and lists January 28, 2003, as the issue date.

9

53.    Deny the allegations contained in paragraph 53 of the Complaint, except admit that U.S. Patent No. 6,678,360 ("the '360 patent") expired and on its face is entitled "Telephonic Interface Statistical Analysis System," lists Ronald A. Katz as inventor and lists January 13, 2004, as the issue date.

54.    Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

55.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 55 of the Complaint.

56.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 56 of the Complaint.

57.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 57 of the Complaint.

58.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 58 of the Complaint.

59.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 59 of the Complaint.

60.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 60 of the Complaint.

61.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 61 of the Complaint.

62.    Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

63.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 63 of the Complaint.

64.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 64 of the Complaint.

65.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 65 of the Complaint.

66.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 66 of the Complaint.

67.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 67 of the Complaint.

68.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 68 of the Complaint.

69.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 69 of the Complaint.

11

70.     Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

71.     Deny all allegations contained in paragraph 71 of the Complaint.

72.     Deny all allegations contained in paragraph 72 of the Complaint.

73.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 73 of the Complaint.

74.     Deny all allegations contained in paragraph 74 of the Complaint.

75.     Deny all allegations contained in paragraph 75 of the Complaint.

76.     Deny all allegations contained in paragraph 76 of the Complaint.

77.     Deny all allegations contained in paragraph 77 of the Complaint.

78.     Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

79.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 79 of the Complaint.

80.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 80 of the Complaint.

81.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 81 of the Complaint.

82.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 82 of the Complaint.

83.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 83 of the Complaint.

84.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 84 of the Complaint.

85.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 85 of the Complaint.

86.     Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

87.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 87 of the Complaint.

88.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 88 of the Complaint.

89.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 89 of the Complaint.

90.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 90 of the Complaint.

91.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 91 of the Complaint.

92.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 92 of the Complaint.

93.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 93 of the Complaint.

94.     Repeat and incorporate answers to the averments of Paragraphs 1-53 of this Answer as if set forth herein in full.

95.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 95 of the Complaint.

96.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 96 of the Complaint.

97.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 97 of the Complaint.

98.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 98 of the Complaint.

99.     Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 99 of the Complaint.

100.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 100 of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 101 of the Complaint.

102.    Deny all allegations in the Complaint that are not otherwise specifically admitted in this Answer.

## AFFIRMATIVE DEFENSES OF COMERICA INCORPORATED, COMERICA SECURITIES AND COMERICA BANK & TRUST

Pursuant to Federal Rule of Civil Procedure 8(c), Comerica Incorporated, Comerica Bank & Trust, National Association ("Comerica Bank & Trust") and Comerica Securities, Inc. ("Comerica Securities") assert the following affirmative defenses to Plaintiff's Complaint.

### First Defense

Comerica Incorporated, Comerica Securities, and Comerica Bank & Trust do not infringe any claim of the patents-in-suit directly, by inducement or by contribution.

### Second Defense

The claims of the patents-in-suit are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, *et. seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

### Third Defense

One or more of the patents-in-suit are unenforceable due to inequitable conduct by RAKTL, Ronald A. Katz and/or their agents and attorneys before the United States Patent and Trademark Office as part of the prosecution of the patents-in-suit as described with particularity in the averments of Count III of the Counterclaims below, which averments are realleged and reincorporated here by reference as if set forth in full.

### Fourth Defense

The patents-in-suit are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents-in-suit.

16

### Fifth Defense

The claims against Comerica Incorporated, Comerica Securities and Comerica Bank & Trust are barred, in whole or in part, by the doctrine of laches, waiver and/or estoppel due to RAKTL's unreasonable delay in asserting the patents-in-suit.

### Sixth Defense

The claims against Comerica Incorporated, Comerica Securities and Comerica Bank & Trust are barred pursuant to 35 U.S.C. § 286 for all events occurring more than six years prior to RAKTL's filing of this Complaint.

### Seventh Defense

RAKTL is barred from recovering damages from Comerica Incorporated, Comerica Securities or Comerica Bank & Trust for infringement of the patents-in-suit until the date RAKTL provided proper notice to Comerica pursuant to 35 U.S.C. § 287(a) if at all.

### Eighth Defense

The patents-in-suit are unenforceable due to patent misuse by RAKTL trying to enforce the patents-in-suit in bad faith to extract a royalty rate based on the use of products known to be unpatented and by RAKTL trying to enforce the patents-in-suit which were issued due to RAKTL's knowing and willful misrepresentations and/or omissions intended to deceive the patent examiners described with particularity in the averments of Count III of the Counterclaims below, which averments are realleged and reincorporated here by reference as if set forth in full.

### Ninth Defense

The Complaint fails to state a claim upon which relief can be granted.

## **Reservation of Rights**

Comerica Incorporated, Comerica Securities and Comerica Bank & Trust reserve

the right to add any additional defenses or counterclaims that discovery may reveal.

## COUNTERCLAIMS OF COMERICA INCORPORATED, COMERICA SECURITIES, INC. AND COMERICA BANK & TRUST, N.A.

Pursuant to Federal Rule of Civil Procedure 13, Comerica Incorporated, Comerica Securities, Inc. and Comerica Bank & Trust, N.A. ("Counterclaim-Plaintiffs") hereby assert the following counterclaims against Ronald A. Katz Technology Licensing, L.P. ("RAKTL") and aver as follows:

### Nature and Basis of Action

1.      This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.* Counterclaim-Plaintiffs request a declaration that: (i) it does not infringe any valid, enforceable claim of U.S. Patent Nos. 4,792,968 ("the '968 patent"); 4,930,150 ("the '150 patent"); 5,128,984 ("the '984 patent"); 5,251,252 ("the '252 patent"); 5,351,285 ("the '285 patent"); 5,684,863 ("the '863 patent"); 5,815,551 ("the '551 patent"); 5,828,734 ("the '734 patent"); 5,898,762 ("the '762 patent"); 5,974,120 ("the '120 patent"); 6,349,134 ("the '134 patent"); and 6,434,223 ("the '223 patent") (collectively, the "patents-in-suit"); (ii) the patents-in-suit are invalid; and (iii) the patents-in-suit are unenforceable.

### The Parties, Jurisdiction and Venue

2.      Counterclaim-Plaintiff Comerica Securities, Inc. is a Michigan Corporation with a principle place of business at 201 West Fort Street, Detroit, Michigan 48226.

3.      Counterclaim-Plaintiff Comerica Bank & Trust is a national banking association with its principal place of business at 500 Woodward Avenue, Detroit, Michigan 48226.

4.     Counterclaim-Plaintiff Comerica Incorporated is a Delaware Corporation with a principle place of business at 201 West Fort Street, Detroit, Michigan 48226.

5.     According to RAKTL's Complaint, RAKTL is a limited partnership organized under the law of the State of California, having a principal place of business at 9220 Sunset Boulevard #315, Los Angeles, California 90069.

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

7.     This Court has personal jurisdiction over RAKTL by virtue of the fact that RAKTL has submitted to the jurisdiction of this Court by bringing the instant action.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

### Factual Allegations

9.     Upon information and belief, RAKTL purports to be the owner by assignment of each of the patents-in-suit.

10.     RAKTL has asserted that Counterclaim-Plaintiffs have directly and contributorily infringed and induced others to infringe one or more claims of each of the patents-in-suit.

11.     There is an actual, justiciable controversy between the parties regarding the infringement, validity, and enforceability of the patents-in-suit.

## Count I

### (Declaratory Judgment of Non-Infringement of the Patents-In-Suit)

12. Counterclaim-Plaintiffs reallege and incorporate the averments of Paragraphs 1 through 11, inclusive, of their Counterclaims as if set forth herein in full.

13. Counterclaim-Plaintiffs have not and do not infringe directly, by inducement or by contribution, any valid and enforceable claim of the patents-in-suit. Moreover, Counterclaim-Plaintiff Comerica Incorporated is merely a holding company and does not perform any actions that could possibly infringe the patents-in-suit.

14. By reason of arguments and amendments made by RAKTL during prosecution of the applications for the patents-in-suit, RAKTL is estopped from asserting that Counterclaim-Plaintiffs' automated customer services and calling card services infringe the patents-in-suit or that Counterclaim-Plaintiffs have infringed or has contributed to or induced infringement of any of the patents-in-suit.

## Count II

### (Declaratory Judgment of Invalidity of the Patents-In-Suit)

15. Counterclaim-Plaintiffs reallege and incorporate the averments of Paragraphs 1 through 14, inclusive, of their Counterclaims as if set forth herein in full.

16. Upon information and belief, all claims of the patents-in-suit are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

## Count III

### (Declaratory Judgment of Unenforceability of the Patents-In-Suit)

17.    Counterclaim-Plaintiffs reallege and incorporate the averments of Paragraphs 1 through 16, inclusive, of their Counterclaims as if set forth herein in full.

18.    The patents-in-suit are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents-in-suit.

19.    The patents-in-suit are unenforceable due to laches, waiver, and/or estoppel due to unreasonable delay in asserting the claimed inventions.

20.    The patents-in-suit are unenforceable due to patent misuse by RAKTL trying to enforce the patents-in-suit in bad faith to extract a royalty rate based on the use of products known to be unpatented.

21.    The patents-in-suit are unenforceable in whole or in part for inequitable conduct committed by RAKTL, Ronald A. Katz and/or their agents or attorneys (collectively "Katz").  Upon information and belief, Katz repeatedly failed to comply with the duty of candor, good faith, and honesty before the United States Patent and Trademark Office ("USPTO") with the intent to deceive the USPTO and its agents into issuing patent claims of a scope beyond any to which Katz was entitled during prosecution of the patents-in-suit, related patents, related patent applications, applications that ultimately led to the issuance of the patents-in-suit, and/or applications upon which priority is claimed.

22.    Upon information and belief, on multiple occasions as part of the prosecution of the patents-in-suit and of related patents and/or applications and with the intent to deceive the USPTO, Katz intentionally: (I) withheld material prior art; (II) failed to inform the USPTO of inconsistent positions taken during prosecution; (III) failed to identify or disclose

22

material information from related litigations or proceedings; (IV) failed to inform patent examiners of adverse findings by others; and (V) made false claims of priority so as to avoid the prior art.

23.    Upon information and belief, Katz repeatedly and intentionally failed to disclose U.S. Patent No. 4,071,698 to Barger, Jr. et al. ("the Barger patent") with the intent to deceive during the prosecution of at least the '739 (U.S. Patent No. 4,845,739), '150 (U.S. Patent No. 4,930,150), '298 (U.S. Patent No. 5,104,298), '929 (U.S. Patent No. 5,073,929), '984 and '252 patents. The Barger patent issued January 31, 1978, more than 7 years before the effective filing date of Katz's first patent, and, therefore, is prior art to all of the patents-in-suit.

24.    Upon information and belief, the Barger patent discloses many of the central features claimed by Katz, and it would have been material to the USPTO in deciding whether to allow the claims of the patents-in-suit and related patents and/or applications. For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

25.    Upon information and belief, Katz had knowledge of the materiality and relevance of the Barger patent to the claims of the patents-in-suit that were prosecuted by Katz before the USPTO on or about December 1988 as part of the prosecution of an international application (WO 87/00375), which is based on Katz's U.S. Patent Application No. 06/753,299 ("the '299 application"). As part of the prosecution of the WO 87/00375 application, the European Patent Office ("EPO") identified the Barger patent as "particularly relevant" in regard to the patentability of the claims. In addition, the EPO sent the international search report identifying the Barger patent as "particularly relevant" to Katz's European attorney, Mr. Graham F. Coles, on or about December 27, 1988.

26.    Upon information and belief, all of the patents-in-suit claim priority to the '299 application, therefore, the international search report put Katz on notice both of the existence and materiality of the Barger patent to the subject matter claimed in the patents-in-suit.

27.    Upon information and belief, Katz failed to disclose the Barger patent to the USPTO patent examiner as part of the prosecution of at least the '739, '150, '298, '929, '984 and '252 patents, which were pending as of, or filed after, January 1, 1989, despite his knowledge of the materiality and relevance of the Barger patent to the claims of the patents-in-suit.  In addition, upon information and belief, Katz did not disclose the existence of the Barger patent to the USPTO as part of the substantive prosecution of the '285 patent, waiting until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the Barger patent, only seven days before the '285 patent issued.

28.    Upon information and belief, Katz intentionally withheld the material Barger patent from the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984, '252 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable.

29.    Upon information and belief, at least the '863, '551, '984, '252, '734, '762, '120, '134, and '223 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is material, therefore, the inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '252 and '285 patents taints these related patents, rendering them unenforceable.

24

30.     Upon information and belief, at least the '285, '150, '863, '551, '984, '252, '734, '762, '120, '134, and '223 patents-in-suit, are rendered unenforceable for inequitable conduct by Katz's intentional failure to disclose the Barger patent to the USPTO.

31.     Upon information and belief, Katz repeatedly and intentionally failed to disclose European Patent No. 32,410 to DeBruyn ("the DeBruyn patent") to the USPTO during prosecution of many patents-in-suit and related patents. The DeBruyn patent was published as EP 0032410 A1 on July 22, 1981, and, therefore, is prior art to the patents-in-suit.

32.     Upon information and belief, the DeBruyn patent discloses many features relevant to Katz's claims, and it would have been material to the USPTO in deciding whether to allow the claims of the patents-in-suit. For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

33.     Upon information and belief, Katz became aware of the DeBruyn patent and its materiality to the subject matter claimed in the patents-in-suit by at least as early as January 1989. The same international search report that identified the Barger patent and, upon information and belief, was sent to Katz's European attorney, Mr. Graham F. Coles, on December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to the patentability of the claims of Katz's '299 application.

34.     Upon information and belief, Katz failed to disclose the DeBruyn patent to the USPTO as part of the prosecution of at least the '150, '075, '739, '929, '984 and '252 patents, despite his knowledge of the DeBruyn patent and its materiality.

25

35.     Upon information and belief, Katz failed to disclose the existence of the DeBruyn patent to the USPTO as part of the substantive prosecution of the '285 patent, instead waiting until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the DeBruyn patent, only seven days before the '285 patent issued.

36.     Upon information and belief, Katz intentionally withheld the material DeBruyn patent from the USPTO as part of the prosecution of at least the '150, '285, '739, '075, '929, '984 and '252 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable.

37.     Upon information and belief, at least the '863, '551, '734, '762, '120, '134 and '223 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is material, therefore, the inequitable conduct committed by Katz with respect to at least the '739 patent taints these related patents, rendering them unenforceable. Upon information and belief, at least the '734, '120 and '223 patents, which are patents-in-suit, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material, therefore, the inequitable conduct committed by Katz with respect to at least the '929, '984 and '252 patents taints these related patents, rendering them unenforceable.

38.     Upon information and belief, at least the '863, '150, '984, '252, '285, '551, '734,'762, '120, '134 and '223 patents-in-suit are rendered unenforceable for inequitable conduct by Katz's intentional failure to disclose the DeBruyn patent to the USPTO.

39.     Upon information and belief, Katz repeatedly and intentionally failed to disclose Katz's own published international application WO 87/00375 ("the WO '375

26

application") to the USPTO during prosecution of the '739 patent and prior to the payment of the

issue fee during prosecution of the '285 patent.  The WO '375 application was filed under the

Patent Cooperation Treaty ("PCT") and published on January 15, 1987.  Pursuant to 35 U.S.C. §

102(b), the WO '375 application may be considered prior art for any claims having an effective

filing date more that one year after the January 15, 1987, publication date.

      40.    Upon information and belief, the WO '375 application can be considered

as prior art for any new matter that was added and claimed in the '739 and '285 patents, because

the '739 and '285 patents were all filed more than one year after the publication date of January

15, 1987, the '739 and '285 patents incorporate additional subject matter in their specifications

relative to the WO '375 application, and the '739 and '285 patents claim additional subject

matter relative to the WO '375 application.

      41.    Upon information and belief, the WO '375 application teaches a statistical

analysis system for use in conjunction with a public communication facility.  When the system

receives a call, a voice generator prompts the caller for information such as a key number or the

caller's telephone number.  If available, the caller's telephone number may be taken directly

from the communication facility.  After qualifying the caller using the number received, the

system retrieves polling-type data from the callers which is combined with stored data to isolate

a select subset of callers.  The WO '375 application has the same specification as the initial U.S.

'299 application Katz filed to which all other patents-in-suit claim priority and discloses much of

the same subject matter incorporated in subsequent patents claiming priority to it.  Therefore,

Katz was aware of the materiality of the WO '375 application.

      42.    Upon information and belief, the WO '375 application would have been

material to the patent examiner in determining what claims, if any, Katz was entitled to in the

27

'285 patent-in-suit and the related '739 patent. In particular, the WO '375 application is relevant to the basic elements claimed in the '739 and '285 patents, such as prompting callers with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

43.    Upon information and belief, Katz was aware of the duty to disclose information material to the patentability of any of Katz's pending patent applications. Mr. Katz had personal knowledge of the public disclosure of the WO '375 application. Katz failed to disclose the WO '375 application to the patent examiner during the prosecution of at least the '739 patent and prior to the payment of the issue fee during prosecution of the '285 patent. Therefore, the WO '375 application was not considered by the patent examiners in determining patentability as part of the prosecution on the merits of either the '739 or '285 patents.

44.    Upon information and belief, Katz intentionally withheld the WO '375 application from the USPTO as part of the prosecution on the merits of at least the '739 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable.

45.    Upon information and belief, at least the '984, '252, '863, '551, '734, '762, '120, '134 and '223 patents all claim priority to the '739 and '285 patents and claim subject matter to which the WO '375 application is material, therefore, the inequitable conduct committed by Katz with respect to at least the '739 and '285 patents taints these related patents, rendering them unenforceable.

28

46.     Upon information and belief, at least the '984, '252, '285, '863, '551, '734, '762, '120, '134 and '223, patents-in-suit are rendered unenforceable by the inequitable conduct committed in the parent '739 patent.

47.     Upon information and belief, Katz repeatedly and intentionally failed to disclose U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") during the prosecution of at least the '120 patent-in-suit. The Daudelin '995 patent, which was filed on October 6, 1986, and issued on July 24, 1990, is prior art to at least the '120 patent, which was filed in 1995.

48.     Upon information and belief, the Daudelin '995 patent discloses many of the features claimed in the '120 patent, and it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent. For example, the '120 patent discloses receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

49.     Upon information and belief, Katz was aware of the Daudelin '995 patent during the prosecution of the '120 patent and of its materiality, having cited it to the USPTO more than two years prior to the issuance of the '120 patent. Upon information and belief, Katz listed the '995 patent in previous IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

50.     Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

51.     Upon information and belief, at least the '223 patent, which is a patent-in-suit, claims priority to the '120 patent and claims subject matter related to the '120 patent, to

which the Daudelin '995 patent is material, therefore, the inequitable conduct committed by Katz with respect to the '120 patent taints at least this patent, rendering it unenforceable.

52.    Upon information and belief, at least the '120, and '223 patents-in-suit are rendered unenforceable for inequitable conduct by Katz's intentional failure to disclose the Daudelin '995 patent to the USPTO.

53.    Upon information and belief, Katz intentionally failed to inform the USPTO of inconsistent positions taken with respect to the Daudelin patents. At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of Katz patents-in-suit and related patents. The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

54.    Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the patents-in-suit and failed to inform the different patent examiners of Katz's inconsistent positions. During prosecution of the '734 patent, Katz did not characterize the Daudelin '910 patent as pertinent to DNIS. During prosecution of the '551 patent and '893 patents, Katz took the position that the Daudelin '910 patent was pertinent to DNIS capabilities. Subsequently, during prosecution of the '360 patent Katz asserted that "Daudelin does not teach DNIS."

55.    Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the

30

USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551 and '734 patents-in-suit unenforceable.

56.    Upon information and belief, at least, the '120 and '223 patents, which are patents-in-suit, claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material, therefore, at least the '120 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

57.    Upon information and belief, at least the '551, '734, '120, and '223 patents-in-suit are rendered unenforceable for inequitable conduct by Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

58.    Upon information and belief, Katz intentionally failed to inform the USPTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent"). During prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing . . . ." During prosecution of the '120 patent, Katz characterized the Riskin patent to the patent examiner as disclosing aspects pertaining to ANI only, and not DNIS.

59.    Upon information and belief, Katz took inconsistent positions as to the scope of the Riskin patent at different times, failed to inform the patent examiner of the prior

31

inconsistent positions, and had the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, therefore, Katz committed inequitable conduct, rendering at least the '075 and '120 patents unenforceable. Upon information and belief, at least, the '223 patent, which is a patent-in-suit, claims priority to the '120 patent and claims subject matter to which the Riskin patent is material, therefore, the inequitable conduct committed by Katz with respect to at least the '120 patent taints the '223 patent, rendering it unenforceable.

60.     Upon information and belief, at least the '120 and the '223 patents-in-suit are rendered unenforceable for inequitable conduct by Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

61.     Upon information and belief, Katz intentionally failed to disclose material information related to the *West Interactive Corp. v. First Data Resources, Inc.* litigation brought on October 24, 1990, West Interactive Corp. ("West") alleged, *inter alia*, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent) are invalid on several theories including prior use and prior art.

62.     Upon information and belief, West's allegations in that suit are material to all of the patents-in-suit which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

63.     Upon information and belief, during the prosecution of patents-in-suit, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

32

64.    Upon information and belief, Katz did not disclose the existence of the

*West Interactive Corp. v. First Data Resources, Inc.* litigation to the examiners of the '984, '252,

'285, '863, '551, '734, '762, '120, '134 and '223, patents-in-suit as part of prosecution of these

patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these

patents-in-suit, the nature of West's allegations relating to the invalidity and unenforceability of

the '739, '150 and '773 patents as set forth in the pleadings and other papers arising in the

litigation. Upon information and belief, this failure to disclose was committed with the intent to

deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled,

thereby committing inequitable conduct and rendering these patents unenforceable.

65.    Upon information and belief, Katz failed to disclose the *First Data*

*Resources, Inc. v. 900 Million, Inc. et al.* litigation brought on October 9, 1990. The defendants

in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation alleged invalidity and

unenforceability of the '739, '150 and '773 patents.

66.    Upon information and belief, the defendants' allegations in that suit are

material to all of the patents in suit which claim priority to at least the '739 patent and are

directed to similar subject matter as provided in the '739 patent, such as the '984, '252, '285,

'863, '551, '734, '762, '120,'134, and '223 patents-in-suit.

67.    Upon information and belief, during the prosecution of patents-in-suit,

Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and of

material information arising therefrom, as set forth in the pleadings and other papers arising

therein.

68.    Upon information and belief, Katz did not disclose the existence of the

*First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation to the examiners of the '984, '252,

33

'285, '863, '551, '734, '762, '120,'134, and '223 patents-in-suit as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents-in-suit the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

69.    Upon information and belief, Katz failed to disclose *First Data Resources Inc. v. West Interactive Corp., et al.* litigation brought on August 20, 1991. The defendants in the *First Data Resources Inc. v. West Interactive Corp.*, *et al.* litigation filed a counterclaim alleging, *inter alia*, the invalidity and unenforceability of the '739, '298 and '150 patents.

70.    Upon information and belief, the defendants' allegations in that suit are material to all of the patents-in-suit which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent, such as the '285, '984, '252, '863, '551, '734, '120, and '134 patents-in-suit.

71.    Upon information and belief, during the prosecution of these patents-in-suit, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

72.    Upon information and belief, as part of the prosecution of at least the '984, '252, '863, '551, '734, '120, and '134 patents-in-suit, Katz did not disclose the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after payment of the issue fee) to

34

the examiners of the '984, '252, '863, '551, '734, '120, and '134 patents-in-suit as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents-in-suit the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '298 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

73.    Upon information and belief, Katz failed to disclose to the USPTO during prosecution of the '134 patent-in-suit the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation brought on February 9, 1999. The defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia*, that the '739, '153, '252, '023, '285, '707, '863 and '734 patents are invalid and/or unenforceable.

74.    Upon information and belief, the defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '134 patent-in-suit.

75.    Upon information and belief, during the prosecution of the '134 patent-in-suit, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

76.    Upon information and belief, as part of the prosecution of the '134 patent, Katz waited to report the existence of the *Ronald A. Katz Technology Licensing, L.P. v. Micro*

35

*Voice Applications, Inc., et al.* litigation until after prosecution on the merits had close litigation to the examiner. Moreover, upon information and belief, Katz did not disclose to the examiners, the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '153, '252, '023, '285, '707, '863 and '734 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '134 patent unenforceable.

77.    Upon information and belief, during prosecution of at least the '762 and '120 patents, Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P., et al. v. AT&T Corp., et al.* litigation brought on July 8, 1997. AT&T Corp. asserted, *inter alia*, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 (U.S. Patent No. 5,349,633) patents are invalid.

78.    Upon information and belief, AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation are material to at least the '762 and '120 patents-in-suit, which are related to and claim related subject matter to the patents involved in that litigation.

79.    Upon information and belief, during the prosecution of the '762 and '120 patents-in-suit, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

80.    Upon information and belief, Katz did not disclose the existence of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.*, litigation to the examiners of

the '762 and '120 patents-in-suit as part of prosecution of these patents. Moreover, upon

information and belief, Katz did not disclose to the examiners of these patents-in-suit, the nature

of AT&T's allegations relating to the invalidity of the '739, '150, '298, '075, '929, '984, '631,

'153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents as set forth in the pleadings

and other papers arising in the litigation. Upon information and belief, this failure to disclose

was committed with the intent to deceive the USPTO into issuing patent claims of a scope

beyond which Katz was entitled, thereby committing inequitable conduct and rendering these

patents unenforceable.

      81.    Upon information and belief, Katz failed to disclose Patent Interference

No. 103,697 during prosecution of the '863, '734, '762, '120, and '134 patents. Patent

Interference No. 103,697 was declared on February 13, 1996, and was finalized by November

20, 1996. As part of that interference, the Board of Patent Appeals and Interferences ("BPAI")

held that the specification of the '968 patent did not provide written support for certain

limitations of count 1—which was alleged by Katz to be fully supported by the specification of

the '968 patent—and that count 1 was, therefore, "not entitled to benefit of [the '968 patent's]

filing date."

      82.    Upon information and belief, the Board of Patent Appeals and

Interferences' conclusion that the '968 patent lacked written support for certain alleged

limitations would have been material to the patent examiners of the '863, '734, '762, '120, and

'134 patents-in-suit, for purposes of, for example, establishing the effective date of a claim for

purposes of analyzing prior art. Indeed, upon information and belief, all of these patents-in-suit

claim priority to the '968 patent, and many of them, including at least the '863 and the '134

patents, are disclaimed with respect to the '968 patent.

83.    Upon information and belief, Katz failed to bring the existence of Patent Interference No. 103,697 to the attention of the patent examiners of at least the '863, '156, '965, '734, '762, '893, '120, '021 and '134 patents.  Upon information and belief, these failures to disclose were committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '863, '734, '762, '120 and '134 patents-in-suit unenforceable.

84.    Upon information and belief, Katz failed to disclose adverse findings in related patent prosecutions.

85.    Upon information and belief, during the prosecution of the '344 patent, Katz made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party telephone number."  The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968. . . ."  Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent.

86.    Upon information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."  Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means'... ."

87.     Upon information and belief, Katz claimed support for "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" in the '968 patent in Patent Interference No. 103,697, despite Examiner Brown's refutation of Katz's assertions that the '344 patent application was a continuation of the '968 patent and that the '968 patent supported the automatic number identification (ANI) decoder means limitation.

88.     Upon information and belief, during the Patent Interference No. 103,697, Katz did not inform the Board of Patent Appeals and Interferences of Examiner Brown's prior repudiation of Katz's assertion Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation.

89.     Upon information and belief, Examiner Brown's prior repudiation of Katz's assertion would have been material to the Board of Patent Appeals and Interferences' determination as to whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly in as much, as the Board ultimately concluded that Count 1, which was alleged by Katz to have support in the '968 patent, lacked support from the '968 patent. Count 1 recited, in part, "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" and "computer means ... responsive to said caller telephone number."

90.     Upon information and belief, even though the Board concluded that support for the Count 1 was lacking in the '968 patent, as part of the prosecution of the '156 Patent in 1997, Katz again alleged, but this time to Examiner Woo, that the '968 patent provided support for the limitation of "interface means... for receiving automatic number identification data... " Specifically, Katz alleged that the claim limitation was supported by essentially the

39

same text Katz previously cited during prosecution of the '344 patent and in the interference proceeding.

91.    Upon information and belief, Katz did not inform Examiner Woo of Examiner Brown's finding of the lack of written support in the '968 patent for the limitation "automatic number identification (ANI) decoder means."  Nor did Katz inform Examiner Woo of the Board of Patent Appeals and Interferences' finding of a lack of written support in the '968 patent for the limitation "computer means … responsive to said caller telephone number… ."

92.    Upon information and belief, Katz intentionally failed to inform the Board of Patent Appeals and Interferences and Examiner Woo of the prior repudiations of Katz's false assertions that certain claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct.

93.    Upon information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "[c]laim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before …Szlam….".

94.    Upon information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" with the intent to deceive the examiner.

95.    Upon information and belief, Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the examiner of the '965 patent in deciding the patentability of the

40

pending claims, particularly with respect to antedating prior art, therefore, these material misrepresentations with the intent to deceive render at least the '965 patent unenforceable.

96.     Upon information and belief, Katz failed to inform the patent examiners of certain of the patents-in-suit of the existence and outcome of certain Appeal Rulings of related patents. The outcomes of certain Appeal Rulings were, in some instances, adverse or contrary to positions Katz took during the prosecution of the patents-in-suit.

97.     Upon information and belief, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents-in-suit, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

98.     Upon information and belief, the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '762, '120, and '134 patents with respect to any claims reciting a multiple format limitation.

99.     Upon information and belief, Katz failed to inform the examiners of at least the '734, '762,'120, and '134 patents of the Board of Patent Appeals and Interferences' finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

100.     Upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '734, '762, '120, and '134 patents unenforceable.

41

101.    Upon information and belief, at least the '223 patent, which is a patent-in-suit, claims priority from and claims subject matter related to the '734, '762, '120, and '134 patents to which the Board of Patent Appeals and Interferences' finding is material, therefore, the inequitable conduct committed by Katz with respect to at least the '734, '762, '120, and '134 patents taints the '223 patent, rendering it unenforceable.

102.    Upon information and belief, during the prosecution of several patents-in-suit, Katz made false claims of priority to earlier applications with the intent to avoid prior art.

103.    Upon information and belief, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], i.e., the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for certain claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

104.    Upon information and belief, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,792,461 to Brown ("the Brown patent") to the USPTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Contrary to Katz's assertion, however, certain of the pending application's claims, which were directed to multiple call modes, were not entitled to the priority date of the '150 patent because there is no support in the '150 patent for multiple call modes.

42

Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

105.    Upon information and belief, during prosecution of the '734 patent, Katz made a false claim to priority in an attempt to antedate a prior art reference by Hester.  Katz stated "the reference by Hester bears a date of 1985, apparently 'September'. In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."  The parent application Katz referenced, however, does not disclose toll free calls or 900 "pay-per-call" modes.  Therefore, none the claims in the '734 patent reciting limitations directed to toll free calls or 900 "pay-per-call" modes are entitled to claim priority to that parent application's July 10, 1985, filing date.  Therefore, upon information and belief, during the prosecution of the '734 patent, Katz intentionally misrepresented the priority dates for such claims reciting limitations directed to toll free calls or 900 "pay-per-call" modes in order to antedate the Hester reference.

106.    Upon information and belief, during prosecution of the '734 patent, Katz mischaracterized Katz's pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987.  Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference."  Upon information and belief, Katz's statement was false at the time it was made. At the time Katz made this statement there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter that was not supported by the earlier filed application, and were, therefore, not entitled to an earlier priority date.  Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

107.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '984 and '734 patents unenforceable.

108.    Upon information and belief, at least the '120 and '223 patents-in-suit claim priority from and subject matter related to the '984 and '734 patents, therefore, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints these related patents, rendering them unenforceable.

109.    Upon information and belief, as set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents-in-suit and/or other related patents that infected, either directly or indirectly, all of the patents-in-suit, thereby rendering them unenforceable for inequitable conduct.

### Prayer For Relief

WHEREFORE, Comerica Incorporated, Comerica Bank & Trust, National Association and Comerica Securities, Inc. pray for judgment against RAKTL as follows:

(i)     Dismissing with prejudice the Complaint against Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc.;

(ii)    Denying any injunctive relief against Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc.;

(iii)   Declaring that Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc. have not and do not directly infringe, induce infringement or contribute to the infringement of any claim of the patents-in-suit;

(iv)   Declaring that each of the patents-in-suit is invalid;

(v)   Declaring that each of the patents-in-suit is unenforceable;

(vi)   Declaring that this is an exceptional case pursuant to Section 285 of the Patent Act and awarding Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc. their reasonable attorneys' fees in this action;

(vii)   Awarding to Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc. their costs and disbursements of this action; and

(viii)   Awarding Comerica Incorporated, Comerica Bank & Trust, National Association, and Comerica Securities, Inc. such other and further relief as the Court deems just and proper.


DATED: October 26, 2006                     Respectfully submitted,

                                            /s/ Paul J. Lockwood
                                            Paul J. Lockwood (# 3369)
                                            SKADDEN, ARPS, SLATE, MEAGHER &
                                            FLOM LLP
                                            One Rodney Square
                                            P.O. Box 636
                                            Wilmington, DE  19899
                                            Tel.: (302)651-3000
                                            Fax:  (302)651-3001

                                            45

Daniel A. DeVito
Guy Perry
Marti A. Johnson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
New York, NY 10036
Tel.: (212)735-3000
Fax: (212)735-2000


*Attorneys for Defendants*
*Comerica Incorporated, Comerica Bank &*
*Trust, N.A. and Comerica Securities, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I electronically filed Answer And

Counterclaims Of Comerica Incorporated, Comerica Securities, Inc. And Comerica Bank &

Trust, N.A., Comerica Incorporated's Corporate Disclosure Statement, Comerica Bank & Trust,

N.A.'s Corporate Disclosure Statement, and Comerica Securities, Inc.'s Corporate Disclosure

Statement with the Clerk of Court using CM/ECF which will send notification of such filings to

the following:

Mary B. Graham, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mbgefiling@mnat.com

William J. Wade, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7718
wade@rlf.com

Philip A. Rovner, Esq.
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com

/s/ Paul J. Lockwood
Paul J. Lockwood (I.D. #3369)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel.: (302) 651-3000
Fax: (302) 651-3001
plockwoo@skadden.com

*Attorneys For Defendants*
*Comerica Incorporated, Comerica Bank &*
*Trust, N.A. and Comerica Securities, Inc.*