**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | |
| Plaintiff, | |
| v. | Civil Action No.  06-CV-544 (GMS) |
| TD BANKNORTH INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; COMERICA INCORPORATED; COMERICA BANK & TRUST, NATIONAL ASSOCIATION; COMERICA SECURITIES, INC.; CERIDIAN CORPORATION; COMDATA CORPORATION; DILLARD'S, INC.; DILLARD INVESTMENT CO., INC.; LASALLE BANK CORPORATION; LASALLE BANK NATIONAL ASSOCIATION; LASALLE FINANCIAL SERVICES, INC.; ABN AMRO MORTGAGE GROUP, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANTS LASALLE BANK CORPORATION, LASALLE BANK NATIONAL
ASSOCIATION, LASALLE FINANCIAL SERVICES, INC.
AND ABN AMRO MORTGAGE GROUP, INC.**

Defendants LaSalle Bank Corporation, LaSalle Bank National Association, LaSalle

Financial Services, Inc. and ABN AMRO Mortgage Group, Inc. (collectively "LaSalle") for their

Answer, Affirmative Defenses and Counterclaims to Plaintiff Ronald A. Katz Technology

Licensing, L.P.'s ("RAKTL") Complaint for Patent Infringement ("Complaint") state as follows:

<u>**THE PARTIES**</u>

1.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 1 of the Complaint and therefore denies the same.

2.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and therefore denies the same.

3.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and therefore denies the same.

4.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore denies the same.

5.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies the same.

6.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies the same.

7.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and therefore denies the same.

8.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and therefore denies the same.

9.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore denies the same.

10.      LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore denies the same.

11.      Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

## JURISDICTION AND VENUE

15.     LaSalle admits that this action purports to be an action for patent infringement arising under the provisions of the Patent Laws of the United States, Title 35, United States Code and that United District Courts have original jurisdiction over civil actions arising under 28 U.S.C. § 1338(a), but denies that LaSalle has committed any acts of patent infringement.

16.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies the same.

19.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies the same.

20.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     LaSalle objects to the characterization of the "LaSalle Defendants" in paragraph 21 of the Complaint.  For purposes of this action only, LaSalle admits that it is subject to personal jurisdiction in this District, but denies that it has committed any acts of patent infringement.

22.     LaSalle does not contest venue in this District for purposes of this action only, to the extent that the allegations of paragraph 22 apply to LaSalle.  To the extent the allegations of paragraph 22 apply to the other defendants, no answer is required.

## BACKGROUND

23.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies the same.

24.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore denies the same.

25.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies the same.

26.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and therefore denies the same.

27.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint and therefore denies the same.

28.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and therefore denies the same.

29.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and therefore denies the same.

30.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and therefore denies the same.

31.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint and therefore denies the same.

32.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and therefore denies the same.

33.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint and therefore denies the same.

34.     LaSalle admits that it has not taken a license to the patents-in-suit, but denies the remaining allegations of paragraph 34 of the Complaint, to the extent that they pertain to LaSalle.  To the extent the allegations of paragraph 34 apply to the other defendants, no answer is required.

## THE ASSERTED PATENTS

35.     LaSalle admits that the '968 patent is entitled "Statistical Analysis System For Use With Public Communication Facility," and on its face lists Ronald A. Katz as sole inventor and December 20, 1988 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 of the Complaint, and therefore denies the same.

36.     LaSalle admits that the '150 patent is entitled "Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and May 29, 1990 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint, and therefore denies the same.

37.     LaSalle admits that the '984 patent is entitled "Telephone Interface Call Processing System with Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and July 7, 1992 as the issue date.  LaSalle denies the remaining allegations in paragraph 37 of the Complaint.

38.     LaSalle admits that the '252 patent is entitled "Telephone Interface Call Processing System with Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 5, 1993 as the issue date.  LaSalle denies the remaining allegations in paragraph 38 of the Complaint.

39.     LaSalle admits that the '285 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and September 27, 1994 as the issue date.   LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 of the Complaint, and therefore denies the same.

40.     LaSalle admits that the '863 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 4, 1997 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40 of the Complaint, and therefore denies the same.

6

41.     LaSalle admits that the '551 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and September 29, 1998 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 of the Complaint, and therefore denies the same.

42.     LaSalle admits that the '734 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 27, 1998 as the issue date.  LaSalle denies the remaining allegations in paragraph 42 of the Complaint.

43.     LaSalle admits that the '762 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and April 27, 1999 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 of the Complaint, and therefore denies the same.

44.     LaSalle admits that the '893 patent is entitled "Multiple Format Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and June 29, 1999 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 of the Complaint, and therefore denies the same.

45.     LaSalle admits that the '120 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and October 26, 1999 as the issue date.  LaSalle denies the remaining allegations in paragraph 45 of the Complaint.

46.    LaSalle admits that the '021 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and March 7, 2000 as the issue date. LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 46 of the Complaint, and therefore denies the same.

47.    LaSalle admits that the '065 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and November 14, 2000 as the issue date. LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 of the Complaint, and therefore denies the same.

48.    LaSalle admits that the '965 patent is entitled "Voice-Data Telephonic Interface Control System," and on its face lists Ronald A. Katz as sole inventor and January 1, 2002 as the issue date. LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 of the Complaint, and therefore denies the same.

49.    LaSalle admits that the '134 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and February 19, 2002 as the issue date. LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49 of the Complaint, and therefore denies the same.

50.    LaSalle admits that the '703 patent is entitled "Telephonic-Interface Lottery System," and on its face lists Ronald A. Katz as sole inventor and July 23, 2002 as the issue date. LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 50 of the Complaint, and therefore denies the same.

8

51.     LaSalle admits that the '223 patent is entitled "Telephone Interface Call Processing System With Call Selectivity," and on its face lists Ronald A. Katz as sole inventor and August 13, 2002 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 of the Complaint, and therefore denies the same.

52.     LaSalle admits that the '415 patent is entitled "Telephonic-Interface Game Control System," and on its face lists Ronald A. Katz as sole inventor and January 28, 2003 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 of the Complaint, and therefore denies the same.

53.     LaSalle admits that the '360 patent is entitled "Telephonic-Interface Statistical Analysis System," and on its face lists Ronald A. Katz as sole inventor and January 13, 2004 as the issue date.  LaSalle is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint, and therefore denies the same.

## FIRST CLAIM

54.     With respect to paragraph 54 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

55.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint and therefore denies the same.

56.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 56 of the Complaint and therefore denies the same.

57.     LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A. Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984 patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 and therefore denies the same.

58.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint and therefore denies the same.

59.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint and therefore denies the same.

60.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint and therefore denies the same.

61.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint and therefore denies the same.

## <u>SECOND CLAIM</u>

62.     With respect to paragraph 62 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

63.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint and therefore denies the same.

64.     LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint and therefore denies the same.

65.    LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A. Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984 patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 and therefore denies the same.

66.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint and therefore denies the same.

67.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint and therefore denies the same.

68.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint and therefore denies the same.

69.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 of the Complaint and therefore denies the same.

## THIRD CLAIM

70.    With respect to paragraph 70 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

71.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint and therefore denies the same.

72.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 of the Complaint and therefore denies the same.

73.    LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A.

Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984 patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73 and therefore denies the same.

74.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the Complaint and therefore denies the same.

75.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 of the Complaint and therefore denies the same.

76.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the Complaint and therefore denies the same.

77.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint and therefore denies the same.

## FOURTH CLAIM

78.    With respect to paragraph 78 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

79.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of the Complaint and therefore denies the same.

80.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 of the Complaint and therefore denies the same.

81.    LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A. Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984

patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 and therefore denies the same.

82.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the Complaint and therefore denies the same.

83.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83 of the Complaint and therefore denies the same.

84.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Complaint and therefore denies the same.

85.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Complaint and therefore denies the same.

## **FIFTH CLAIM**

86.    With respect to paragraph 86 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

87.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint and therefore denies the same.

88.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint and therefore denies the same.

89.    LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A. Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984 patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 89 and therefore denies the same.

90.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint and therefore denies the same.

91.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91 of the Complaint and therefore denies the same.

92.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint and therefore denies the same.

93.    LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint and therefore denies the same.

## **SIXTH CLAIM**

94.    With respect to paragraph 94 of the Complaint, LaSalle incorporates by reference each and every response contained in paragraphs 1-53 above as though fully set forth herein.

95.    Admitted.

96.    LaSalle objects to the characterization of the "LaSalle Defendants" in paragraph 96 of the Complaint.  LaSalle construes this as an allegation that all of the "LaSalle Defendants" engage in the alleged activities.  The allegations of paragraph 96 are therefore denied, for at least the reason that LaSalle Bank Corporation is a holding company and does not engage in any of the alleged activities.

97.    LaSalle admits that on their face the '968, '150 and '285 patents list Ronald A. Katz as inventor and the '120, '134, '223, '252, '360, '551, '734, '863, '893, '965, and '984

patents list RAKTL as the assignee.  LaSalle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97 and therefore denies the same.

98.    LaSalle objects to the characterization of the "LaSalle Defendants" in paragraph 98 of the Complaint.  LaSalle construes this as an allegation that all of the "LaSalle Defendants" engage in the alleged activities.  The allegations of paragraph 98 are therefore denied, for at least the reason that LaSalle Bank Corporation is a holding company and does not engage in any of the alleged activities.

99.    Denied.

100.    Denied.

101.    Denied.

## LASALLE'S AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), LaSalle asserts the following affirmative defenses to Plaintiff's Complaint.

### First Defense

LaSalle does not infringe any claim of the patents-in-suit directly, by inducement or contribution.

### Second Defense

The claims of the patents-in-suit are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, et. seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and

112.

### Third Defense

One or more of the patents-in-suit are unenforceable due to inequitable conduct by RAKTL, Ronald A. Katz and/or their agents and attorneys before the United States Patent and Trademark Office as part of the prosecution of the patents-in-suit as described with particularity in the averments of Count III of LaSalle's Counterclaims below, which averments are realleged and reincorporated here by reference as if set forth in full.

### Fourth Defense

The patents-in-suit are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents-in-suit.

### Fifth Defense

The claims against LaSalle are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel due to RAKTL's unreasonable delay in asserting the patents-in-suit.

### Sixth Defense

The claims against LaSalle are barred, at least in part, pursuant to 35 U.S.C. § 286 for all events occurring more than six years prior to RAKTL's filing of this Complaint.

### Seventh Defense

RAKTL is barred from recovering damages from LaSalle for infringement of the patents-in-suit, if any, until the date RAKTL provided proper notice to LaSalle pursuant to 35 U.S.C. §

287(a).

## Eighth Defense

The claims against LaSalle are barred, in whole or in part, by the doctrine of unclean hands.

## Ninth Defense

RAKTL's claims are barred in whole or in part because RAKTL has engaged in patent misuse by initiating this sham litigation and trying to enforce the patents-in-suit in bad faith.

## Tenth Defense

Prosecution history estoppel applies to preclude RAKTL from maintaining that any claim of the patents-in-suit covers, either literally or under the doctrine of equivalents, any of the accused systems operated by LaSalle.

## Reservation of Rights

LaSalle reserves the right to add any additional defenses or counterclaims that discovery may reveal.

## Request for Relief

Except as specifically admitted, LaSalle denies each and every averment contained in Paragraphs 1 through 101 of the Complaint and denies that Plaintiff is entitled to any of the relief requested in its Request for Relief. LaSalle respectfully requests that the Court enter judgment in its favor and against RAKTL on all of RAKTL's claims; that the Court find this case exceptional

and award LaSalle its costs and attorneys' fees pursuant to 35 U.S.C. § 285; and that the Court award such other further relief as the Court deems appropriate.

### LASALLE'S COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, LaSalle Bank Corporation, LaSalle Bank National Association, LaSalle Financial Services, Inc. and ABN AMRO Mortgage Group, Inc. (collectively "LaSalle") hereby assert the following counterclaims against Ronald A. Katz Technology Licensing, L.P. ("RAKTL") and aver as follows:

### Nature and Basis of Action

1. This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 et seq.  LaSalle requests declarations that: (i) it does not infringe any valid, enforceable claim of U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,930,150 ("the '150 patent"), 5,128,984 ("the '984 patent"), 5,251,252 ("the '252 patent"), 5,351,285 ("the '285 patent"), 5,684,863 ("the '863 patent"), 5,815,551 ("the '551 patent"), 5,828,734 ("the '734 patent"), 5,898,762 ("the '762 patent"), 5,917,893 ("the '893 patent"), 5,974,120 ("the '120 patent"), 6,035,021 ("the '021 patent"), 6,148,065 ("the '065 patent"), 6,335,965 ("the '965 patent"), 6,349,134 ("the '134 patent"), 6,424,703 ("the '703 patent"), 6,434,223 ("the '223 patent"), 6,512,415 ("the '415 patent") and 6,678,360 ("the '360 patent"), (collectively "the patents-in-suit"); (ii) the patents-in-suit are invalid; and (iii) the patents-in-suit are unenforceable.

### The Parties, Jurisdiction and Venue

2.     LaSalle Bank Corporation is a Delaware corporation with a principal place of

business at 135 LaSalle Street, Chicago, Illinois 60603. LaSalle Bank National Association is national banking association, and subsidiary of LaSalle Bank Corporation, with a principal place of business at 135 LaSalle Street, Chicago, Illinois 60603. LaSalle Financial Services, Inc. is a Delaware corporation, and subsidiary of LaSalle Bank Corporation, with a principal place of business at 135 LaSalle Street, Chicago, Illinois 60603. ABN AMRO Mortgage Group, Inc. is a Delaware corporation, and subsidiary of LaSalle Bank Corporation, with a principal place of business at 777 East Eisenhower Parkway, Suite 700, Ann Arbor, Michigan 48108.

3.     According to RAKTL's Complaint, RAKTL is a California limited partnership having a principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.     This Court has personal jurisdiction over RAKTL by virtue of the fact that RAKTL has submitted to the jurisdiction of this Court by bringing the instant action.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

## **Factual Allegations Common to All Counts**

7.     Upon information and belief, RAKTL purports to be the owner by assignment of each of the patents-in-suit.

8.     RAKTL has asserted that LaSalle has directly and contributorily infringed and

induced others to infringe one or more claims of each of the patents-in-suit.

9.      LaSalle has not and does not infringe directly, by inducement or by contribution, any valid and enforceable claim of the patents-in-suit.

10.      Upon information and belief, all claims of the patents-in-suit are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, et. seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

11.      Upon information and belief, the patents-in-suit are unenforceable by the doctrine of prosecution laches due to the unreasonable delay in seeking issuance of the patents-in-suit.

12.      Upon information and belief, the patents-in-suit are also unenforceable due to the pattern and practice of inequitable conduct committed by RAKTL, Ronald A. Katz and/or their agents or attorneys (collectively "Katz") before the United States Patent and Trademark Office ("USPTO") as part of the prosecution of the patents-in-suit and/or related patents and patent applications thereto as described in Count III of LaSalle's Counterclaims below.

## COUNT I
### (Declaratory Judgment Regarding Non-Infringement Of The Patents-In-Suit)

13.      LaSalle realleges and incorporates the averments of Paragraphs 1 through 12, inclusive, of its Counterclaims as if set forth herein in full.

14.      There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1, et seq. concerning LaSalle's non-infringement of the claims of the patents-in-suit.

15.      LaSalle is entitled to a judicial declaration that it has not and does not infringe

directly, by inducement or by contribution, any valid, enforceable claim of the patents-in-suit.

**COUNT II**
**(Declaratory Judgment Regarding Invalidity of the Patents-In-Suit)**

16.    LaSalle realleges and incorporates the averments of Paragraphs 1 through 12, inclusive, of its Counterclaims as if set forth herein in full.

17.    There is an actual and justiciable controversy between the parties concerning the invalidity of the patents-in-suit for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1, et. seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

18.    LaSalle is entitled to a judicial declaration and order that the patents-in-suit are invalid.

**COUNT III**
**(Declaratory Judgment Regarding Unenforceability of the Patents-In-Suit)**

19.    LaSalle realleges and incorporates the averments of Paragraphs 1 through 12, inclusive, of its Counterclaims as if set forth herein in full.

20.    There is an actual and justiciable controversy between the parties concerning the unenforceability of the patents-in-suit.

21.    Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for Patent Examination Procedure ("MPEP") § 2000.01, et seq. impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the USPTO, which requires he or she to disclose to the USPTO all information that is material to the patentability of the application under examination.  Breach of this duty of candor, good faith and honesty with an intent to deceive the USPTO constitutes inequitable conduct so as to render

the affected patents unenforceable.

22.     Upon information and belief, Katz, with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the patents-in-suit and related applications – upon which the patents-in-suit claim priority and which also contain related and material claimed subject matter – that violated the duty of candor, good faith and honesty owed by patent applicants to the USPTO.

23.     In addition to the aforementioned patents-in-suit, other related patents and applications, to which the patents-in-suit claim priority, are relevant to the Counterclaim of unenforceability based on Katz's inequitable conduct.  These related patents include U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,048,075 ("the '075 patent"), 5,365,575 ("the '575 patent"), 6,016,344 (" the '344 patent"), 5,014,298 ("the '298 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"), 5,073,929 ("the '929 patent"), 5,793,846 ("the '846 patent"), 6,151,387 ("the '387 patent") and 5,218,631 ("the '631 patent").   The related applications include U.S. Patent Application Nos. 06/753,299, ("the '299 application"), 07/342,506 ("the '506 application") and 07/640,337 ("the '337 application").

24.     Upon information and belief, on multiple occasions as part of the prosecution of the patents-in-suit and in related patents and/or applications and with the intent to deceive the USPTO, Katz intentionally: (I) failed to disclose material prior art known to Katz; (II) failed to inform the USPTO of inconsistent positions taken during prosecution; (III) failed to identify or disclose material information from related litigations or proceedings; (IV) failed to inform patent examiners of adverse findings by others; and (V) made false claims of priority so as to avoid the

prior art. These repeated and intentional violations of Katz's duty of candor, good faith and honesty, which are described in detail below, render the patents-in-suit invalid and unenforceable.

## I.    KATZ INTENTIONALLY FAILED TO DISCLOSE MATERIAL PRIOR ART.

25.    Upon information and belief, as part of the prosecution of the patents-in-suit and related patents and applications, Katz repeatedly failed to disclose material references known to Katz with the intent to deceive the USPTO, as set forth below.

### A.    Katz intentionally failed to disclose the Barger patent.

26.    Upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,071,698 to Barger, Jr. et al. ("the Barger patent") to the USPTO Examiner as part of the prosecution of several of the patents-in-suit and related patents and/or applications.

27.    The Barger patent is prior art to the patents-in-suit because it was filed in the USPTO on January 10, 1977, a full eight years before the effective filing date of Katz's first patent.

28.    The Barger patent is material to the patents-in-suit. The Barger patent discloses an automated interactive voice system for marketing merchandise, such as audio recordings. A customer selects and listens to an audio sample and may arrange payment by credit card or other means. The system maintains a complete record of all transactions, including requests for demonstrations played by each customer, in order to maintain current inventory records and determine trends. The system uses the transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.

23

29.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains information from the customer and enters the information into a database.    When the customer requests a specific demonstration, the operator enters the appropriate code into the system and the audio sample is played to the customer.    Upon completion of the demonstration, the system returns the customer to a live operator, who will take the order or provide another audio sample for the caller to listen to.

30.    Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the USPTO in deciding whether to allow the claims of the patents-in-suit and related patents and/or applications.    For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

31.    The materiality of the Barger patent was confirmed by the USPTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed an Examiner's rejection of certain of Katz's pending claims based in part on the disclosure of the Barger patent.

32.    Upon information and belief, Katz had knowledge of the materiality and relevance of the Barger patent to the claims of the patents-in-suit that were prosecuted by Katz before the USPTO.    Upon information and belief, Katz became aware of the Barger patent and its materiality on or about December 1988 as part of the prosecution of an international application (WO 87/000375), which is based on Katz's U.S. Patent Application No. 06/753,299 ("the '299 application").    As part of the prosecution of the WO 87/000375 application, the European Patent Office ("EPO") identified the Barger patent as "particularly relevant" in regard

to the patentability of the claims.  In addition, the EPO sent the international search report identifying the Barger patent as "particularly relevant" to Katz's European attorney, Mr. Graham F. Coles, on December 27, 1988.

33.     Notably, all of the patents-in-suit claim priority to the '299 application.  Thus, the international search report put Katz on notice both of the existence and materiality of the Barger patent to the subject matter claimed in the patents-in-suit.

34.     Upon information and belief, Katz considered the Barger patent so significant that Katz ultimately acquired the patent by assignment through First Data Resources Inc. ("First Data") on November 2, 1990 and by subsequent assignment to RAKTL on September 17, 1994.

35.     Notwithstanding Katz's knowledge of the Barger patent and of its materiality, upon information and belief, Katz failed to disclose this material piece of prior art to the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984 and '965 patents.

36.     In addition, Katz did not disclose the existence of the Barger patent to the USPTO as part of the substantive prosecution of the '285 patent.  Rather, Katz waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the Barger patent, only seven days before the '285 patent issued.

37.     Upon information and belief, Katz intentionally withheld the material Barger patent from the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984, '965 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable.  These patents are either patents-in-suit, in the case of the '150, '965 and

'285 patents, and/or are patents from which patents-in-suit claim priority and which share related, material subject matter.

38.     The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '965 and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

39.     At least, the '893 and '703 patents, which are patents-in-suit, claim priority from and claim subject matter related to both the '150 and '285 patents to which the Barger patent is also material.    Accordingly, at least the '893 and '703 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

40.     Likewise, at least the '863, '551, '734, '762, '893, '120, '021, '065, '134, '703, '223, '415 and '360 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material.    The close relationship between these child patents and the '739 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '863, '551, '762, '893, '021, '065, '134, '703, '415 and '360 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '739 patent.    Accordingly, at least the '863, '551, '734, '762, '893, '120, '021, '065, '134, '703, '223, '415 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

41.     Similarly, at least the '965 and '134 patents, which are patents-in-suit, all claim

priority from and claim subject matter related to both the '153 and the '298 patents to which the Barger patent is also material. Accordingly, at least the '965 and '134 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '153 and the '298 patents.

42.    Likewise, at least the '734, '120, '415, '252 and '223 patents-in-suit claim priority from and claim subject matter related to both the '929 and '984 patents to which the Barger patent is also material. The close relationship between the '734, '120 and '223 patents and the '984 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '984 patent. Accordingly, at least the '734, '120, '415, '252 and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929 and '984 patents.

43.    Accordingly, at least the '150, '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415, '984, '252 and '360 patents-in-suit, are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Barger patent to the USPTO.

### B.    Katz intentionally failed to disclose the DeBruyn patent.

44.    Upon information and belief, Katz had knowledge of and failed to disclose European Patent No. 0032410 to DeBruyn ("the DeBruyn patent") to the USPTO as part of the prosecution of many of Katz's earlier patents, including at least the '150, '285, '984 and '252 patents, which are patents-in-suit, as well as the related '739 and '929 patents. Except for the

'968 patent, all of the patents-in-suit claim priority to one or more of these patents.

45.     The DeBruyn patent is prior art to the patents-in-suit because it was published by the EPO as European Patent Specification EP0032410A1 on July 22, 1981.

46.     The DeBruyn patent is material to the patents-in-suit. The DeBruyn patent discloses an interactive voice system for implementing a lottery. The system receives a call from a prospective player along with the player's telephone number. Both French and English speaking players are accommodated by the same system by receiving calls dialed to different telephone numbers. A caller's access to the system may be restricted based on various criteria such as the number of times a caller accesses the system per week or the amount wagered. DeBruyn also discloses issuing secret codes to prospective players that can also be entered into the system before access is granted to the caller.

47.     After gaining access to the system, the player is cued to enter a lottery number using a telephone keypad. After the player enters the lottery number, the system stores the lottery number and the player's telephone number. The system will also parrot back to the caller the lottery number entered to confirm proper entry of the desired lottery number for play before subsequently disconnecting the call.

48.     Because the DeBruyn patent discloses many features relevant to Katz's claims, it would have been material to the USPTO in deciding whether to allow the claims of the patents-in- suit. For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses

qualifying callers based on the caller's telephone number.

49.    The DeBruyn patent is substantively identical to Canadian Patent No. 1,162,336 to DeBruyn ("The DeBruyn Canadian patent"), which has been relied upon by the Director of the USPTO in ordering the reexamination of several of Katz's patents related to the patents-in-suit, including U.S. Patent Nos. 5,561,707 ("the '707 patent"), 5,255,309 ("the '309 patent") and 5,259,023 ("the '023 patent").  With respect to the '309 patent, for example, upon information and belief, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate."    Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.  Upon information and belief, the Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 and '707 patents under 35 U.S.C. § 102.  Like most of the patents-in-suit, each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

50.    Further, an examiner at the USPTO has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C.  §  102(b).    Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19.  The Examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 under 35 U.S.C. § 103.  *Id.* at 2, 32-43.

51.    The Examiner has further determined that the DeBruyn Canadian patent

29

anticipates at least claims 1, 2, 7, 8, 10, 21 and 22-27 of the '023 patent under 35 U.S.C. §

102(b). Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office

Action mailed September 1, 2005, at 2-9. The Examiner has also relied on the DeBruyn

Canadian patent in rejecting claims 5, 6, 22 and 23 under 35 U.S.C. § 103. *Id.* at 24-26, 28.

52. Upon information and belief, Katz became aware of the DeBruyn patent and its

materiality to the subject matter claimed in the patents-in-suit by at least as early as January

1989. The same international search report that identified the Barger patent and, upon

information and belief, was sent to Katz's European attorney, Mr. Graham F. Coles, on

December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to

the patentability of the claims of Katz's '299 application.

53. Notwithstanding Katz's knowledge of the DeBruyn patent and its materiality,

upon information and belief, Katz failed to disclose this material prior art to the USPTO as part

of the prosecution of at least the '150, '075, '739, '929, '984, '075 and '252 patents.

54. In addition, Katz did not disclose the existence of the DeBruyn patent to the

USPTO as part of the substantive prosecution of the '285 patent. Rather, Katz waited until after

the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose

the DeBruyn patent, only seven days before the '285 patent issued.

55. Upon information and belief, Katz intentionally withheld the material DeBruyn

patent from the USPTO as part of the prosecution of at least the '150, '285, '739, '075, '929,

'984 and '252 patents with the intent to deceive the USPTO into issuing patent claims of a scope

beyond which Katz was entitled, thereby committing inequitable conduct and rendering those

patents unenforceable. These patents are either patents-in-suit and/or are patents from which

patents-in-suit claim priority and which share related, material subject matter.

56.    The inequitable conduct committed by Katz with respect to at least the '150, '285, '739, '075, '929, '984 and '252 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the DeBruyn patent is material, rendering these related patents unenforceable.

57.    At least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents, which are patents-in-suit, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material.  Accordingly, at least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

58.    Likewise, at least the '893, '156 and '703 patents all claim priority from and claim subject matter related to both the '150 and '285 patents to which the DeBruyn patent is also material.  Accordingly, at least the '893 and '703 patents-in-suit are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

59.    Similarly, at least the '734, '120, '415 and '223 patents, which are patents-in-suit, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material.  The close relationship between these child patents and those to which they claim priority is evidenced by terminal disclaimers filed by Katz for at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the subject matter claimed in the '734 patent and that disclosed in the '252 patent.

Accordingly, at least the '734, '120, '415 and the '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984 and '252 patents.

60.     Accordingly, at least the '150, '285, '863, '551, '734, '984, '252, '762, '893, '120, '021,  '065, '965, '134, '703, '223, '415 and '360 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the DeBruyn patent to the USPTO.

### C.     Katz intentionally failed to disclose the Yoshizawa article.

61.     Upon information and belief, as part of the prosecution of at least the '575 patent, Katz failed to disclose a prior art article entitled "Voice Response System for Telephone Betting" by Yoshizawa et al. ("the Yoshizawa article") that appeared in the 1977 issue of Hitachi Review magazine.  The '575 patent is the parent to at least the '703 patent-in-suit.  Upon information and belief, Katz had knowledge of the Yoshizawa article's materiality and relevance to the pending claims during the prosecution of the '575 patent before the USPTO and nevertheless withheld it.

62.     The Yoshizawa article discloses an automated off-track betting system.  The system includes a voice response unit, a public telephone network and a central processing unit. Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets - for example, a wager on a horse to show.  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number referencing the transaction.  Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account.  The article specifically mentions that the system could be

used for "winning lot number service", i.e., in other words, a lottery.

63.     Many features relevant to the '575 patent claims are disclosed in the Yoshizawa article.  For example, Yoshizawa discloses limiting access and use to a telephone based gambling or lottery system and qualifying callers based on an account number.

64.     Upon information and belief, Katz was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, over two years before the issuance of the '575 patent, when it was cited in response to interrogatories in the *First Data Resources Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal. August 20, 1991) litigation ("the West case").

65.     Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality, upon information and belief, Katz failed to disclose this material prior art reference to the USPTO as part of the prosecution of at least the '575 patent in violation of his duty of candor.

66.     Upon information and belief, Katz intentionally withheld the material Yoshizawa article from the USPTO as part of the prosecution of at least the '575 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575 patent unenforceable.

67.     This inequitable conduct committed by Katz with respect to at least the '575 patent taints other related patents, which claim priority to the '575 patent and which claim related subject matter to which the Yoshizawa article is material, rendering these related patents unenforceable.

68.     At least the '156, '576, '135 and '703 patents all claim priority from and claim

subject matter related to the '575 patent to which the Yoshizawa article is also material.  The related nature of the '575 patent and the subsequently filed patents is further evidenced by terminal disclaimers filed as part of the prosecution of at least the '156 and '703 patents, effectively conceding that there is no patentable distinction between these patents and the '575 patent.

69.    Accordingly, at least the '703 patent-in-suit is rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

**D.    Katz intentionally failed to disclose the Florafax brochure**.

70.    Upon information and belief, during the prosecution of at least the '576 patent and the '575 patent, Katz had knowledge of and failed to disclose to the USPTO a brochure dated January 22, 1986 and circulated by Florafax during this timeframe ("the Florafax brochure").

71.    The Florafax brochure is material to at least the '576 and '575 patents. The Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet.  After purchasing the bouquet, the sender receives a card from the florist that includes a telephone number and an ID number printed thereon.  Upon calling the number indicated, the sender is prompted to enter the ID number and record a personal message. When the flowers are delivered, a corresponding card instructs the recipient to call a specified telephone number to hear the sender's prerecorded message.  The message may only be played twice before it is automatically erased.  The Florafax "Talking Bouquet" system was test marketed at least as early as December 1985, thereby evidencing public use of the concepts embodied in the brochure.

72.     The Florafax brochure and associated service operation disclose many of the features claimed in the '576 and '575 patents.   For example, providing  cards or tickets with an identification number printed thereon for access to an automated interactive system.

73.     Upon information and belief, Katz was aware of the materiality of the Florafax reference at least as early as September 2, 1992, over two years before the issuance of the '575 patent and over seven years before the issuance of the '576 patent, when it was cited in response to interrogatories in the West case.

74.     Upon information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it to the USPTO as part of the prosecution of at least the '576 and '575 patents in violation of his duty of candor.

75.     Upon information and belief, Katz intentionally withheld the material Florafax brochure from the USPTO as part of the prosecution of at least the '576 and '575 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '576 and '575 patents unenforceable.

76.     This inequitable conduct committed by Katz with respect to at least the '576 and '575 patents taints other related patents, which claim priority to the '576 and '575 patents and which claim related subject matter to which the Florafax brochure is material, rendering these related patents unenforceable.

77.     At least the '703 patent-in-suit claims priority from, and claims subject matter related to the '575 patent to which the Florafax brochure is also material.

78.    Accordingly, at least the '156 and '703 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

79.    Accordingly, at least the '703 patent-in-suit is rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Florafax brochure to the USPTO.

**E.    Katz intentionally failed to disclose his own International Application WO 87/00375.**

80.    Upon information and belief, Katz had knowledge of and failed to disclose his own published international application WO 87/00375 ("the WO '375 application") to the USPTO as part of the prosecution of at least the '285, '863, and '551 patents, which are all patents-in-suit.    Upon information and belief, Katz also failed to disclose the WO '375 application as part of the prosecution of at least the related '739, '156 and '929 patents.

81.    The WO '375 application teaches a statistical analysis system for use in conjunction with a public communication facility.    When the system receives a call, a voice generator prompts the caller for information such as a key number or the caller's telephone number.    If available, the caller's telephone number may be taken directly from the communication facility.    After qualifying the caller using the number received, the system retrieves polling-type data from the callers which is combined with stored data to isolate a select subset of callers.    The WO '375 application has the same specification as the initial U.S. '299 application Katz filed to which all other patents-in-suit claim priority and discloses much of the same subject matter incorporated in subsequent patents claiming priority to it.

82.     The WO '375 application was filed under the Patent Cooperation Treaty ("PCT") and published on January 15, 1987.  Therefore, pursuant to 35 U.S.C. § 102(b), the WO '375 application would be considered prior art for any claims with an effective filing date more than one year after the January 15, 1987 publication date.

83.     The '739, '929, '285, '863, '156 and '551 patents incorporated and claimed new subject matter from the WO '375 application and were all filed more than one year after the publication date of January 15, 1987.  Therefore, the WO '375 application would be prior art for any new material added and claimed in those patents.

84.     The WO '375 application would have been material to the Examiner in determining what claims, if any, Katz was entitled to in the '285, '863, and '551 patents-in-suit and the related '739, '156 and '929 patents.  For example, the materiality of the WO '375 application was confirmed by the USPTO when it was cited against the '984 patent by the Examiner in May of 1991.  In particular, the WO '375 application would be relevant to the basic elements claimed in the '739, '929, '285, '863, '156 and '551 patents, such as prompting callers with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

85.     Upon information and belief, despite Katz's duty to disclose information material to his applications and his personal knowledge of the WO '375 application's materiality, Katz failed to disclose the WO '375 application to the patent examiners as part of the prosecution of at least the '739, '929, '285, '863, '156 and '551 patents.

86.     Upon information and belief, Katz intentionally withheld the WO '375 application from the USPTO as part of the prosecution of at least the '739, '929, '285, '863, '156

and '551 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either patents-in-suit, in the case of the '285, '863, and '551 patents, and/or are patents from which patents-in-suit claim priority and which share related, material subject matter.

87.    The inequitable conduct committed by Katz with respect to at least the '739, '929, '285, '863, '156 and '551 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the WO '375 application is material, rendering these related patents unenforceable. For example, all of the patents-in-suit, with the exception of the '968, '984, '252 and '150 patents, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application is also material. Accordingly, at least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents-in-suit are likewise rendered unenforceable due to the inequitable conduct committed in the parent '739 patent.

88.    Accordingly, at least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the WO '375 application to the USPTO.

**F.    Katz intentionally failed to disclose the Daudelin '995 patent.**

89.    Upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") as part of the prosecution of at least the '120 patent-in-suit.

90.     The Daudelin '995 patent, which was filed on October 6, 1986 and issued on July 24, 1990, is prior art to at least the '120 patent, which was filed in 1995.

91.     The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.  The Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products.  Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof.  Callers are qualified based in part on their calling party number, and the particular product they selected.

92.     Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent.  For example, the '120 patent claims receiving calls in a toll free mode, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

93.     Upon information and belief, Katz was aware of the Daudelin '995 patent, having cited it to the USPTO more than two years prior to the issuance of the '120 patent.  Upon information and belief, Katz listed the '995 patent in previous IDS submissions during the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

94.     Upon information and belief, Katz intentionally withheld the material Daudelin '995 patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

95.     The inequitable conduct committed by Katz with respect to the '120 patent taints other related patents, which claim priority to the '120 patent and which claim related subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

96.     At least, the '223 and '415 patents, which are patents-in-suit, all claim priority to the '120 patent and claim subject matter related to the '120 patent to which the Daudelin '995 patent is material.  Indeed, at least the '223 and '415 patents all share a common specification and related claimed subject matter.  Accordingly, at least the '223 and '415 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.   Accordingly, at least the '120, '223 and '415 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the USPTO.

**G.     Katz intentionally failed to disclose Periphonics prior art.**

97.      Upon information and belief, Katz intentionally withheld from the USPTO highly relevant and material prior art by the Periphonics Corporation ("Periphonics") as part of the prosecution of at least the '707, '965, '285, '893, '863, '762 and '551 patents, rendering these patents, and the related '134, '065 and '360 patents unenforceable due to inequitable conduct.

98.     Upon information and belief, in April 1993, in connection with the West case, materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").  The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the patents-in-suit.

99.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  Paper no. 3, filed November 4, 1994.  Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.

100.    Katz made the same statements in the applications that issued as U.S. Patent No. 5,561,707 ("the '707 patent") (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).  Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent.  These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

101.    In connection with making these statements and references during prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.  In addition to those submitted, the original West materials further included a number of Periphonics references, including 1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095) and 2) Periphonics VoicePac System with Peritalk/Announce Product Description and User Guide,

Publication #3270601C, 1987 ("the VoicePac reference") (W73219-W73302).

102.    The Bank-From-Home reference and the VoicePac reference are highly relevant to many claims of the patents-in-suit.    The Bank-From-Home reference describes such limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.    The VoicePac reference describes such limitations of claims of the patents-in-suit as interfacing callers to the system and transferring callers to a customer service representative.

103.    While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, upon information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality.  Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.  Thus, at least the '965, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

104.    Other patents-in-suit are directly related to these patents, and are thus rendered unenforceable through infectious unenforceability.  For example, the '134, '065 and '360 patents have specifications substantially identical to those of the '707, '863, '762 and '551 patents, and rely for priority on U.S. Patent No. 4,845,739 ("the '739 patent"), also having a substantially identical specification.  The '134, '065 and '360 patents contain claims with subject matter that

includes subject matter that was at issue during prosecution of the '707, '863, '762, '551 and '739 patents. In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

105.    Thus, Katz's inequitable conduct renders each of the '965, '285, '893, '863, '762, '551, '134, '065 and '360 patents unenforceable in its entirety.

## II.    KATZ INTENTIONALLY FAILED TO INFORM THE USPTO OF INCONSISTENT POSITIONS TAKEN DURING PROSECUTION.

### A.    Katz failed to inform the USPTO of inconsistent positions taken with respect to the Daudelin patents.

106.    At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of Katz patents-in-suit and related patents. The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

107.    Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the patents-in-suit and failed to inform the different patent examiners of Katz's inconsistent positions.

108.    For example, as part of the prosecution of the '734 patent, Katz characterized the

Daudelin '910 patent as not disclosing "DNIS or like function."

109.    Whereas, contrary to the position Katz took as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent, as part of the prosecution of the '551 patent, as disclosing "DNIS or like function."

110.    Likewise, during the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function."

111.    Subsequently, however, contrary to the positions taken as part of the prosecution of the '551 and '893 patents, Katz took the position as part of the prosecution of the '360 patent that "Daudelin does not teach DNIS."

112.    Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734, '893 and '360 patents-in-suit unenforceable.

113.    At least, the '120, '065, '223 and '415 patents, which are patents-in-suit, all claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material.  Accordingly, at least the '120, '065, '223 and '415 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

114.    Accordingly, at least the '551, '734, '893, '120, '065, '223, '415 and '360

patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

      **B.**      **Katz failed to inform the USPTO of inconsistent positions taken with respect to the Riskin patent.**

115.    Upon information and belief, Katz also failed to inform the USPTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

116.    As part of the prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing . . . ."

117.    Contrary to Katz's characterization of the Riskin patent in the '075 patent, Katz maintained as part of the prosecution of the '120 patent-in-suit that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

118.    By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

119.    At least the '156, '576, '135, '703, '223 and '415 patents all claim priority to one

or more of the '075 and '120 patents and claim subject matter related to these patent to which the Riskin patent is material. Accordingly, at least the '156, '576, '135, '703, '223 and '415 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

120.    Accordingly, at least the '120, '703, '223 and '415 patents-in-suit are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

### III.    KATZ INTENTIONALLY FAILED TO IDENTIFY OR DISCLOSE MATERIAL INFORMATION FROM RELATED LITIGATIONS OR PROCEEDINGS.

121.    Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the USPTO has a duty to bring to the attention of the USPTO "the existence of such litigation and any other material information arising therefrom."

122.    Upon information and belief, as set forth below, as part of the prosecution of several of the patents-in-suit, Katz failed to identify or disclose material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the patents-in-suit with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

A.    **Katz failed to disclose the *West Interactive Corp. v. First Data Resources, Inc.* litigation.**

123.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska.  West alleged, inter alia, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent) were invalid on several theories including prior use and prior art.

124.    West's allegations in that suit are material to at least the '285, '863, '551, 734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents-in-suit, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

125.    Upon information and belief, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation during the prosecution of these patents-in-suit.

126.    Nonetheless, upon information and belief, Katz failed to disclose the existence of *West Interactive Corp. v. First Data Resources, Inc.* litigation and of the subject matter of West's allegations to the USPTO as part of the prosecution of at least the '285, '863, '156, '551, 734, '576, '762, '893, '120, '021, '135, '065, '965, '134, '703, '223, '415 and '360 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

B. **Katz failed to disclose the *First Data Resources, Inc. v. 900 Million, Inc., et al*. litigation.**

127.     On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

128.     The defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al*. litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

129.     The defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents-in-suit, all of which claim priority to at least the '739 patent.

130.     Upon information and belief, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation during the prosecution of these patents-in-suit.

131.     Nonetheless, upon information and belief, Katz failed to disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al*. litigation and the subject matter of the defendants' allegations to the USPTO as part of the prosecution of at least the '285, '863, '551, '734, '762, '893, '120, '021, '065, '965, '134, '703, '223, '415 and '360 patents-in-suit with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

C.   **Katz failed to disclose the *First Data Resources Inc. v. West Interactive Corp., et al*. litigation.**

132.   On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

133.   The defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, inter alia, the invalidity and unenforceability of the '739, '298 and '150 patents.

134.   The defendants' allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, '134 and '703 patents-in-suit, all of which claim priority to at least the '739 patent.

135.   Upon information and belief, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation during the prosecution of these patents-in-suit.

136.   Nonetheless, upon information and belief, as part of the prosecution of at least the '863, '551, '734, '893, '120, '134 and '703 patents-in-suit, Katz failed to disclose to the USPTO the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**D.    Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation.**

137.    On February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863 and '734 patents and U.S. Patent Nos. 5,259,023 ("the '023 patent") and 5,561,707 ("the '707 patent").

138.    In response to RAKTL's Complaint, the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, inter alia, that the '739, '153, '252, '023, '285, '707, '863 and '734 patents are invalid and/or unenforceable.

139.    The defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '021, '065, '965, '134 and '703 patents-in-suit, which are related patents to the patents at issue in that suit.

140.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation during the prosecution of these patents-in-suit.

141.    Nonetheless, upon information and belief, as part of the prosecution of at least the '021, '065, '965 and '703 patents-in-suit, Katz intentionally failed to disclose to the USPTO the existence of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation (or in the case of the '134 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the USPTO into issuing patent claims of a scope beyond

which Katz was entitled, thereby committing inequitable conduct and rendering these patents
unenforceable.

E.    **Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P., et al. v.
AT&T Corp., et al.* litigation.**

142.    On July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit, Civil
Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for
the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984,
'631, '153, '252, '309, '023, '285, '645, '120, '707 and '863 patents and U.S. Patent No.
5,349,633 ("the '633 patent").

143.    In reply, AT&T Corp. asserted, inter alia, that the '739, '150, '298, '075, '929,
'984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents are invalid.

144.    AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v.
AT&T Corp., et al.* litigation are material to at least the '762, '893, and '120 patents-in-suit,
which are related to and claim related subject matter to the patents involved in that litigation.

145.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology
Licensing, L.P. v. AT&T Corp., et al.* litigation during the prosecution of the '762, '893, and '120
patents-in-suit.

146.    Nonetheless, upon information and belief, Katz failed to disclose the existence of
the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.*, litigation and of the subject
matter of AT&T Corp.'s allegations to the USPTO as part of the prosecution of at least the '762,
'893, and '120 patents-in-suit with the intent to deceive the USPTO into issuing patent claims of
a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering

these patents unenforceable.

### F.    Katz failed to disclose Patent Interference No. 103,697.

147.    Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996.   One conclusion of the Board of Patent Appeals and Interferences in that patent inference was that the '968 patent specification did not provide written support for certain limitations claimed by Katz, which included transferring calls to an operator in certain circumstances.

148.    The Board of Patent Appeals and Interferences' conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '965, '734, '762, '893, '120, '021 and '134 patents-in-suit, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art. Indeed, upon information and belief, all of these patents-in-suit claim priority to the '968 patent, and many of them, including at least the '863, '156, '551, '021 and the '134 patents, are disclaimed with respect to the '968 patent.

149.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the existence of Patent Interference No. 103,697 and the Board of Patent Appeals and Interferences' findings to the patent examiners of at least the '863, '965, '734, '762, '893, '120, '021 and '134 patents-in-suit with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

## IV.    KATZ INTENTIONALLY FAILED TO INFORM THE PATENT EXAMINERS OF ADVERSE FINDINGS BY OTHERS.

150.    Pursuant to MPEP § 2001.06(b), each individual associated with the filing and prosecution of a patent application before the USPTO has "a duty to bring to the attention of the examiner, or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending Unites States applications which are 'material to patentability' of the application in question."  Furthermore, according to this section of the MPEP, such individuals: cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner.  For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.

### A.    Katz failed to disclose adverse findings in related patent prosecutions.

151.    During the prosecution of the '344 patent, Katz made the false assertion that certain claim limitations relating to ANI were supported in a parent patent, the '968 patent. Specifically, upon information and belief, Katz falsely stated that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

152.    The examiner of the '344 patent, Examiner Brown, refuted Katz's assertion in a 1990 Office Action, noting, "the present application is not a continuation of '968. . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, the new matter was not entitled to the

effective date of the '968 patent.  Further, Examiner Brown further stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an "automatic number identification (ANI) decoder means"… ."

153.    Despite Examiner Brown's refutation of Katz's assertion, in the subsequent Patent Interference No. 103,697, Katz again claimed support for ANI functionality in the '968 patent.

154.    Upon information and belief, Katz did not, however, inform the Board of Patent Appeals and Interferences of Examiner Brown's prior repudiation of Katz's assertion.

155.    Examiner Brown's prior repudiation of Katz's assertion would have been material to the Board of Patent Appeals and Interferences' determination as to whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly in as much, as the Board ultimately concluded that Count 1, which was the count Katz alleged to have support in the '968 patent, was found lacking.

156.    Even though the Board concluded that support for the ANI functionality in the '968 patent was lacking, as part of the prosecution of the '156 Patent in 1997, Katz again falsely alleged, but this time to Examiner Woo, that the '968 patent provided support for limitations directed to ANI.  Specifically, Katz alleged that the claim limitation "receiving automatic number identification data indicative of caller telephone numbers provided automatically by said communication facility" was supported by essentially the same text Katz previously cited during prosecution of the '344 patent and in the interference proceeding.

157.    Upon information and belief, Katz did not inform Examiner Woo of Examiner Brown's or the Board of Patent Interference's prior rejections of Katz's assertion that support for

ANI was present in the '968 patent.

158.    Upon information and belief, Katz intentionally failed to inform the Board of Patent Appeals and Interferences and Examiner Woo of the prior rejections of his false assertion that certain claim limitations relating to ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '156 patent-in-suit unenforceable.

159.    Likewise, upon information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of his then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before … Szlam… ."

160.    Upon information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the communication facility providing the calling party's (e.g., caller) number.

161.    Examiner Brown's previous conclusion, would have been material to deciding the patentability of the pending claims, particularly with respect to antedating prior art.

162.    Upon information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 patent-in-suit unenforceable.

163.    Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for "person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

164.    Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in another subsequently filed application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

165.    Upon information and belief, Katz failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '551, '360 and '065 patents-in-suit unenforceable.

**B.    Katz failed to disclose adverse findings from appeal rulings.**

166.    Upon information and belief, Katz failed to inform the patent examiners of certain of the patents-in-suit of the existence and outcome of certain Appeal Rulings of related patents that were adverse or contrary to positions Katz took during the prosecution of the patents-in-suit.

167.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of

Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents-in-suit, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

168.    The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '846, '156, '734, '576, '762, '893, '120, '021, '065, '965, '134 and '703 patents with respect to any claims reciting a multiple format limitation.

169.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '846, '156, '734, '576, '762, '893, '120, '021, '065, '965, '134 and '703 patents unenforceable.

170.    The inequitable conduct committed by Katz with respect to the '846, '156, '734, '576, '762, '893, '120, '021, '065, '965, '134 and '703 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material, thereby, rendering these related patents, including at least the '135, '415, '223 and '360 patents unenforceable.

## V.    KATZ INTENTIONALLY MADE FALSE CLAIMS OF PRIORITY SO AS TO AVOID THE PRIOR ART.

171.    Upon information and belief, during the prosecution of several patents-in-suit, Katz made false claims of priority to earlier applications with the intent to avoid prior art, as set

forth below.

172.    For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case."   This assertion is false, since international application [87/00375], i.e., the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application.   Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

173.    Likewise, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,792,461 to Brown ("the Brown patent") to the USPTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12.  In fact, the relevant pending application's claims did not predate Brown because in the '150 patent there is no suggestion of multiple call modes, as claimed in the '734 patent.   Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

174.    Similarly, upon information and belief, during prosecution of the '734 patent, Katz used the same approach to mislead the patent examiner in order to antedate a prior art reference by Hester.  Katz stated "the reference by Hester bears a date of 1985, apparently 'September'.  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."  The parent application Katz referenced, however, does not disclose

toll free calls nor 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such limitations are entitled to claim priority to that parent application's filing date. Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Hester reference.

175.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz mischaracterized his pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987.  Specifically, Katz stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon information and belief, Katz's statement was false at the time it was made since there were claims in Katz's application (such as then pending claim 17) which contained and claimed new subject matter, and were, therefore, not entitled to an earlier priority date.  Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

176.    Upon information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

177.    In addition, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints other related patents, namely the '120, '415 and '223 patents-in-suit, which claim priority to these patents and which claim related subject matter to which the prior art patents are material, rendering these related patents unenforceable.

## VI.    CONCLUSION

178.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents-in-suit and/or other related patents that infected, either directly or indirectly, all of the patents-in-suit, thereby rendering them unenforceable for inequitable conduct.

179.    LaSalle is, therefore, entitled to a judicial declaration that each of the patents-in-suit is unenforceable.

**PRAYER FOR RELIEF**

THEREFORE, LaSalle prays that the Court grant it the following relief:

(i)    That RAKTL recover nothing and that its Complaint be dismissed with prejudice;

(ii)    That the Court deny any injunctive relief in favor of RAKTL and against LaSalle;

(iii)    That the Court declare that LaSalle has not and does not directly infringe, induce infringement or contribute to the infringement of any valid and enforceable claim of the patents-in-suit;

(iv)    That the Court declare and order that each of the patents-in-suit is invalid;

(v)    That the Court declare and order that that each of the patents-in-suit is unenforceable;

(vi)    That the Court find this case to be an exceptional case pursuant to Section 285 of the Patent Act and award LaSalle its reasonable attorneys' fees in this action;

(vii)    That all costs be taxed against RAKTL; and

(viii)    That LaSalle be granted such other and further relief as the Court deems just and proper.

## JURY DEMAND

LaSalle demands a jury trial on all issues so triable.

\* \* \* \*

Dated: October 26, 2006            By:    /s/ Richard K. Herrmann
                                           Richard K. Herrmann #405
                                           MORRIS, JAMES, HITCHENS & WILLIAMS LLP
                                           222 Delaware Avenue, 10th Floor
                                           Wilmington, DE  19801
                                           (302) 888-6800
                                           rherrmann@morrisjames.com

                                           *Attorneys for Defendants*
                                           *LaSalle Bank Corporation,*
                                           *LaSalle Bank National Association,*
                                           *LaSalle Financial Services, Inc. and*
                                           *ABN AMRO Mortgage Group, Inc.*

*Of Counsel:*
Michael Bednarek
June E. Cohan
PAUL HASTINGS JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, D.C.  20005
(202) 551-1700

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2006, I electronically filed the foregoing document, **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS LASALLE BANK CORPORATION, LASALLE BANK NATIONAL ASSOCIATION, LASALLE FINANCIAL SERVICES, INC. AND ABN AMRO MORTGAGE GROUP, INC.**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Mary B. Graham
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Anne Shea Gaza
Richards, Layton & Finger P.A.
One Rodney Square,
920 North King Street
Wilmington, Delaware 19801

Paul J. Lockwood
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
Wilmington, DE 19801

Philip A. Rovner
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

Additionally, I hereby certify that on the 26th day of October, 2006, the foregoing document was served email and via hand delivery on the above referenced attorneys and via email on the following non-registered participants:

Andrew C. Bynes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506

Martin J. Black
Andrew J. Mottes
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Michael K. Plimack
Dale A. Rice
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878

Thomas M. Dunham
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402

David A. Roodman
Ameer Gado
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750

Daniel A. DeVito
Guy Perry
Marti A. Johnson
Skadden, Arps, Slate, Meagher & Flom
New York, NY 10036

Kenneth R. Adamo
Jones Day
2727 North Harwood Street
Dallas, TX 75201-1515

Samuel J. Najim
Jones Day
1420 Peachtree Street, NE, Suite 800
Atlanta, GA 30309-3053

Kevin G. McBride
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300

By: _____ /s/ Richard K. Herrmann _____
Richard K. Herrmann #405
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Defendants*
*LaSalle Bank Corporation,*
*LaSalle Bank National Association,*
*LaSalle Financial Services, Inc. and*
*ABN AMRO Mortgage Group, Inc.*