IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-544 (GMS) |
| TD BANKNORTH, INC., et al., | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'s REPLY
TO COUNTERCLAIMS OF DEFENDANT TD BANKNORTH INC.**

Plaintiff and Counterclaim-Defendant Ronald A. Katz Technology Licensing, L.P. ("Katz Technology Licensing") replies to the Counterclaim of Defendant and Counterclaim-Plaintiff TD Banknorth Inc. ("TD Banknorth") as follows:

1.      Upon information and belief, Katz Technology Licensing admits that TD Banknorth Inc. is a Delaware corporation with its executive offices at Two Portland Square, Portland, Maine 04112-9540, as alleged in Paragraph 1.

2.      Katz Technology Licensing admits that it is a limited partnership organized under the laws of the State of California, having a principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

3.      Katz Technology Licensing: (a) admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); (b) admits that TD Banknorth purports to bring its counterclaims for a declaratory judgment pursuant to 28 U.S.C. § 2201, as alleged in Paragraph 3 of TD Banknorth's Counterclaim; and (c) denies the viability of that request for a declaratory judgment.

4.      Katz Technology Licensing admits that this Court has personal jurisdiction over Katz Technology Licensing in this action.

5.      Katz Technology Licensing admits that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## CLAIM I
### (For Declaratory Judgment of Non-Infringement)

6.      In response to Paragraph 6 of the Counterclaim, Katz Technology Licensing realleges and incorporates by reference Paragraphs 1 through 5 of this Reply as if fully set forth herein.

7.      Katz Technology Licensing denies all allegations set forth in Paragraph 7.

8.      Katz Technology Licensing admits that an actual controversy has arisen and now exists between Katz Technology Licensing and TD Banknorth regarding TD Banknorth's infringement of the patents identified in Paragraph 57 of Katz Technology Licensing's Complaint in this action.   Katz Technology Licensing denies the remaining allegations set forth in Paragraph 8.

## CLAIM II
### (For Declaratory Judgment of Invalidity)

9.      In response to Paragraph 9 of the Counterclaim, Katz Technology Licensing realleges and incorporates by reference paragraphs 1 through 8 of this Reply as if fully set forth herein.

10.      Katz Technology Licensing denies all allegations set forth in Paragraph 10.

11.      Katz Technology Licensing admits that an actual controversy has arisen and now exists between Katz Technology Licensing and TD Banknorth regarding TD Banknorth's infringement of the patents identified in Paragraph 57 of Katz Technology Licensing's Complaint in this action.   Katz Technology Licensing denies the remaining allegations set forth in Paragraph 11.

**CLAIM III**
**(For Declaratory Judgment of Unenforceability)**

12.     In response to Paragraph 12 of the Counterclaim, Katz Technology Licensing realleges and incorporates by reference paragraphs 1 through 11 of this Reply as if fully set forth herein.

13.     To the extent that the use of the term "inequitable conduct" in Paragraph 13 is intended to allege legal relevance or the outcome of TD Banknorth's Counterclaim, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 13.

14.     To the extent that the use of the term "inequitable conduct" in Paragraph 13 is intended to allege legal relevance or the outcome of TD Banknorth's Counterclaim, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 14.

15.     Katz Technology Licensing denies all the allegations set forth in Paragraph 15.

16.     Katz Technology Licensing admits that TD Banknorth purports to  reserve the right to seek leave to amend its Answer, Affirmative Defenses and Counterclaim. Katz Technology Licensing denies the remaining allegations set forth in the first sentence of Paragraph 16.

**I.      Alleged Withholding of Material Prior Art Periphonics**

17.     Katz Technology Licensing denies the allegations set forth in the first sentence of Paragraph 17.  Katz Technology Licensing lacks information and knowledge to answer the allegation that materials bearing Bates numbers W72807-W73756 were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green in connection with *First Data Resources Inc. v. West Interactive Corp.*, CV 91-4471 TJH (C.D. Cal.) ("the *West* case") and therefore denies it. Katz Technology Licensing admits that Byard Nilsson and Reena Kuyper, who were at one time affiliated with the Nilsson, Wurst & Green law firm, were involved in prosecuting certain of Mr.

Katz's patent applications that ultimately issued as certain of the patents being asserted against TD Banknorth.    Katz Technology Licensing denies the remaining allegations set forth in Paragraph 17.

18.    Katz Technology Licensing admits that the application for the '965 patent stated:  "During the litigation of [the *West* case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."    U.S. Patent Application 08/306,456, Paper no. 3, filed November 4, 1994.  Katz Technology Licensing further admits that the application also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 18.

19.    No response is required to the allegations in Paragraph 19 to the extent the allegations of Paragraph 19 refer to various patent applications, as the applications speak for themselves.  To the extent any further response is required, Katz Technology Licensing lacks information or knowledge sufficient to form a belief as to the truthfulness of the full meaning in and intent of any remaining allegations in Paragraph 19 and therefore denies those allegations.

20.    In response to the allegations of Paragraph 20, Katz Technology Licensing incorporates it responses to paragraphs 18 and 19.  Katz Technology Licensing further responds that it lacks sufficient information and knowledge to answer the remaining allegations set forth in Paragraph 20 and therefore denies them.

21.    Katz Technology Licensing is unable to ascertain the meaning of the allegation in Paragraph 21 that references are "highly relevant to many claims," and therefore denies them on the basis that Katz Technology Licensing lacks sufficient information and knowledge to answer such allegations.  Katz Technology Licensing lacks information and

knowledge to answer any remaining allegations set forth in Paragraph 21, and therefore denies them.

22.     The terms "knowingly withheld," "materiality," "violation of the duty of candor and good faith," "inequitable conduct," "rendered unenforceable," and "inequitable conduct" used in Paragraph 22 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent these terms are intended to allege legal intent, materiality or conclusions regarding duty, conduct or enforceability, the allegations constitute legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 22.

23.     The terms "directly related" and "rendered unenforceable" as used in the first sentence of Paragraph 23 are so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent these terms are intended to allege legal relevance or conclusions regarding enforceability, the allegations constitute legal conclusions to which no response is required.  To the extent the allegations of Paragraph 23 refer to the content of patent specifications, Katz Technology Licensing responds that the patents speak for themselves and no further response is required.  Katz Technology Licensing admits that (a) the '762 patent is a divisional application of the '344 patent; (b) the '360 patent is a continuation of the '065 patent, which is a continuation of the '551 patent, which is a continuation of the '344 patent; (c) the '707 patent is a continuation of the '309 patent, which is a divisional application of Application No. 07/640,377, which is a continuation of the '344 patent; and (d) that the '863 patent is a continuation of the '344 patent, which is a continuation of the '739 patent.  Katz Technology Licensing further admits that any patent term subsequent to the term of the '739 patent has been disclaimed with respect to the '065, '360, '707, '863, '762 and '551 patents, but that pursuant to 35 U.S.C. § 154(a)(2), the patent terms of the '065 and '360 patents were already set to expire prior to the

term of the '739 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 104.

      24.    Katz Technology Licensing denies all allegations set forth in Paragraph 24.

### A.    The Barger Patent

      25.    Katz Technology Licensing admits that on its face, U.S. Patent No. 4,071,698 ("the Barger patent") indicates that it was issued to Barger, Jr., *et al*.  Katz Technology Licensing denies all the remaining allegations set forth in Paragraph 25.

      26.    The allegations in Paragraph 26 relate to the system allegedly disclosed by the Barger patent; Katz Technology Licensing responds that the Barger patent speaks for itself and no further response is required.

      27.    The allegations in Paragraph 27 relate to the system allegedly disclosed by the Barger patent; Katz Technology Licensing responds that the Barger patent speaks for itself and no further response is required.

      28.    The term "relevant" as used in the first sentence of Paragraph 28 is so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term "relevant" is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  The allegations in the second sentence of Paragraph 28 relate to the system allegedly disclosed by the Barger patent; Katz Technology Licensing responds that the Barger patent speaks for itself and no further response is required. Katz Technology Licensing admits that the Barger patent was relied upon in third party requests for reexamination of the '707 patent and U.S. Patent No. 6,292,547 ("the '547 patent").  Katz Technology Licensing further admits that (a) the '707 patent is a continuation of the '309 patent, which is a divisional application of Application No. 07/640,377, which is a continuation of the '344 patent, which is a continuation of the '739 patent; and (b) the '547 patent is a continuation of U.S. Patent No. 6,035,021 ("the '021 patent"), which is a divisional application of the '344

patent, which is a continuation of the '739 patent. Katz Technology Licensing denies all the remaining allegations set forth in Paragraph 28.

29.     The terms "central features claimed" and "material" as used in the first sentence of Paragraph 29 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence. Further, to the extent the terms "central features" and "material" are intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that in Appeal No. 94-0834, the Board of Patent Appeals and Interferences affirmed an Examiner's rejection of certain of Katz's pending claims in Application No. 07/640,337. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 29.

30.     Katz Technology Licensing admits that on its face, the Barger patent indicates that it was filed in the United States Patent and Trademark Office ("USPTO") on January 10, 1977. The remaining allegations in Paragraph 30 constitute legal conclusions to which no response is required.

31.     The term "materiality" as used in the first sentence of Paragraph 31 is so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations regarding "materiality" in that sentence. Further, to the extent that term is intended to allege legal materiality or relevance, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that the Barger patent was cited in a Supplementary European Search Report dated December 27, 1988 during the prosecution of PCT Application No. WO 87/00375. Katz Technology Licensing further admits that the Supplementary European Search Report identified the Barger patent as a "category x" document. The contents of that search report speak for themselves and the allegations relating to the report require no further response. Katz Technology Licensing admits that a copy of the search report was sent to Mr. Graham F. Coles, and that Mr. Coles sent the report to Mr. Nilsson in January, 1989. Katz Technology Licensing

admits that Mr. Nilsson, who was at one time affiliated with the Nilsson, Wurst & Green law firm, were involved in prosecuting certain of Mr. Katz's patent applications. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 31.

32.    The terms "material, " "materiality" and "inequitable conduct" as used in Paragraph 32 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations employing those terms  Further, to the extent those terms are intended to allege legal materiality or relevance, the allegation constitutes a legal conclusion to which no response is required. Katz Technology Licensing admits that the Barger patent was not disclosed during the prosecution of the '984, '739, '150, '929, '965, and '252 patents. Katz Technology Licensing denies that the Barger patent was not disclosed during the prosecution of the '285 patent. To the extent the second and third sentences constitute legal conclusions, no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 32.

33.    In connection with the allegations in Paragraph 33, the terms "deliberately withheld," "intent to deceive," and "beyond any to which Katz was entitle," are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 33.

34.    In connection with the allegations in Paragraph 34, the terms "significance," "relevance," "inequitable conduct," "unenforceable" and "infectious unenforceability" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 34.

35.    Katz Technology Licensing denies all allegations set forth in Paragraph 35.

36.    Katz Technology Licensing admits that (a) the '893 patent is a continuation of Application No. 08/306,751, which is a continuation of the '285 patent, which is a continuation-in-part of Application No. 07/640,337, which is a continuation of the '344 patent; (b) the '863 patent is a continuation of the '344 patent; (c) the '360 patent is a continuation of the

'065 patent, which is a continuation of the '551 patent, which is a continuation of the '344 patent; (d) the '134 and '762 patents are divisional applications of the '344 patent; and (e) the '344 patent is a continuation of the '739 patent. Katz Technology Licensing further admits that terminal disclaimers were filed during the prosecution of the '893, '863, '551, '065, '360, '762 and '134 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 36.

37.     Katz Technology Licensing admits that the '984, '285, '893, '863, '551, '360, '134, '734, '120, '223, '252, and '965 patents are among the patents asserted against TD Banknorth in this action and claim priority from other patents and applications, including the '739 patent. Katz Technology Licensing denies that it asserted the '065 or the '762 patents against TD Banknorth. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 37.

38.     Katz Technology Licensing further admits that the '734, '120 and '223 patents claim priority from other patents and applications that include the '929, '984 and '252 patents as alleged in Paragraph 38.

39.     No response is required to the allegations in Paragraph 39 to the extent the allegations of Paragraph 39 refer to various patents and patent applications, as the patents and patent applications speak for themselves. In connection with the allegations in Paragraph 39, the terms "relevant," "inequitable conduct," and "unenforceable" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 39.

40.     Katz Technology Licensing denies the allegations set forth in Paragraph 40.

41.     Katz Technology Licensing admits that the '893 patent claims priority from other patents and applications that include the '150, '285 and '739 patents as alleged in Paragraph 41.

42.     No response is required to the allegations in Paragraph 42 to the extent the allegations of Paragraph 42 refer to various patents and patent applications, as the patents and patent applications speak for themselves.  In connection with the allegations in Paragraph 42, the terms "relevant," "inequitable conduct," and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 42.

43.     Katz Technology Licensing denies the allegations set forth in Paragraph 43.

**B.     The DeBruyn Patent**

44.     Katz Technology Licensing admits that on its face, European Patent No. 0032410 ("the DeBruyn patent") indicates that it was issued to DeBruyn.  Katz Technology Licensing is unable to ascertain the meaning of "Mr. Katz's earlier patents" in the first sentence of Paragraph 44 and therefore denies all allegations set forth in the first sentence of paragraph 44.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 44.

45.     Katz Technology Licensing admits that the European Patent Office published European Patent Specification EP0032410A1 on July 22, 1981.  No response to the remaining allegations set forth in the first sentence of Paragraph 45 is required, as the DeBruyn patent speaks for itself.  Katz Technology Licensing admits that the DeBruyn patent and the Barger patent were cited in a Supplementary European Search Report dated December 27, 1988 during the prosecution of PCT Application No. WO 87/00375.  Katz Technology Licensing admits that a copy of the search report was sent to Mr. Graham F. Coles, and that Mr. Coles sent the report to Mr. Nilsson in January, 1989.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 45.

46.     Katz Technology Licensing admits that the Supplementary European Search Report identified the Barger patent as a "category x" document.  Katz Technology Licensing further admits that Canadian Patent No. 1,162,336 ("the DeBruyn Canadian patent") was cited in the Order Granting Request for Reexamination for each of U.S. Patent Nos.

10

5,561,707 ("the '707 patent"); 5,255,309 ("the '309 patent"); and 5,259,023 ("the '023 patent"). Katz Technology Licensing further admits that the Director Initiated Order for Reexamination with respect to the '309 patent states: "In view of the teachings of Canadian Patent 1,162,336 to De Bruyn, a substantial new question of patentability is raised as to claim 23 of the '309 patent, and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Katz Technology Licensing further admits that the '707, '309, and '023 patents claim priority from, among other patents and applications, the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 46.

47.     No response is required to the allegations set forth in the first sentence of Paragraph 47, as the DeBruyn Patent and the DeBruyn Canadian patent speak for themselves. Katz Technology Licensing admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/007,092 & 90/006,976), dated September 9, 2005, states that "Claims 23, 25-37, 41-43, 46, 50 and 51 are rejected under 35 U.S.C. 102(b) as being anticipated by Canadian Patent No. 1,162,336, De Bruyn . . . ." Katz Technology Licensing further admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/007,092 & 90/006,976), dated September 9, 2005, rejected claims 1, 7-12, 14, 20, 24, 32, 38-42, 52-58 pursuant to 35 U.S.C. § 103(a) based in part or on whole on Canadian Patent No. 1,162,336. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 47.

48.     Katz Technology Licensing admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/006,977 & 90/007,058), dated September 1, 2005, states that "Claims 1, 2, 7, 8, 10, 21, 22-25, 26, and 27 are rejected 35 U.S.C. 102(b) as being anticipated by Canadian Patent No. 1,162,336 . . . ." Katz Technology Licensing further admits that the non-final Office Action in Ex Parte Reexamination (Application/Control Nos. 90/006,977 & 90/007,058), dated September 1, 2005, rejected claims 5, 6, 22, and 23 pursuant to 35 U.S.C. § 103(a) based in part or on whole on Canadian Patent No. 1,162,336. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 48.

49.     Katz Technology Licensing denies the allegations set forth in Paragraph 49.

50.     Katz Technology Licensing admits that European Patent No. 0032410 was not disclosed during the prosecution of the '150, '739, '929, '984, and '252 patents. Katz Technology Licensing admits that certain of the patents in suit claim priority from certain of the '739, '150, '252, '929 and '984 patents. In connection with the allegations in Paragraph 50, the terms "significance," "materiality," "inequitable conduct," "unenforceable" and "infectious unenforceability" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 50.

51.     Katz Technology Licensing admits that (a) the '893 patent is a continuation of Application No. 08/306,751, which is a continuation of the '285 patent, which is a continuation-in-part of Application No. 07/640,337, which is a continuation of the '344 patent; (b) the '863 patent is a continuation of the '344 patent; (c) the '360 patent is a continuation of the '065 patent, which is a continuation of the '551 patent, which is a continuation of the '344 patent; (d) the '134 and '762 patents are divisional applications of the '344 patent; and (e) the '344 patent is a continuation of the '739 patent. Katz Technology Licensing further admits that any patent term subsequent to the term of the '739 patent has been disclaimed with respect to the '893, '863, '551, '065, '360, '762 and '134 patents, but that pursuant to 35 U.S.C. § 154(a)(2), the patent terms of the '065 and '360 patents were already set to expire prior to the term of the '739 patent. In connection with the allegations in Paragraph 51, the terms "materiality," "inequitable conduct," "unenforceable" and "infectious unenforceability" are alleged legal conclusions to which no response is required. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 51.

52.     Katz Technology Licensing admits that the '984, '285, '893, '863, '551, '360, '134, '734, '120, '223, '252, and '965 patents are among the patents asserted against TD Banknorth in this action and claim priority from other patents and applications, including the '739 patent. Katz Technology Licensing denies that it asserted the '065 or the '762 patents

against TD Banknorth. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 37.

53.    In connection with the allegations in Paragraph 53, the terms "deliberately withheld," "intent to deceive," and "scope beyond any to which Mr. Katz was entitled" are legal conclusions to which no response is required. Katz Technology Licensing denies all the allegations set forth in Paragraph 53.

54.    Katz Technology Licensing denies the allegations set forth in Paragraph 54.

55.    Katz Technology Licensing admits that the '285 and '893 patents claim priority from, among other patents, the '150 patent.

56.    Katz Technology Licensing admits that the '285 and '893 patents are among the patents asserted against TD Banknorth in this action. Katz Technology Licensing further admits that the '285 and '893 patents claim priority from other patents and applications that include the '150 patent. Katz Technology Licensing denies that the DeBruyn patent was not disclosed during the prosecution of the '285 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 56.

57.    In connection with the allegations in Paragraph 57, the terms "intent to deceive," and "scope beyond any to which Mr. Katz was entitled" are legal conclusions to which no response is required. Katz Technology Licensing further denies all remaining allegations set forth in Paragraph 57.

58.    Katz Technology Licensing denies the allegations set forth in Paragraph 58.

59.    Katz Technology Licensing admits that the '734, '120 and '223 patents claim priority from, among other patents, the '929, '984 and '252 patents.

60.    Katz Technology Licensing admits that the 734, '120 and '223 patents claim priority from, among other patents, the '929, '984 and '252 patents. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 60.

61.     Katz Technology Licensing denies all allegations set forth in Paragraph 61.

### C.     Katz PCT Application

62.     Katz Technology Licensing admits that PCT Application No. WO 87/00375 ("the WO '375 application") was not disclosed to the USPTO during the prosecution of the '739 patent.  The second sentence of Paragraph 62 constitutes alleged legal conclusions to which no response is required.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 62.

63.     Katz Technology Licensing admits that the WO '375 application was published on January 15, 1987.  The remaining allegations in Paragraph 63 constitute legal conclusions to which no response is required.

64.     Katz Technology Licensing admits that the '739 patent has a filing date of May 16, 1988.  The remaining allegations in Paragraph 64 constitute legal conclusions to which no response is required.

65.     The terms "material" and "relevant" in Paragraph 65 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to respond and on that basis denies the allegations.  Further, to the extent these terms are intended to allege legal materiality or relevance, the allegations constitute legal conclusions to which no response is required.  No response is required to the remaining allegations of Paragraph 65, as the WO '375 application speaks for itself.

66.     Katz Technology Licensing admits that the '739 patent has a filing date of May 16, 1988.  Katz Technology Licensing further admits that the WO '375 application was published on January 15, 1987.  Katz Technology Licensing further admits that all the patents in suit except for the '968 and '150 patents claim priority from, among other patents, the '739 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 66.

67.     Katz Technology Licensing admits that the WO '375 application was not disclosed to the USPTO during the prosecution of the '739 patent.  To the extent the terms

14

"materiality" and "prior art effect" in Paragraph 67 are intended to allege legal materiality or relevance, the allegations constitute legal conclusions to which no response is required. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 67.

68.     Katz Technology Licensing admits that certain of the patents asserted against TD Banknorth claim priority from other patents and applications that may include the '739 patent. Katz Technology Licensing admits that any patent term subsequent to the term of the '739 patent has been disclaimed with respect to the '893, '863, '551, '065, '360, '762 and '134 patents, but that pursuant to 35 U.S.C. § 154(a)(2), the patent terms of the '065 and '360 patents were already set to expire prior to the term of the '739 patent. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 68 of the section regarding the WO '375 application.

### D.     The Yoshizawa Reference

69.     Katz Technology Licensing admits that an article titled "Voice Response System for Telephone Betting," by Yoshizawa, *et al*. ("the Yoshizawa article"), appeared in a 1977 issue of Hitachi Review. Katz Technology Licensing denies that the Yoshizawa article was not disclosed to the USPTO during the prosecution of the '575 patent. Katz Technology Licensing admits that the Yoshizawa article was disclosed to the PTO during the prosecution of the '575 patent on September 16, 1994. Katz Technology Licensing denies that the Yoshizawa article was not disclosed to the USPTO during the prosecution of the '965 patent. Katz Technology Licensing admits that the Yoshizawa article was disclosed to the PTO during the prosecution of the '965 patent on September 30, 1994. Katz Technology Licensing admits that the Yoshizawa article was not disclosed to the USPTO during the prosecution of the '252 and '734 patents. Katz Technology Licensing further denies all remaining allegations set forth in Paragraph 68 within the section regarding the Yoshizawa reference.

70.     Katz Technology Licensing admits that the Yoshizawa article is titled "Voice Response System for Telephone Betting." The allegations in Paragraph 69 relate to the

system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

71.    The term "relevant" in the first sentence of Paragraph 70 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal relevance or materiality, the allegation constitutes a legal conclusion to which no response is required.  The remaining allegations in Paragraph 70 relate to the system allegedly disclosed by the Yoshizawa article; Katz Technology Licensing responds that the article speaks for itself and no further response is required.

72.    The term "materiality" in the first sentence of Paragraph 71 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required.  Katz Technology Licensing admits that the Yoshizawa article was cited in a September 2, 1992 interrogatory response during discovery in *First Data Resources Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal.).  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 71.

73.    Katz Technology Licensing denies all allegations set forth in Paragraph 72.

74.    Katz Technology Licensing denies all allegations set forth in Paragraph 73.

75.    The terms "related to" and "material" in the first sentence of Paragraph 74 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 74.

#### E.     The Corbett Reference

76.     Katz Technology Licensing admits that a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett reference") exists. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 75.

77.     Katz Technology Licensing admits that the Corbett reference was disclosed in connection with the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation, Civil Action No. 91-4471-TJH.   Katz Technology Licensing denies the remaining allegations set forth in Paragraph 76.

78.     The phrases "material" and "material to certain of the claimed subject mater" as used in the first sentence of Paragraph 77 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to allow it to answer the allegations in this sentence and therefore denies them.   Moreover, the allegations in the first sentence of Paragraph 77 constitute legal conclusions to which no response is required.   No response to the remaining allegations of Paragraph 77 is required, as the Corbett reference speaks for itself.

79.     Katz Technology Licensing denies all the allegations set forth in Paragraph 78.

80.     Katz Technology Licensing denies all the allegations set forth in Paragraph 79.

81.     Katz Technology Licensing denies all the allegations set forth in Paragraph 80.

#### F.     The Moosemiller Reference

82.     Katz Technology Licensing denies all the allegations set forth in Paragraph 81.

83.     Katz Technology Licensing admits that an article entitled "AT&T's Conversant I Voice System" by John P. Moosemiller ("the Moosemiller article") appeared in the March/April 1986 issue of *Speech Technology*.   The phrase "in connection with a lawsuit" is so

vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to allow it to answer the remaining allegations Paragraph 82 and therefore denies them.

84.     The phrases "material" and "material to certain of the claimed subject matter" as used in the first sentence of Paragraph 83 are so vague and uncertain that Katz Technology Licensing lacks sufficient information or knowledge to allow it to answer the allegations in this sentence and therefore denies them.  Moreover, the allegations in the first sentence of Paragraph 83 constitute legal conclusions to which no response is required.  No response to the remaining allegations of Paragraph 83 is required, as the Moosemiller article speaks for itself.

85.     Katz Technology Licensing denies all the allegations set forth in Paragraph 84.

86.     Katz Technology Licensing denies all the allegations set forth in Paragraph 85.

**G.     The Daudelin '995 Patent**

87.     Katz Technology Licensing admits that U.S. Patent No. 4,943,995 was not disclosed during the prosecution of the '120 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 86.

88.     The term "material" in the first sentence of Paragraph 87 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege legal materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 87 relate to the system allegedly disclosed by the Daudelin '995 patent; Katz Technology Licensing responds that the patent speaks for itself and no further response is required.

89.     The term "material" in the first sentence of Paragraph 88 is so vague and uncertain that Katz Technology lacks sufficient information or knowledge to respond and on that basis denies the allegations in that sentence.  Further, to the extent the term is intended to allege

legal materiality, the allegation constitutes a legal conclusion to which no response is required. The remaining allegations in Paragraph 88 relate to the claims of the '120 patent; Katz Technology Licensing responds that the patent speaks for itself and no further response is required.

90.     Katz Technology Licensing admits that the Daudelin '995 patent was disclosed to the USPTO during the prosecution of certain patents asserted against TD Banknorth. Technology Licensing further admits that the Daudelin '995 patent was disclosed to the USPTO more than two years prior to the issuance of the '120 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 89.

91.     Katz Technology Licensing denies all allegations set forth in Paragraph 90.

92.     Katz Technology Licensing denies all allegations set forth in Paragraph 91.

93.     Katz Technology Licensing admits that it has asserted the '223 patent against TD Banknorth in this action.  Katz Technology Licensing further admits that the '223 patent claims priority to other patents and applications that include the '120 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 92.

94.     Katz Technology Licensing denies all allegations set forth in Paragraph 93.

## II.    Alleged Failure to Inform the USPTO of Inconsistent Positions Taken During Prosecution Regarding the Daudelin Patent

95.     Katz Technology Licensing admits that the Daudelin '955 and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent") were disclosed to the USPTO during prosecution of certain of the patents asserted against TD Banknorth and of other patents.  The remaining allegations of Paragraph 94 relate to the contents of the Daudelin '955, '910, and '519 patents; Katz Technology Licensing responds that the patents speak for themselves and no further response is required.

96.     Katz Technology Licensing denies all allegations set forth in Paragraph 95.

97.     Katz Technology Licensing admits that during prosecution of the '734 patent, certain documents, including the Daudelin '910 patent, were identified in a March 14, 1995 Supplemental Amendment, and that the patent applicant stated:  "Of the above documents, those identified by a reference numeral D may be pertinent to DNIS capabilities and those identified by reference numeral A may be pertinent to ANI capabilities."  Katz Technology Licensing further admits that the Daudelin '910 patent was not identified with a "D" or an "A" during prosecution of the '734 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 96.

98.     Katz Technology Licensing admits that during prosecution of the '551 patent, certain documents, including the Daudelin '910 patent, were identified in an October 2, 1996 Information Disclosure Statement, and that the patent applicant stated: "From all of the documents listed on the attached Forms PTO-1449, the Examiner's attention is particularly drawn to certain patents and references identified below that may be of possible interest to certain features of Applicant's system, such as ANI and/or DNIS.  Each of the documents that has some disclosure of DNIS or like function is indicated with a 'D' beside it.  Each of the documents that has some disclosure of ANI or like function is indicated with an 'A' beside it."  Katz Technology Licensing further admits that the Daudelin '910 patent was identified with a "D" during prosecution of the '551 patent.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 97.

99.     Katz Technology Licensing admits that during prosecution of the '893 patent, certain documents, including the Daudelin '910 patent, were identified in a March 18, 1997 Information Disclosure Statement, and that the patent applicant stated: "From all of the documents listed on the attached Forms PTO-1449, the Examiner's attention is particularly drawn to certain patents and references identified below that may be of possible interest to certain features of Applicant's system, such as ANI, DNIS and/or general interest.  Each of

the documents that has some disclosure of DNIS or some function whereby a called number is provided by a central ability is indicated with a 'D' beside it."  Katz Technology Licensing further admits that the Daudelin '910 patent was identified with a "D" during prosecution of the '893 patent.   Katz Technology Licensing denies the remaining allegations set forth in Paragraph 98.

100.    Katz Technology Licensing admits that the statement, "[a]lthough the present claims are variously distinct for a myriad of reasons, two significant reasons are that Daudelin does not teach DNIS nor does it teach displaying data entered by a caller at the operator terminal" was made by the patent applicant during the prosecution of the '360 patent. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 99.

101.    Katz Technology Licensing denies all allegations set forth in Paragraph 100.

102.    Katz Technology Licensing admits that it has asserted the '120 and '223 patents against TD Banknorth in this action.  Katz Technology Licensing further admits that the '120 and '223 patents claim priority to the '734 patents, among other patents and applications. Katz Technology Licensing denies the remaining allegations set forth in Paragraph 101.

103.    Katz Technology Licensing denies all allegations set forth in Paragraph 102.

### III.    Alleged Failure to Inform the USPTO of Inconsistent Positions Taken During Prosecution Regarding the Riskin Patent

104.    Katz Technology Licensing admits that on its face, U.S. Patent No. 4,757,267 indicates that it was issued to Riskin.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 103.

105.    Katz Technology Licensing admits that the statement, "[r]ecognizing that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing, it is respectfully submitted that applicant's system involves entirely different philosophical considerations and structure" was made by the patent applicant during the

prosecution of the '075 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 104.

106.    Katz Technology Licensing admits that U.S. Patent No. 4,757,267 wduring a list of patents disclosed to the USPTO during the prosecution of the '120 patent.  Katz Technology Licensing admits that U.S. Patent No. 4,757,267 was indicated with an "A" beside it to indicate that it "may be pertinent to ANI capabilities."  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 105.

107.    Katz Technology Licensing denies all allegations set forth in Paragraph 106.

108.    Katz Technology Licensing admits that it has asserted the '223 patent against TD Banknorth.  Katz Technology Licensing further admits that the '223 patent claims priority from the '120 patent, among other patents and applications.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 107.

109.    Katz Technology Licensing denies all allegations set forth in Paragraph 108.

## IV.    Alleged Failure to Identify or Disclose Material Information From Related Litigations or Proceedings

110.    The allegations in Paragraph 109 constitute legal conclusions to which no response is required.

111.    Katz Technology Licensing denies all allegations set forth in Paragraph 110.

### A.    *West Interactive Corp. v. First Data Resources, Inc.* Litigation

112.    Katz Technology Licensing admits that West Interactive Corp. brought a declaratory judgment action against First Data Resources, Inc. in the United States District Court for the District of Nebraska.  Katz Technology Licensing further admits that West alleged that the '739, '150, and '773 patents were invalid.

113.    Katz Technology Licensing denies all allegations set forth in Paragraph 112.

114.    Katz Technology Licensing admits that it was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation during the prosecution of the '984, '252, '285, '863, '156, '551, '734, '576, '762, '893, '120, '021, '135, '065, '965, '134, '703, '223, '415 and '360 patents.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 113.

115.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in the first sentence of Paragraph 114 and therefore denies them.  The allegations set forth in the second sentence of Paragraph 114 are vague and uncertain and are therefore denied.  The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.    Katz Technology Licensing denies the remaining allegations set forth in Paragraph 114.

**B.    *First Data Resources, Inc. v. 900 Million, Inc.* Litigation**

116.    Katz Technology Licensing admits that on October 9, 1990, First Data Resources, Inc. brought suit against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150, and '773 patents.

117.    Katz Technology Licensing admits that the defendants in the *First Data Resources, Inc. v. 900 Million, Inc.*, litigation brought a counterclaim alleging invalidity and unenforceability of the '739, '150, and '773 patents.

118.    Katz Technology Licensing admits that certain of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents claim priority to other patents and applications that include the '739 patent.   Katz Technology Licensing denies all remaining allegations set forth in Paragraph 117.

119.    Katz Technology Licensing admits that it was aware of the *First Data Resources, Inc. v. 900 Million, Inc.* litigation during the prosecution of the '285, '863, '551, '734, '893, '120, '965, '134, '703, '223, '252, '984 and '360 patents.  Katz Technology Licensing denies all remaining allegations in Paragraph 118.

120.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in the first sentence of Paragraph 119 and therefore denies them.  The allegations set forth in the second sentence of Paragraph 119 are vague and uncertain and are therefore denied.  The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies the remaining allegations set forth in Paragraph 119.

C.    ***First Data Resources Inc. v. West Interactive Corp., et al.* Litigation**

121.    Katz Technology Licensing admits that on August 20, 1991, First Data Resources, Inc. brought suit against West Interactive Corp and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150, and '298 patents.

122.    Katz Technology Licensing admits that the defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation brought a counterclaim alleging invalidity and unenforceability of the '739, '298, and '150 patents.

123.    Katz Technology Licensing admits that certain of the '285, '863, '551, '734, '893, '120 and '134 patents claim priority to other patents and applications that may, depending upon the patent, include the '739 patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 122.

124.    Katz Technology Licensing admits that it was aware of the *First Data Resources, Inc. v. West Interactive Corp., et al.* litigation during the prosecution of the '285, '863, '551, '734, '893, '120 and '134 patents.

125.    Katz Technology Licensing admits that the existence of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain documents from that litigation were disclosed to Examiner Stella Woo during prosecution of the '285 patent.  Katz Technology Licensing denies that Examiner Woo was unaware of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain document arising from that litigation during prosecution of the '734, '893, '120, '134 and '703 patents.  Katz Technology Licensing further admits that the existence of the *First Data Resources, Inc. v. West Interactive Corp.* litigation and certain documents from that litigation were disclosed to Examiner Thomas W. Brown during the prosecution of the '707 patent.  Katz Technology Licensing denies that Examiner Brown was unaware of the litigation and certain document arising from that litigation during prosecution of the '863 and '551 patents.  The allegations set forth in the second sentence of Paragraph 136 are vague and uncertain and are therefore denied.  The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.  Katz Technology Licensing denies any and all remaining allegations set forth in Paragraph 124.

**D.    *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc. et al.* Litigation**

126.    Katz Technology Licensing admits that on February 9, 1999, Katz Technology Licensing brought suit against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for the alleged infringement of the '739, '153, '252, '285, '863, '734, '023 and '707 patents.

127.    Katz Technology Licensing admits that the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation alleged that the '739, '153, '252, '023, '285, '707, '863 and '734 patents were invalid and/or unenforceable.

128.    Katz Technology Licensing denies all allegations set forth in Paragraph 127.

129.    Katz Technology Licensing admits that it was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation during the prosecution of the '965 and '134 patents.

130.    Katz Technology Licensing lacks sufficient information and knowledge to respond to the allegations in Paragraph 129 and therefore denies them.  Further, the allegations set forth in Paragraph 129 are vague and uncertain and Katz Technology Licensing  therefore denies them.   The terms "intent to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and "unenforceable" are alleged legal conclusions to which no response is required.   Katz Technology Licensing denies any remaining allegations set forth in Paragraph 129.

E.    *Ronald A. Katz Technology Licensing, L.P., et al. v. A T& T Corp., et al*, **Litigation.**

131.    Katz Technology Licensing admits that on July 8, 1997, Katz Technology Licensing brought suit against AT&T Corp. and others in the United States District Court for the Northern District of California for the alleged infringement of the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '633 and '863 patents.

132.    Katz Technology Licensing admits that AT&T alleged that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents were invalid.

133.    Katz Technology Licensing denies all allegations set forth in Paragraph 132.

134.    Katz Technology Licensing admits that it was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp. et al.* litigation during the prosecution of the '893 and '120 patents.

135.    Katz Technology Licensing admits that the existence of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* litigation and certain documents from that litigation were disclosed to Examiner Stella Woo during prosecution of the '021, '134 and '703

patents.  Katz Technology Licensing denies that Examiner Woo was unaware of the *Ronald A.*
*Katz Technology Licensing, L.P. v. AT&T Corp.* litigation and certain document arising from that
litigation during prosecution of the '762, '893 and '120 patents.  Katz Technology Licensing
lacks sufficient information and knowledge to respond to the remaining allegations in the first
sentence of Paragraph 146 and on that basis denies them.  The allegations set forth in the second
sentence of Paragraph 146 are vague and uncertain and are therefore denied.  The terms "intent
to deceive," "scope beyond which Katz was entitled," "inequitable conduct" and
"unenforceable" are alleged legal conclusions to which no response is required.  Katz
Technology Licensing denies any and all remaining allegations set forth in Paragraph 134.

   **F.     Patent Interference No. 103,697**

   136.    Katz Technology Licensing admits that Patent Interference No. 103,697
was declared on February 13, 1996.  Katz Technology further admits that a decision in Patent
Interference No. 103,697 was issued on November 20, 1996.  Katz Technology Licensing also
admits that the Board of Patent Appeals and Interferences found that certain limitations of count
1 of Patent Interference No. 103,697 were not entitled to the benefit of the filing date of the '968
patent.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 135.

   137.    The term "material to the patent examiners" is so vague and ambiguous
that Katz Technology Licensing lacks sufficient information and knowledge to respond and
therefore denies these allegations.  Further, to the extent the term is intended to allege legal
materiality, the allegations constitute legal conclusions to which no response is required.  Katz
Technology Licensing admits that the '863, '965, '734, '893, '120 and '134 patents claim
priority to other patents and applications that include the '968 patent.  Katz Technology
Licensing further admits that terminal disclaimers were filed during the prosecution of the '863,
'551 and '134 patents.  Katz Technology Licensing denies all remaining allegations set forth in
Paragraph 136.

   138.    Katz Technology Licensing admits that Patent Interference No. 103,697
was not expressly brought to the attention of the patent examiners during the prosecution of the

'863, '965, '734, '893, '120 and '134 patents.  Katz Technology Licensing denies all remaining allegations set forth in Paragraph 137.

**V.     Alleged Failure to Disclose Adverse Findings From Appeal Rulings**

139.    Katz Technology Licensing admits that certain Appeal Rulings of patents related to the patents asserted against TD Banknorth upheld rejections made by the patent examiner.    Katz Technology Licensing denies all remaining allegations set forth in Paragraph 138.

140.    The allegations in Paragraph 139 relate to the decision of the Board of Patent Appeals and Interferences in Appeal No. 94-0834; Katz Technology Licensing responds that the decision speaks for itself and no further response is required.

141.    The allegations set forth in Paragraph 140 constitute legal conclusions to which no response is required.

142.    Katz Technology Licensing admits that during the prosecution of the '734, '893, '120, '965 and '134 patents, the patent applicant did not expressly inform the USPTO of the USPTO's own earlier decisions with respect to patent claims in related patent applications. The remaining allegations set forth in Paragraph 141 constitute legal conclusions to which no response is required.  Katz Technology Licensing denies any remaining allegations set forth in Paragraph 141.

143.    Katz Technology Licensing denies all allegations set forth in Paragraph 142.

**VI.    Alleged False and Misleading Statements**

144.    Katz Technology Licensing denies the allegations set forth in Paragraph 143.

145.    Katz Technology Licensing denies the allegations set forth in Paragraph 144.

146.    Katz Technology Licensing admits during prosecution of the '984 patent, the examiner rejected application claim 10 under 35 U.S.C. § 103 "as being unpatentable over

Fodale in combination with the teachings of WO 87/00375 ('375)."  Katz Technology Licensing

further admits that the patent applicant stated during prosecution of the '984 patent, [t]he Katz

reference (R), International Publication No. WO 87/00375 coincides to the parent of U.S. Patent

4,792,968.   In that regard, as now recited in the specification, the present application is a

continuation-in-part of Serial No. 312,792; which is a continuation-in-part of Serial No. 194,258

(now patent 4,845,739); which is a continuation-in-part of Serial No. 018,244 (now patent

4,792,968); which is a continuation-in-part of Serial No. 753,299 which is the equivalent of the

reference.   Accordingly, the international application is not properly a reference against the

present case."   Katz Technology Licensing denies the remaining allegations set forth in

Paragraph 145.

    147.   Katz Technology Licensing admits that in an Amendment filed January

31, 1996 during the prosecution of the '734 patent, the patent applicant stated, "[a]lthough it is

questionable whether the Brown patent even qualifies as prior art, Applicant in the interest of

being candid, is bringing it to the Examiner's attention.  The Brown patent has an issue date of

November 20, 1990, and a filing date of September 20, 1989.  It should be noted that the present

application ultimately claims priority from Applicant's parent patent U.S. Patent No. 4,930,150,

which predates the Brown patent with respect to disclosure of alternate access possibilities (e.g.,

'800' or '900')."   Katz Technology Licensing denies the remaining allegations set forth in

Paragraph 147.

    148.   Katz Technology Licensing admits that in a Supplemental Amendment

filed March 14, 1995 during the prosecution of the '734 patent, the patent applicant stated, "[t]he

reference by Hester bears a date of 1985, apparently 'September'.  In that regard, it is noteworthy

that the present application is related to a parent case filed July 10, 1985."   Katz Technology

Licensing denies all remaining allegations set forth in Paragraph 148.

    149.   Katz Technology Licensing admits that in a Supplemental Amendment

filed March 14, 1995 during the prosecution of the '734 patent, the patent applicant stated "U.S.

Patent No. 4,797,913 (Kaplan et al.) is directed to a telephonic vending system involving the use

of (ANI) information for qualification (column 2, line 50). However, it should be noted that in that regard, the present application is entitled to a priority date earlier than that of the subject reference." Katz Technology Licensing denies all remaining allegations set forth in Paragraph 149.

150. Katz Technology Licensing denies all allegations set forth in Paragraph 150.

151. Katz Technology Licensing admits that it has asserted the '120 and '223 against TD Banknorth in this action. Katz Technology Licensing further admits that the '120 and '223 patents claim priority from other patents and applications that include the '984 and '734 patents. Katz Technology Licensing denies all remaining allegations set forth in Paragraph 51.

152. Katz Technology Licensing denies all allegations set forth in Paragraph 152.

## PRAYER FOR RELIEF ON TIME WARNER CABLE'S COUNTERCLAIMS

Katz Technology Licensing respectfully requests that, in response to TD Banknorth's Counterclaim, this Court:

1. Dismiss TD Banknorth's Counterclaims with prejudice;

2. Adjudge that TD Banknorth are not entitled to any relief, including any of the relief requested in their prayer for relief; and

3. Award to Katz Technology Licensing the relief requested in its Complaint and such other relief as the Court may deem appropriate and just under the circumstances.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Ronald A. Katz Technology Licensing, L.P.*

OF COUNSEL:

Robert T. Haslam
Andrew C. Byrnes
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025-3506
650.324.7000

Michael K. Plimack
Dale A. Rice
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
415.772.6000

November 20, 2006
546489

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following William J. Wade, Anne Shea Gaza, Philip A. Rovner, Paul J. Lockwood, Richard Herrmann.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 20, 2006 upon the following individuals in the manner indicated:

### <u>BY EMAIL</u>

William J. Wade
Anne Shea Gaza
Richards, Layton & Finger
wade@rlf.com
gaza@rlf.com

Martin J. Black
Dechert LLP
martin.black@dechert.com

David A. Roodman
Bryan Cave LLP
daroodman@bryancave.com

Philip A. Rovner
Potter Anderson & Corroon, LLP
provner@potteranderson.com

Kenneth R. Adamo
Jones Day
kradamo@jonesday.com

Paul J. Lockwood
Skadden, Arps, Slate, Meagher & Flom
plockwood@skadden.com

Daniel A. DeVito
Skadden, Arpts, Slate, Meagher & Glom LLP
ddevito@skadden.com

Richard Herrmann
Morris, James, Hitchens & Williams LLP
rherrmann@morrisjames.com

Thomas M. Dunham
Howrey LLP
dunhamt@howrey.com

Michael Bednarek
Paul Hastings Janofsky & Walker LLP
michaelbednarek@paulhastings.com

*/s/ Julia Heaney*

_____
Julia Heaney (#3052)
jheaney@mnat.com