IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-544 (GMS) |
| TD BANKNORTH INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S
OPPOSITION TO DILLARD'S MOTION TO STAY ACTION
PENDING THE PATENT AND TRADEMARK OFFICE'S
REEXAMINATION OF CERTAIN CLAIMS OF CERTAIN KATZ PATENTS**

Plaintiff Ronald A. Katz Licensing Technology, L.P. ("Katz Technology Licensing") hereby submits this opposition to the Motion to Stay Pending Reexamination (D.I. 64) filed by defendants Dillard's, Inc. and Dillard Investment Co, Inc. (collectively "Dillard's").

Dillard's did not submit a brief in support of its motion, but rather relied on the opening brief filed by the defendants in C.A. No. 06-546-GMS (D.I. 81). Accordingly, Katz Technology Licensing responds to Dillard's motion by incorporating herein by reference its Answering Brief In Opposition To Telecom Defendants' Motion To Stay Action Pending The Patent And Trademark Office's Reexamination Of Certain Claims Of Certain Katz Patents filed today in C.A. No. 06-546-GMS, and attached hereto as Exhibit 1. For all of the reasons set forth in its Answering Brief, Katz Technology Licensing respectfully requests that the Court deny Dillard's motion to stay these proceedings pending reexamination by the USPTO of certain claims of certain of the patents asserted against Dillard's, and allow this action to proceed without further delay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Ronald A. Katz Technology Licensing, L.P.*

OF COUNSEL:

Robert T. Haslam
Andrew C. Byrnes
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025-3506
650.324.7000

Michael K. Plimack
Dale A. Rice
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
415.772.6000

January 17, 2007

677739

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following William J. Wade, Anne Shea Gaza, Philip A. Rovner, Paul J. Lockwood, Richard Herrmann.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on January 17, 2007 upon the following individuals in the manner indicated:

**<u>BY EMAIL</u>**

William J. Wade
Anne Shea Gaza
Richards, Layton & Finger
wade@rlf.com
gaza@rlf.com

Martin J. Black
Dechert LLP
martin.black@dechert.com

David A. Roodman
Bryan Cave LLP
daroodman@bryancave.com

Philip A. Rovner
Potter Anderson & Corroon, LLP
provner@potteranderson.com

Kenneth R. Adamo
Jones Day
kradamo@jonesday.com

Paul J. Lockwood
Skadden, Arps, Slate, Meagher & Flom
plockwood@skadden.com

Daniel A. DeVito
Skadden, Arpts, Slate, Meagher & Glom LLP
ddevito@skadden.com

Richard Herrmann
Morris, James, Hitchens & Williams LLP
rherrmann@morrisjames.com

Thomas M. Dunham
Howrey LLP
dunhamt@howrey.com

Michael Bednarek
Paul Hastings Janofsky & Walker LLP
michaelbednarek@paulhastings.com

*/s/ Julia Heaney*

_____

Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-546-GMS |
| TIME WARNER CABLE INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) ) | |

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S
ANSWERING BRIEF IN OPPOSITION TO TELECOM DEFENDANTS' MOTION
TO STAY ACTION PENDING THE PATENT AND TRADEMARK OFFICE'S
<u>REEXAMINATION OF CERTAIN CLAIMS OF CERTAIN KATZ PATENTS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone:  (302) 658-9200

*Attorneys for Plaintiff
Ronald A. Katz Technology Licensing, L.P.*

OF COUNSEL:

Robert T. Haslam
Andrew C. Byrnes
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025-3506
Telephone:  (650) 324-7000

Michael K. Plimack
Dale A. Rice
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone:  (415) 772-6000

DATED:  January 17, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

II.     SUMMARY OF ARGUMENT ......................................................................... 3

III.    STATEMENT OF FACTS .................................................................................. 5

        A.      The Inventor And The Patents-In-Suit ................................................. 5

        B.      Licensing And Enforcement Of Patents In The Katz Patent
                Portfolio ..................................................................................................... 7

        C.      Efforts To Discredit The Katz Patents And The Current
                Reexaminations ......................................................................................... 9

IV.     ARGUMENT ....................................................................................................... 11

        A.      Katz Technology Licensing Will Be Unduly Prejudiced And
                Placed At A Clear Tactical Disadvantage If Defendants Are
                Allowed To Use PTO Reexamination Proceedings On A Limited
                Number Of Claims And Patents-In-Suit To Indefinitely Delay This
                Action ......................................................................................................... 11

        B.      It Is Not Necessary To Stay The Entire Action Even If The
                Pending Reexaminations May Modify Or Eliminate A Limited
                Pool Of Claims ......................................................................................... 13

                1.      The Reexaminations Only Encompass A Limited Number
                        Of Claims In Seven Of The Twenty-Six Patents-In-Suit ........ 13

                2.      Infringement, Damages, Validity And Enforceability Issues
                        Will Remain In The Case Regardless Of The
                        Reexamination Results ................................................................. 15

        C.      There Is No Reason To Stay All Discovery Or Other Proceedings .... 16

        D.      The Court Should Defer Ruling On This Motion Pending A
                Decision From The Judicial Panel On Multidistrict Litigation .......... 17

V.      CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Other Authorities

*Arthrocare Corp. v. Smith & Nephew, Inc.*
No. 01-504-SLR, slip op. (D. Del. Nov. 27, 2002) ................................................. 4, 5, 12

*Enprotech Corp. v. Autotech Corp.*
No. 88 C 4853, 1990 U.S. Dist. LEXIS 2926 (N.D. Ill. Mar. 15, 1990) ........................ 16

*Ethicon, Inc. v. Quigg*
849 F.2d 1422 (Fed. Cir. 1988) ..................................................................................... 5

*Joy Techs., Inc. v. Manbeck*
959 F.2d 226 (Fed. Cir. 1992) ..................................................................................... 10

*Pegasus Development Corp. v. DirectTV, Inc.*
No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ..................... 3

*Synopsys, Inc. v. Magma Design Automation*
No. 05-701-GMS, slip op. (D. Del. May 25, 2006) ....................................................... 16

*Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*
882 F.2d 1570 (Fed. Cir. 1989) ................................................................................... 10

*Xerox Corp. v. 3Comm Corp.*
69 F. Supp. 2d 404 (W.D.N.Y. 1999) ............................................................................ 3

## Regulations

35 U.S.C. §§ 145 ......................................................................................................... 10

35 U.S.C. §§ 306 ......................................................................................................... 10

Ronald A. Katz Licensing Technology, L.P. ("Katz Technology Licensing") hereby submits this answering brief in opposition to the stay motion filed by the defendants in this case (collectively "Telecom Defendants").[1]  Katz Technology Licensing has asserted 26 patents from the Katz Patent Portfolio against one or more of the Telecom Defendants in this lawsuit (collectively "patents-in-suit").

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Telecom Defendants' motion to stay this action is their latest tactic to delay paying for their use of interactive call processing systems that infringe a number of patents issued to Ronald A. Katz ("Mr. Katz").  Mr. Katz is a well-known inventor and business person who both created and helped to implement important innovations for interactive call processing systems.  He is the named inventor on more than fifty patents issued by the United States Patent and Trademark Office ("PTO") relating to these systems ("Katz patents" or collectively the "Katz Patent Portfolio").  More than 150 companies, including many major telecommunications companies, have recognized the value of Mr. Katz's inventions by taking licenses to his patents.

The Telecom Defendants, however, are among the hold-out companies that stubbornly refuse to take a license for their infringing call center systems.  They have long been on notice of the Katz patents.  In fact, Katz Technology Licensing and its licensing affiliate,

---

[1]     The Telecom Defendants include: (1) Time Warner Cable Inc., Time Warner NY Cable LLC and Time Warner Entertainment Company, L.P. ("Time Warner Cable Defendants); (2) AOL LLC, CompuServe Interactive Services, Inc. and Netscape Communications Corporation ("AOL Defendants"); (3) United States Cellular Corporation, TDS Telecommunications Corporation and TDS Metrocom, LLC ("TDS Defendants"); (4) Cablevision Systems Corporation, CSC Holdings, Inc., Cablevision Systems New York City Corporation, Cablevision of Brookhaven, Inc., Cablevision of Connecticut Corporation, Cablevision of Hudson County, Inc., Cablevision of Litchfield, Inc., Cablevision of Monmouth, Inc., Cablevision of New Jersey, Inc., Cablevision of Oakland, LLC and Cablevision of Rockland/Ramapo, LLC ("Cablevision Defendants"); (5) Charter Communications, Inc., Charter Communications Holding Company, LLC, Charter Communications Operating, LLC and Charter Communications Entertainment I, LLC ("Charter Communications Defendants"); and (6) Qwest Communications International Inc., Qwest Wireless, L.L.C., Qwest Communications Corporation, Qwest LD Corp., Qwest Broadband Services, Inc. and Qwest Interprise America, Inc. ("Qwest Defendants").

A2D, L.P., have sent multiple communications to the Telecom Defendants and other hold-out companies about the Katz patents, offering a non-exclusive license to practice the patented inventions. Some hold-out companies have ignored or rebuffed these offers from Katz Technology Licensing while others have stalled—in some cases for years. None of the Telecom Defendants has taken a license for the Katz patents.

In their relentless drive to avoid paying for use of the Katz inventions, hold-out companies have gone to extraordinary lengths. The four reexaminations ordered by the Director of the PTO followed intense political maneuvering. Apparently spurred by the lobbying of unidentified business constituents, Senator Jeff Sessions (R-AL), Senator Trent Lott (R-MS), Representative Spencer Bachus (R-AL) and Representative Melissa Hart (R-PA) repeatedly pressured the Director to order reexaminations of certain Katz patents that were about to expire. The other reexamination requests were filed on behalf of anonymous parties after the recent lawsuits were filed. Likewise, they include requests relating to expired patents that only could have been intended to forestall damages. Now the Telecom Defendants are trying to leverage these reexaminations, which relate to less than four percent of the claims in the Katz patents-in-suit in this action (and now less than two percent because the PTO has allowed 36 of the 66 reexamined claims), to further delay their day of reckoning.

Katz Technology Licensing is entitled to its day in court. It has used litigation as a last resort, offering the Telecom Defendants repeated opportunities over many years to resolve this matter. When forced to sue to enforce its patents, Katz Technology Licensing filed several cases in this district because it is a forum known for its patent experience and its ability to manage cases expeditiously. If the Telecom Defendants truly think they do not infringe or that the patents are invalid or unenforceable, they now will have their chance to present their case. But this Court should not allow the Telecom Defendants to continue to delay resolution of this matter, likely for years more.

A stay is particularly inappropriate in this case because the reexamination proceedings relate to a limited number of claims in only seven of the twenty-six patents-in-suit.

The substantial majority of additional claims in those seven patents and the nineteen other patents-in-suit are not subject to reexamination (amd more than half of the claims in reexamination have been allowed by the PTO).  There is no chance that the reexaminations will eliminate or materially affect Katz Technology Licensing's claims against the Telecom Defendants, but the Telecom Defendants nonetheless seek to shut down this case for years until the reexaminations are resolved.

Entering a stay in this case will send the wrong message to litigants and to the patent bar.  Specifically, defendants will conclude that simply by requesting reexamination of a patent at issue in a case before this Court, one can delay a trial for several years.  Similarly, plaintiffs may conclude that this Court is no longer a favorable forum for the expeditious resolution of patent cases.  The Court should not allow Telecom Defendants to "game the system" in this way.  The Court should deny the motion for a stay.

## II.    SUMMARY OF ARGUMENT

1.    The pending reexaminations of the Katz patents are part of an ongoing effort by the Telecom Defendants and other hold-out companies to delay a determination of their infringement of the Katz patents.  Katz Technology Licensing has tried repeatedly to negotiate licenses with the Telecom Defendants.  In response, the Telecom Defendants have either stalled or failed to respond, thereby postponing their obligation to pay for their use of the patented inventions.  The Telecom Defendants' motion for a stay is yet another attempt to delay that should not be permitted by this Court.

2.    In deciding whether to exercise its discretion to stay this action pending completion of a PTO reexamination, this Court "is guided by the following factors:  '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'"  *Pegasus Development Corp. v. DirectV, Inc.*, C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *3-*4 (D. Del. May 14, 2003), quoting *Xerox Corp. v. 3Comm Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).  There

is no obligation to stay proceedings and "[c]ourts clearly have the authority to order their cases to trial." *Arthrocare Corp. v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR, slip op. at 1 (D. Del. Nov. 27, 2002).

3.    In this case, Katz Technology Licensing will be unduly prejudiced and subject to clear tactical disadvantage if defendants are permitted to use recently filed reexamination requests for a *limited number* of claims in seven patents-in-suit to stay this action as to *all claims* in those seven patents and the other 19 patents-in-suit that are not subject to any reexamination proceeding.[2]    Indeed, less than four percent of the claims in the 26 patents-in-suit are in reexamination (66 of the 1,674 claims) and more than half of these reexamined claims (36 of the 66) have already been allowed by the PTO.    We are aware of no case in which this Court has granted such a broad stay based on pending reexaminations of such limited scope. Moreover, if defendants are allowed to use limited reexamination proceedings to shut down patent litigation on multiple claims and patents that are not subject to the reexamination, it will create an inappropriate incentive for defendants to use piecemeal, seriatim reexamination requests to postpone patent litigation for years.    Such a result would be particularly inappropriate here because the Telecom Defendants have already stalled for years, ignoring and rebuffing Katz Technology Licensing's repeated efforts to negotiate licenses for the patents.

4.    In evaluating whether it would simplify a case to stay proceedings pending conclusion of a PTO reexamination, the Federal Circuit and this District "ha[ve] recognized that

---

[2]    Katz Technology Licensing has asserted 26 patents against the Telecom Defendants. Those patents-in-suit, listed by date of issuance ranging from 1988 through 2004, include: (1) U.S. Patent No. 4,792,968; (2) U.S. Patent No. 4,930,150; (3) U.S. Patent No. 4,939,773; (4) U.S. Patent No. 4,987,590; (5) U.S. Patent No. 5,128,984; (6) U.S. Patent No. 5,251,252; (7) U.S. Patent No. 5,297,197; (8) U.S. Patent No. 5,351,285; (9) U.S. Patent No. 5,442,688; (10) U.S. Patent No. 5,684,863; (11) U.S. Patent No. 5,787,156; (12) U.S. Patent No. 5,815,551; (13) U.S. Patent No. 5,828,734; (14) U.S. Patent No. 5,835,576; (15) U.S. Patent No. 5,898,762; (16) U.S. Patent No. 5,917,893; (17) U.S. Patent No. 5,974,120; (18) U.S. Patent No. 6,035,021; (19) U.S. Patent No. 6,148,065; (20) U.S. Patent No. 6,335,965; (21) U.S. Patent No. 6,349,134; (22) U.S. Patent No. 6,424,703; (23) U.S. Patent No. 6,434,223; (24) U.S. Patent No. 6,449,346; (25) U.S. Patent No. 6,512,415; and (26) U.S. Patent No. 6,678,360.

patent litigation in a district court and reexamination proceedings before the PTO do not implicate a 'precise duplication of effort' because 'litigation and reexamination are distinct proceedings with distinct parties, purposes, procedures, and outcomes.'" *Arthrocare*, slip op. at 1-2, quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). Here, awaiting the results of the pending reexaminations would not simplify or limit the issues to be decided in any meaningful way because: (1) the reexaminations will impact, at most, a small number of the claims in seven patents-in-suit, but will not impact the many other claims in those patents or in the other 19 patents-in-suit; and (2) regardless of the reexamination results, there will still be claims and patents at issue and the parties will be before this Court on infringement, damages, validity and enforceability issues.

5.    Although discovery has not yet commenced and no trial date has been set, this is a neutral factor that does not support a stay.  Given the circumstances here—with 26 patents-in-suit and only limited claims in seven of those patents subject to reexamination—the reexaminations can not possibly lead to dismissal of the infringement claims against Telecom Defendants.  Even if the Court deems it advisable to defer certain case activities relating to the limited number of patent claims that are actually subject to reexamination, this can be handled as a matter of case management without a stay.  Indeed, there is much the parties can and should accomplish during the pendency of the reexaminations that will not require the Court's active involvement.  For example, discovery on infringement and damages should proceed immediately because the reexaminations have no bearing on the scope of, and need for, such discovery. Similarly, the many claims and patents that are not in reexamination are ripe for discovery and adjudication at this time.

## III.    STATEMENT OF FACTS

### A.    The Inventor And The Patents-In-Suit

Mr. Katz is the founder of Katz Technology Licensing and the sole inventor of each of the patents-in-suit.  He has a proven track record as a successful and innovative business person.  Mr. Katz has been widely recognized as one of the most prolific and successful

inventors of our time, and his inventions over the last forty-plus years have been implemented by hundreds of companies and utilized by literally millions of people.  (D.I. #1, Complaint at ¶ 40.)

In 1961, Mr. Katz co-founded Telecredit Inc. ("Telecredit"), the first company to provide online, real-time credit authorization, allowing merchants to verify checks over the telephone.  Further innovations from Telecredit include the first online, real-time, point-of-sale credit verification terminal, which enabled merchants to verify checks without requiring the assistance of a live operator, and the first device that used and updated magnetically-encoded cards in automated teller machines.  Several patents issued from these innovations, including patents co-invented by Mr. Katz.  (D.I. #1, Complaint at ¶ 41.)

Mr. Katz is also responsible for inventions in other fields of technology, including his prominent and well-known innovations in the field of interactive call processing that are at issue in this litigation.  These inventions are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services.  (D.I. #1, Complaint at ¶ 43.)  On December 20, 1988, the first of Mr. Katz's interactive call processing patents issued.  More than fifty U.S. patents have issued to Mr. Katz for his inventions in the interactive call-processing field, including each of the patents-in-suit.  (D.I. #1, Complaint at ¶ 44.)

Mr. Katz is not just an inventor; he has been an active industry participant who has been involved with implementing and offering interactive call processing services.  In 1988, Mr. Katz partnered with American Express to establish FDR Interactive Technologies, later renamed Call Interactive, to provide interactive call processing services based on Mr. Katz's inventions.  The American Express business unit involved in this joint venture later became known as First Data.  (D.I. #1, Complaint at ¶ 45.)  Early clients of Call Interactive included *The New York Times*, ABC's *Monday Night Football*, KABC Radio, CBS News, and Beatrice Foods (Hunt-Wesson division).  (D.I. #1, Complaint at ¶ 46.)

Mr. Katz sold his interest in Call Interactive to American Express in 1989, but he continued to provide advisory services to Call Interactive until 1992.  American Express later

spun off the First Data business unit into a separate corporation, and with that new entity went Mr. Katz's interactive call processing patents and the Call Interactive call processing business. The former Call Interactive, now known as First Data Voice Services, continues to provide call processing solutions today.  (D.I. #1, Complaint at ¶ 48.)

        In 1994, Mr. Katz formed Katz Technology Licensing.   Katz Technology Licensing acquired the rights to Mr. Katz's entire interactive call processing patent portfolio from First Data, including the rights to each of the patents-in-suit.  (D.I. #1, Complaint at ¶ 49.)

**B.      Licensing And Enforcement Of Patents In The Katz Patent Portfolio**

        The marketplace has recognized the value of Mr. Katz's inventions and more than 150 companies have licensed the patents-in-suit.  Licensees include IBM, Hewlett-Packard, Bank of America, JPMorgan Chase, Wells Fargo, HSBC, AT&T, Verizon, Sprint, Microsoft, Delta Airlines, Merck, Sears, Citibank, and the Home Shopping Network.  These licensees and others have acknowledged the applicability of the patents-in-suit to multiple fields of use, including but not limited to financial services call processing, automated securities transactions, automated credit card authorization services, automated wireless telecommunication services and support, automated health care services, and product and service support.  (D.I. #1, Complaint at ¶ 50.)

        Most licensees have taken licenses from Katz Technology Licensing without any need for judicial intervention.  However, in some instances, Katz Technology Licensing has had to file suit to enforce its patents, including the now-settled lawsuits against AT&T and Verizon referenced in Telecom Defendants' opening brief.  The defendants in both of those cases settled before trial.  In 2000, "AT&T paid an undisclosed sum for a worldwide, nonexclusive license" to the patents in the Katz Patent Portfolio as part of a "significant settlement."  *See* attached Exhibit A (AT&T press release, dated November 9, 2000).  Similarly, Verizon entered into a "significant settlement" with Katz Technology Licensing and "became a nonexclusive licensee in the wireless field under a portfolio of patents" owned by Katz Technology Licensing.  *See* attached Exhibit B (Verizon and Katz Technology Licensing joint press release, dated July 19, 2004).

In July 2005, Katz Technology Licensing filed a lawsuit in Texas against Citibank, Discover, T-Mobile and Wal-Mart (the "*Citibank* case").[3]  In January 2006, the Citibank defendants reached a settlement with Katz Technology Licensing; as part of the settlement, Citigroup "agreed to pay an undisclosed sum for a nonexclusive license under a comprehensive portfolio of patents that [Katz Technology Licensing] owns relating to interactive voice applications."  *See* attached Exhibit C (January 3, 2006 Citigroup/Katz Technology Licensing press release).  The *Citibank* case is proceeding against the other defendant groups. *See* Declaration of Kelly Farnan submitted with Telecom Defendants' Opening Brief, DI #82 ("Farnan Decl."), Ex. 1 (Katz Technology Licensing's Opposition to Target's Motion for Transfer and Consolidation, Memorandum at 1, 3-5, reporting on status of *Citibank* case).

In August and September 2006, additional lawsuits were filed in Texas and Delaware against 175 defendants, including five related cases filed on September 1, 2006 in the District of Delaware.  *See id.*, Ex. 1 (Memorandum at 5-7, outlining 2006 patent actions filed in Texas and Delaware).   The five Delaware actions initially included 95 defendants and 25 defendant groups; with the recent settlement with and dismissal of the LaSalle defendant group (*see* DI #71), there are now 91 defendants in 24 groups.[4]  Katz Technology Licensing initiated these lawsuits only after repeated efforts to license the patents-in-suit to each defendant group were unsuccessful.  (D.I. #1, Complaint at ¶ 51.)

---

[3]     The defendants in the 2005 action include Citibank, N.A., Citibank, F.S.B., Citibank (West), F.S.B., Citibank (South Dakota), N.A., Citibank USA, N.A., Citicorp Investment Services, Discover Financial Services, Inc., Discover Bank, T-Mobile USA, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores Texas, L.P., Sam's East, Inc., Sam's West, Inc. and Wal-Mart.com, Inc.

[4]     In December 2006, CVS Corporation filed a sixth lawsuit against Katz Technology Licensing in the District of Delaware, seeking a declaratory judgment that it does not infringe certain patents in the Katz Patent Portfolio or that those patents are invalid or unenforceable.  (C.A. No. 06-775-GMS, D.I. #1.)  That action has been related to the five earlier Delaware cases and all six cases are assigned to this Court.  Neither party to the CVS action has requested any stay of the proceedings.

In October 2006, one of the defendants in the Texas lawsuits filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking consolidation of the Delaware actions, including this case, with the lawsuits filed by Katz Technology Licensing in Texas. On January 25, 2007, that motion is to be heard by the JPML.

### C.    Efforts To Discredit The Katz Patents And The Current Reexaminations

While a large number of sophisticated companies and corporate conglomerates in various industries have taken licenses to Katz Technology Licensing's patents, other companies have steadfastly refused to do so. Some of these hold-out companies have apparently gone further, seeking to attack Katz Technology Licensing and its patents and, according to media reports, banding together with other hold-out companies to do so. Katz Technology Licensing has uncovered evidence of at least some of the political maneuvering and lobbying directed at its patents. It demonstrates the extraordinary measures that some companies have been willing to take in their attempt to avoid paying licensing fees for use of the patented inventions.

Through a Freedom of Information Act request to the PTO, Katz Technology Licensing has learned that the reexaminations that were ordered by the Director of the PTO followed political pressuring of the PTO to order reexamination of some of the Katz patents. *See* attached Exhibit D (cover letter and correspondence produced by PTO in response to FOIA request). A March 25, 2003 letter from Senator Jeff Sessions (R-AL), apparently a result of lobbying by business constituents, asks for information about possible reexamination of the Katz patents. *Id.* The April 2, 2003 response from the PTO's Deputy Administrator for External Affairs states that as of that date, no reexamination had been requested of any patent issued to Mr. Katz and that "[n]o reexamination of any of the patents in the Katz patent portfolio is currently planned." *Id.*

Subsequent correspondence reveals that Senator Sessions and others then continued to pressure the PTO Director to order reexamination of the patents. In a February 9, 2004 letter, Senators Sessions and Trent Lott (R-MS) refer to communications with the PTO

"over the past several months regarding the reexamination of 16 patents that are part of a larger patent portfolio owned by Mr. Ronald A. Katz." *Id.* Even though the letter acknowledges that a third party can seek reexamination, the senators urge the PTO to conduct a director-ordered reexamination procedure for the Katz patents. *Id.* A letter almost identical to the Sessions/Lott letter was sent to the Director of the PTO on the same day by Representatives Spencer Bachus (R-AL) and Melissa Hart (R-PA). *Id.* Shortly thereafter, the PTO director-ordered reexamination of four Katz patents. *See* attached Exhibit E (March 24, 2004 Notice of Director Ordered Reexaminations).[5]

In addition to the Director-ordered reexaminations, the widely-publicized filing of the *Citibank* case in July 2005 was followed by a series of third-party reexamination requests, including the reexaminations of certain claims in seven of the patents-in-suit in this action. Although the requests do not name the initiating party (only a lawyer and law firm are identified), there can be no serious doubt that these reexamination requests were a result of, and related to, the pending patent lawsuits in Texas and Delaware. Five of the reexamination requests relate to expired patents—the only purpose of these filings can be to try to forestall

---

[5]    After the PTO Director ordered the reexamination of these four patents, third-party reexamination requests were filed and granted for those same patents; they are being addressed as part of the ongoing reexamination proceedings. These four patents are not patents-in-suit in this action, although two of the four have been asserted against the defendants in *Ronald Katz Technology Licensing, L.P. v. Ahold U.S.A., Inc.*, C.A. No. 06-545-GMS. The Examiner has already allowed 75 claims during the reexaminations for these two asserted patents (for U.S. Patent No. 5,255,309, the Examiner has allowed 30 claims; for U.S. Patent No. 5,561,707, the Examiner has allowed 45 claims).

Katz Technology Licensing reserves the right to address any issues related to the reexamination proceedings in the proper forum, *i.e.*, either through the appellate process governing the reexaminations or through an action brought in the District Court for the District of Columbia. 35 U.S.C. §§ 145, 306; *see, e.g., Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1572 (Fed. Cir. 1989) (patent owner given a right to review of an examiner's final reexamination decision first before the PTO Board of Patent Appeals and Interferences and then either by direct appeal of the board's decision to the Ferderal Circuit or by suit against the PTO in the district court for the District of Columbia); *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992) (patent owner may bring suit against PTO Commissioner per 35 U.S.C. §§ 145, 306).

paying damages for infringing the Katz patents. But these reexaminations also are very limited in scope. Only one of the seven reexaminations relates to all claims in the patent (and the Examiner has allowed 36 of these claims in the reexamination); the other six reexamination requests are limited to only two claims in each patent (less than two percent of the claims in these six patents).[6]

## IV.    ARGUMENT

### A.    Katz Technology Licensing Will Be Unduly Prejudiced And Placed At A Clear Tactical Disadvantage If Defendants Are Allowed To Use PTO Reexamination Proceedings On A Limited Number Of Claims And Patents-In-Suit To Indefinitely Delay This Action

Katz Technology Licensing is aware that this Court has granted stays pending PTO reexaminations in several other cases, but none of these cases involved the very limited reexamination proceedings at issue here. In this case, a stay would create undue prejudice to Katz Technology Licensing, which at a minimum should be allowed its day in court to enforce the many claims and patents that are not implicated by the reexamination proceedings. The Court has other procedural options to address the claims in reexamination without delaying proceedings on the other claims and patents.[7]

---

[6]    The reexamination of the '156 patent encompassed all 54 claims in the patent, but, based on reexamination results to date, the examiner has allowed 36 of those claims. The other reexamination requests relate to two claims per patent: (1) '120 patent (2 claims out of 81); (2) '223 patent (2 claims out of 107); (3) '285 patent (2 claims out of 67); (4) '551 patent (2 claims out of 35); (5) '734 patent (2 claims out of 254); and (6) '863 patent (2 claims out of total). Similarly, the pending request for reexamination of the '984 patent, which follows an earlier request that was denied by the PTO, relates to only 2 of the 23 claims in the patent.

[7]    Telecom Defendants' argue that further delay would not create prejudice because of the purported 18-year delay in filing suit (*see* Opening Brief at 1, 9). This argument is misleading and disingenuous at best. The actual issue dates for the patents are as recent as 2004. Moreover, the relevant inquiry is not issue date, but when Katz Technology Licensing became aware that a particular defendant was infringing its patents. Even if Katz Technology Licensing had knowledge of possible infringing activity, it was not unreasonable for Katz Technology Licensing to investigate and then try to reach a negotiated agreement before embarking on expensive, time-consuming and burdensome litigation. Moreover, during this period, Katz Technology Licensing was actively engaged in enforcing its patents through the litigation process.

This case also demonstrates the potential danger if selective, piecemeal and potentially seriatim reexamination proceedings can be used to delay all litigation for unspecified but extended periods of time. Historically, reexamination requests are almost always granted by the PTO. *See* Farnan Decl., Ex. 2 (PTO statistics show that 91% of all requests for reexamination from 1981 to March 2006 were granted). Reexaminations typically are not expeditious. The average pendency for a reexamination is almost two years; if there are appeals, this period could extend even longer. *See id.* (average pendency from filing to certificate issue is 22.6 months). As the pending reexaminations demonstrate, defendants can file piecemeal requests directed to a small number of claims. Moreover, there is no prohibition against filing multiple, seriatim requests for reexamination of the same patent. This has already happened twice to the Katz patents.[8]

If defendants believe that they can obtain a stay as long as there are some reexamination proceedings pending, defendants who want to delay can and will keep filing reexaminations, patent-by-patent, claim-by-claim. This creates a clear tactical disadvantage for the patent owner since it cannot prevent third-party reexamination requests. And it is inefficient for the system as a whole—it creates incentives to file reexamination requests for leverage in patent litigation and threatens to derail orderly management of that litigation. As Judge Robinson has noted, granting stays pending reexamination too readily could interfere with the Court's "primary purpose . . . to manage litigation in an expeditious matter." *Arthrocare*, slip op. at 2 (Judge Robinson explained that she therefore "generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances."). Patent owners will be hesitant to file actions in any district where there is a risk that stays are routinely granted pending completion of PTO reexaminations. Such caution would be understandable: patent owners

---

[8]    The PTO denied the first requests for reexamination of the '551 and '984 patents, but counsel then filed second requests (the '551 request has been granted and the '984 request is pending). The PTO also denied the request for reexamination of the '252 patent, but no second request for reexamination has been filed to date.

otherwise could be held hostage to defendants' tactical filing of selective, seriatim reexamination proceedings to delay the case and the patent owner's day in court. This is particularly true where the reexaminations are not even filed until after litigation is initiated.

In this case, the Telecom Defendants were aware of the Katz Patent Portfolio long before this lawsuit was filed and, as they expressly concede, the patents collectively "have been before the PTO for more than twenty years." Opening Brief at 4. Yet the reexaminations of select claims in the seven patents-in-suit were not requested until late 2005 and 2006. Defendants should not be allowed to use belated, piecemeal reexamination requests to halt, likely for several years, all proceedings in this litigation.[9] This would not streamline the case; it would only delay it indefinitely and thwart judicial efficiency. This Court therefore should deny the Telecom Defendants' overreaching motion for a stay of all proceedings.

**B.     It Is Not Necessary To Stay The Entire Action Even If The Pending Reexaminations May Modify Or Eliminate A Limited Pool Of Claims**

**1.     The Reexaminations Only Encompass A Limited Number Of Claims In Seven Of The Twenty-Six Patents-In-Suit**

The second factor this Court considers in evaluating a request for a stay is whether the case will be simplified or streamlined as a result of the pending reexaminations. Because a limited number of claims are in reexamination (less than four percent of all claims in the patents-in-suit and almost half of these claims have been allowed in the reexamination), this action is not going to be simplified or streamlined in any meaningful fashion by the pending reexaminations. The Court will still need to manage and address the issues relating to infringement and damages as well as validity and enforcement issues for the vast majority of the claims in the patents-in-suit.

---

[9]     Although Katz Technology Licensing expects that this Court would readily see through such a tactic, if granted a stay pending completion of the current reexaminations, the Telecom Defendants could later try to extend the stay by filing further requests for reexamination. Nothing in the reexamination procedures would prevent seriatim reexamination requests.

The Telecom Defendants also suggest that there may be statements or findings during the reexaminations that may be relevant to claim construction for other claims and patents. The only concrete example they offer (*see* Opening Brief at 11 n.12), however, relates to terms that are non-controversial (*e.g.*, "communication facility" and "remote terminal") and that define background, but are not limitations. In any event, there are only a limited number of terms being reviewed and construed in the pending reexaminations.

Telecom Defendants' final argument is that the reexaminations may lead to relevant prosecution history that can be used during claim construction. It is true that a reexamination is part of the prosecution history. But it is noteworthy that the Telecom Defendants' sole example of Katz Technology Licensing supposedly changing its position on claim construction during reexamination (*see* Opening Brief at 16-17) is belied by the reexamination documents they cite.

Specifically, Telecom Defendants contend that Katz Technology Licensing changed its position on interpretation of "consumable participation key" and initially argued that a consumable participation key could be refreshed under certain circumstances. *Id.* at 17. The quoted document from Katz Technology Licensing, however, demonstrates just the opposite; there has been no change in position: "the term must be construed to mean a finite number of uses accorded to a caller in a defined or nonrecurring period of time that once consumed are not automatically refreshed." *See* Farnan Decl., Ex. 3 at 53. Moreover, during reexamination, the Examiner considered and then adopted the construction of the Court in the AT&T litigation—"'a number or word that allows the caller access to a service of part of a service a predefined limited number of times and **which cannot be refreshed or recharged.**" *Id.*, Ex. 4 at 4 (emphasis in original). The Examiner, referencing both the '707 and '309 reexaminations, noted that "[i]n each instance, Patent Owner argues a meaning consistent with the [AT&T] court." *Id.* at 5. Katz Technology Licensing did not abandon a prior construction and then adopt the Examiner's narrow construction during reexamination; it instead argued a definition consistent with the construction of the AT&T court that the Examiner then followed on reexamination. *Id.*

14

Unsupported speculation that Katz Technology Licensing might change its position during reexamination does not justify shutting down this litigation.

    **2.**    **Infringement, Damages, Validity And Enforceability Issues Will Remain In The Case Regardless Of The Reexamination Results**

Because the reexaminations here are very limited in scope, there is no doubt that this case will proceed to trial notwithstanding any possible outcome of the reexaminations. There is no efficiency to be gained by postponing activity in this case and delaying discovery. The reexaminations have no bearing on Katz Technology Licensing's need for discovery of defendants accused products and services. Similarly, the reexaminations have no bearing on the scope of discovery that the defendants need.

The scope of infringement and damages discovery is dictated by the defendants' products and services, and remains the same regardless of the particular claims that are at issue in the reexaminations. Indeed, Katz Technology Licensing would need *precisely the same* infringement and damages discovery even if every claim at issue in the reexaminations were removed from this case.[10] Moreover, once such discovery commences, the parties will be in a position to better frame their claims and defenses and focus on the key disputed issues that will need to be resolved. Discovery will greatly assist the parties, and ultimately the Court, in managing this multi-patent, multi-defendant litigation.

A stay is also of limited utility because the Court will have to address issues relating to validity and enforcement regardless of the results of the reexaminations. The Telecom Defendants have cited many of the prior art references raised on reexamination in their

---

[10]    Telecom Defendants state that "it is likely that asserted claims of some of the patents-in-suit will be cancelled, or amended such that discovery into certain of Defendants' accused devices would be irrelevant and wasteful." Opening Brief at 16-17. Claims cannot be amended in reexamination of an expired patent and most of patents in reexamination are expired. Moreover, the Telecom Defendants do not—because they cannot—specifically identify *any* such devices as to which discovery would be irrelevant based on cancellation or amendment of any claims in reexamination.

affirmative defenses and counterclaims.  Although the Court may benefit from the PTO's expertise in construction and in evaluating prior art, the case will not be materially simplified if the Telecom Defendants nonetheless contest the results from the PTO and take a "second bite at the apple."  Moreover, as discussed above, the vast majority of the claims are not subject to reexamination.

In addition, the Telecom Defendants have asserted invalidity and unenforceability defenses and counterclaims, complete with lengthy allegations about supposed inequitable conduct during prosecution of the patents-in-suit.  Those allegations will remain before this Court—they are not something the Examiner will consider or resolve during the reexaminations. After reexamination, the parties, and this Court, therefore "would be right back [in court] to litigate the claim that the patent[s] should not be enforced because of inequitable conduct." *Enprotech Corp. v. Autotech Corp.*, No. 88 C 4853, 1990 U.S. Dist. LEXIS 2926 (N.D. Ill. Mar. 15, 1990) (denying motion for stay).  *Cf. Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701-GMS, slip op. at 8 (D. Del. May 25, 2006) (denying motion to stay pending reexamination where "validity of the asserted patents will be litigated regardless of whether a stay is granted because that issue is relevant to Magma's Sherman Act claims.").  Since this Court is going to have to address these claims, and the related prior art, regardless of the reexaminations, it would not streamline the case to enter a stay pending completion of the reexaminations.

### C.    There Is No Reason To Stay All Discovery Or Other Proceedings

Discovery has not yet commenced in this action and no trial date has been set, but that does not favor a stay.  The case will still be going forward with regard to defendants' infringing systems and the claims and patents not in reexamination.  The Court therefore should allow the parties to go forward with discovery (which is likely to be time consuming in this multi-patent, multi-defendant litigation) and with other proceedings without further delay.  At a minimum, this Court should allow the parties to proceed with discovery relating to infringement and damages issues—those issues will remain in the case regardless of the reexamination results.

D.    **The Court Should Defer Ruling On This Motion Pending A Decision From The Judicial Panel On Multidistrict Litigation**

As noted above, one of the defendants in the Texas lawsuits has asked that the Texas and Delaware actions be consolidated and transferred.  On January 25, 2007, the JPML will hear that motion.  In the event that the parties have not received the decision on that motion by the time briefing closes on the Telecom Defendants' stay motion, Katz Technology Licensing asks that the Court defer ruling on the motion until after the JPML issues a decision.  It is Katz Technology Licensing's understanding that the JPML typically issues decisions two to three weeks after its bi-monthly panel hearings so that the parties should have a ruling shortly after defendants file their reply papers in this proceeding on February 7, 2007.

V.    **CONCLUSION**

For all of the foregoing reasons, Katz Technology respectfully requests that this Court deny defendants' motions to stay these proceedings pending reexamination of certain claims of certain patents by the USPTO and allow this action to proceed without further delay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)
Julia Heaney (#3052)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Ronald A. Katz Technology Licensing, L.P.*

OF COUNSEL:

Robert T. Haslam
Andrew C. Byrnes
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025-3506
650.324.7000

Michael K. Plimack
Dale A. Rice
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
415.772.6000

Dated:  January 17, 2007
677968

EXHIBIT A

AT&T News Release, 2000-11-09, AT&T Corp. Settles Patent Lawsuit with Ronald A. K...  Page 1 of 2

Case 1:06-cv-00544-GMS    Document 75-2    Filed 01/17/2007    Page 23 of 55



News Release

**FOR RELEASE THURSDAY, NOVEMBER 9, 2000**

# AT&T Corp. Settles Patent Lawsuit with Ronald A. Katz Technology Licensing, L.P. and Enters into License Agreement

BASKING RIDGE, N.J. -- AT&T Corp. and Ronald A. Katz Technology Licensing, L.P. (RAK) today announced the settlement of lengthy patent litigation between the parties. As part of that settlement, AT&T paid an undisclosed sum for a worldwide, nonexclusive license under a comprehensive portfolio of patents that RAK owns relating to interactive voice applications.

AT&T's license covers services it provides, including 1-800-CALL-AT&T; AT&T Calling Card Services, including prepaid calling services; teleconferencing services; True Messages; InfoWorx; automated service bureaus; automated call centers; AT&T Direct, and customer service. AT&T said it was pleased to resolve the litigation and obtain the license.

AT&T also obtained the right to enter into sublicensing agreements granting license rights to the RAK patents at substantial savings to business customers who provide some or all portions of their own services. Furthermore, when AT&T performs all of the patented functions for a business customer, that customer does not require an independent license from RAK.

The RAK portfolio includes 40 United States patents and more than 15 pending patent applications. The patents and pending applications relate to interactive and automated call-processing and computer telephony, including product/service support; customer service; credit card and calling card authorization; prepaid cards; service bureaus; home shopping; remote ordering; merchandising; promotions; registration; contests; lotteries; as well as securing information from databases; interactive cable transactions; and various other uses of 800, 900, and local numbers. The patents and applications are owned by RAK but were exclusively licensed to WorldCom, Inc. with respect to AT&T during the pendency of the litigation. WorldCom was also a plaintiff in the litigation and will retain license rights substantially similar to AT&T's rights.

"Considering AT&T's prominence in interactive call-processing, this license and significant settlement represent a powerful recognition of the scope and breadth of RAK's patent portfolio" said Ronald A. Katz, Chief Executive of RAK.

AT&T News Release, 2000-11-09, AT&T Corp. Settles Patent Lawsuit with Ronald A. K...   Page 2 of 2

Case 1:06-cv-00544-GMS     Document 75-2     Filed 01/17/2007     Page 24 of 55

About AT&T

## About AT&T

AT&T Corp. (www.att.com) is among the world's premier voice, video and data communications companies. With annual revenues of more than $62 billion, and 160,000 employees, AT&T provides services to customers worldwide.

Backed by the research and development capabilities of AT&T Labs, the company runs the world's largest, most sophisticated communications network and has one of the largest digital wireless networks in North America. The company is a leading supplier of data and Internet services for businesses and offers outsourcing, consulting and networking-integration to large businesses.

Through its recent cable acquisitions, AT&T delivers broadband video, voice and data services to customers throughout the United States. Internationally, Concert, the AT&T/BT Global Venture, serves the communications needs of multinational companies and international carriers worldwide.

## About RAK

The patent portfolio owned by RAK stems principally from pioneering work done in the field of interactive services, primarily by Ronald A. Katz, in the 1980's. The patents are widely licensed to a variety of firms, including American Express, First Data Corp., Sprint Corp., WorldCom, Home Shopping Network, The Gallup Organization, and a large number of companies offering interactive services.

Mr. Katz is the named inventor on over 50 patents primarily in the fields of telecommunications and computing. He formed Telecredit, Inc. the nation's first on-line real time credit and check cashing authorization system, and was awarded a patent as co-inventor of that technology.

AT&T 'Safe Harbor'

The foregoing contains 'forward-looking statements' which are based on management's beliefs as well as on a number of assumptions concerning future events made by and information currently available to management. Readers are cautioned not to put undue reliance on such forward-looking statements, which are not a guarantee of performance and are subject to a number of uncertainties and other factors, many of which are outside AT&T's control, that could cause actual results to differ materially from such statements. These risk factors include the impact of increasing competition, continued capacity oversupply, regulatory uncertainty and the effects of technological substitution, among other risks. For a more detailed description of the factors that could cause such a difference, please see AT&T's 10-K, 10-Q, 8-K and other filings with the Securities and Exchange Commission. AT&T disclaims any intention or obligation to update or revise any forward-looking statements, whether as a result of new information, future events or otherwise. This information is presented solely to provide additional information to further understand the results of AT&T.

Terms & Conditions     Privacy Policy     Contact Us
© 2007 AT&T Knowledge Ventures. All rights reserved.
AT&T is a registered trademark of AT&T Knowledge Ventures.
Hosted by AT&T.

EXHIBIT B

News Release

<u>For release on July 19th, 2004</u>

For further information:

For Verizon California

Sharon Cohen-Hagar
(972) 718-6205

For Ronald A. Katz Technology Licensing

Brian Rivette
(310) 247-8191
brivette@a2dlp.com

**Verizon California and its affiliates settle patent lawsuits with Ronald A. Katz Technology Licensing, L.P. and enter into license agreement**

Verizon California Inc. (Verizon California) and Ronald A. Katz Technology Licensing, L.P. (RAK) today announced the settlement of lengthy patent litigation between the parties. As part of that settlement, Verizon California paid an undisclosed sum for a nonexclusive license under a comprehensive portfolio of patents that RAK owns relating to interactive voice applications.

Verizon California's license covers services it and its affiliates provide, including calling card services and prepaid calling services; teleconferencing services; automated service bureaus; automated call centers; and customer service; but, like all other licenses under the RAK portfolio, does not authorize the sale, lease or other provision of any equipment.

The RAK portfolio includes 52 United States patents and 17 pending patent applications. According to RAK, the patents and pending applications relate to interactive and automated call-processing and computer telephony, including product/service support; customer service; credit card and calling card authorization; prepaid cards; service bureaus; home shopping; remote ordering; merchandising; promotion; registration; contests; lotteries; as well as securing information from databases; interactive cable transactions and various other uses of 800, 900 and local numbers.

"Considering Verizon California's and its affiliates' sophisticated call-processing systems, this license and significant settlement represent a powerful recognition of the scope and breadth of RAK's patent portfolio" said Ronald A. Katz, Chief Executive of RAK.

According to RAK, the patent portfolio owned by RAK stems principally from pioneering work done in the field of interactive services, primarily by Ronald A. Katz, in the 1980's. The patents are widely licensed to a variety of firms, including American Express, AT&T, First Data Corp., Home Shopping Network, IBM, Microsoft, Sprint Corp., The Gallup Organization, WorldCom, and a large number of companies offering interactive services.

EXHIBIT C

## -- News Release --

January 3rd, 2006

For further information:

| For Citigroup Inc. | For Ronald A. Katz Technology Licensing |
|---|---|
| Samuel Wang | Brian Rivette |
| Citigroup Global Consumer Group | (310) 247-8191 |
| 425 Park Avenue | brivette@a2dlp.com |
| New York, New York 10043 | |
| 212-559-0499 - phone | |

### Citigroup Inc. and Ronald A. Katz Technology Licensing, L.P. settle patent lawsuit and enter into license agreement.

Citigroup (NYSE: C) and Ronald A. Katz Technology Licensing, L.P. (RAK) today announced the settlement of patent litigation between the parties and that, as part of the settlement, Citigroup has agreed to pay an undisclosed sum for a nonexclusive license under a comprehensive portfolio of patents that RAK owns relating to interactive voice applications.

The license covers Citigroup's services in the "Financial Services Call Processing" and the "Automated Securities Transactions" Fields of Use.  These services are delivered through automated systems and live agents, including customer service provided to consumer and business accounts.  Other terms of the license were not disclosed.

"Considering Citigroup's sophisticated call-processing systems, this highly significant license represents a powerful recognition of the scope and breadth of the patent portfolio held by Ronald A. Katz Technology Licensing, L.P." said Ronald A. Katz, Chief Executive of RAK.

According to RAK, the patents and pending applications in the RAK portfolio relate to interactive and automated call-processing and computer telephony, including product/service support; customer service; credit card and calling card authorization; prepaid cards; service bureaus; home shopping; remote ordering; merchandising; promotion; registration; contests; lotteries; as well as securing information from databases; interactive cable transactions and various other uses of toll free and local numbers.

The patent portfolio owned by RAK stems principally from pioneering work done in the field of interactive services, primarily by Ronald A. Katz, in the 1980's.  The patents are widely licensed to a variety of firms, including Advanta Corp., American Century, American Express, AT&T Corp., Bank of America Corporation, First Data Corp., Household International, Inc., HSBC Bank USA, IBM, MCI Inc., Microsoft, Prudential

Financial, Inc., Sprint Corp., Verizon California and its affiliates, Wachovia Corporation, Wells Fargo & Company and a large number of other companies offering interactive services.

Citigroup (NYSE: C), the leading global financial services company, has some 200 million customer accounts and does business in more than 100 countries, providing consumers, corporations, governments and institutions with a broad range of financial products and services, including consumer banking and credit, corporate and investment banking, securities brokerage, and asset management. Major brand names under Citigroup's trademark red umbrella include Citibank, CitiFinancial, Primerica, Smith Barney and Banamex. Additional information may be found at www.citigroup.com

EXHIBIT D



## UNITED STATES PATENT AND TRADEMARK OFFICE

GENERAL COUNSEL

AUG 16 2006

Ms. Brenda Pomerance
Law Office of Brenda Pomerance
260 West 52d Street, Suite 27B
New York, NY 10019

      Re: Freedom of Information Act (FOIA) Request No. 06-261

Dear Ms. Pomerance:

The Office of the General Counsel received your e-mail of June 12, 2006, requesting, under the Freedom of Information Act (5 U.S.C. § 552) a copy of:

"[t]angible communications relating to the Katz Reexam Patens with one of PTO Personnel and Member of the Public as an Originator of the Communication and the other of PTO Personnel and Members of the Public as a receiver of the communication."

The United States Patent and Trademark Office (USPTO) identified 19 pages of documents that are responsive to your request and are releaseable. A copy of the material is enclosed.

Since the cost of processing this request was below chargeable minima, associated processing fees are hereby waived.

Sincerely,

Robert Fawcett
FOIA Officer

JEFF SESSIONS
ALABAMA

COMMITTEES:
ARMED SERVICES
JUDICIARY
HEALTH, EDUCATION, LABOR, AND PENSIONS
BUDGET
JOINT ECONOMIC

# United States Senate

WASHINGTON, DC 20510–0104

February 9, 2004

Mr. Jon Dudas
Under Secretary of Commerce For Intellectual Property and
Director of the United States Patent and Trademark Office
2121 Crystal City Drive, Suite 906
Arlington, VA 22202

Dear Mr. Dudas:

We have communicated with the Patent Office over the past several months regarding the reexamination of sixteen patents that are part of a larger patent portfolio owned by Mr. Ronald A. Katz.

As you know, your office currently possesses a significant number of technical publications and articles that seem to indicate Mr. Katz was not the person responsible for inventing some or all of the technology claimed in the issued patents. In fact, in December, 2003, the United States District Court for the Central District of California issued an opinion in *Verizon California, Inc. v. Katz Technology*, that invalidated several of the Katz patent claim.

We want to emphasize the seriousness of the situation and to ask that the Patent Office work to address this matter according to its congressional mandate. Mr. Katz is currently threatening numerous companies – many in the financial services industry – with patent infringement suits that will cost millions to defend – or, should a company agree to enter into a license agreement with Mr. Katz, raise the cost of services to consumers well in excess of one billion dollars. Even more troublesome is the prospect that some companies would move their customer service operations (which uses some of the technology described in the Katz patents) overseas, resulting in the loss of thousands of jobs here at home. These are not acceptable options given the questions concerning the validity of the patents.

In light of the impact of these patents on the American consumer, the cost to industry and the potential loss of domestic jobs, we believe the USPTO should take a second look at the patents through a <u>Director ordered reexamination proceeding</u>. While we understand that your office has indicated that companies should approach the Patent Office through a third party reexamination proceeding, we ask that you be sensitive to the fact that this issue is not isolated to any one company or coalition of

9601
3/3/04

Mr. Jon Dudas
Under Secretary of Commerce For Intellectual Property and
Director of the United States Patent and Trademark Office
February 9, 2004
Page 2

companies.  The Patent Office, having issued these patents, has a responsibility to
ensure their legitimacy and to uphold the integrity of our patent laws.

We look forward to hearing your response to this matter.

Sincerely,



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAR  8 2004

The Honorable Jeff Sessions
United States Senate
Washington, D.C.  20510-0104

Dear Senator Sessions:

Thank you for your co-signed letter regarding your concerns about sixteen patents, related to call center technology, assigned to Ronald Katz Technology Licensing.   We at the United States Patent and Trademark Office (USPTO) appreciate hearing from you.

In your letter, you state several concerns about these patents, including their validity, their potential impact on the American consumer, the cost to industry, and the potential loss of domestic jobs.  Second, you request that we consider ordering a Director-initiated reexamination of the patents in question to verify their validity.

As you know, Congress plays a vitally important role in developing America's patent law and policies -- dating back to the first Patent Act, which was enacted in 1790.  Moreover, patents are an essential part of our heritage and are rooted in our Constitution (Article 1, clause 8, section 8).  The U.S. patent system has been a key catalyst for spurring economic development and technological innovation throughout our Nation's history.  At the same time, the innovations it has fostered have improved the American people's standard of living and quality of life, while creating jobs and economic security.

While Director-ordered Reexaminations are permitted under the Patent Act (35 U.S.C. §§ 301, 304 *et seq.*), the statute permits only a limited scope of prior art material submitted by the public to be reviewed and considered by the Office.  The USPTO is in receipt of a prior art submission under 37 C.F.R. § 1.501 for each of the call center technology patents in question.

Pursuant to established handling procedures under 37 C.F.R. § 1.501, we are currently reviewing the prior art submissions for the patents in question to determine whether the patent operation will recommend the Director to initiate reexamination of any of the patents.  This review is taking a considerable amount of time due to the number of patents in question and the amount of prior art involved.  Please be assured, however, that the USPTO is working toward completing this review as quickly and accurately as possible.

2

We hope this information will be useful in responding to your constituents.  If you require any additional information, please do not hesitate to contact our office.

Sincerely,

Chris J. Katopis
Director of Congressional Relations



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAR  8 2004

The Honorable Trent Lott
United States Senate
Washington, D.C.  20510-2403

Dear Senator Lott:

Thank you for your co-signed letter regarding your concerns about sixteen patents, related to call center technology, assigned to Ronald Katz Technology Licensing.   We at the United States Patent and Trademark Office (USPTO) appreciate hearing from you.

In your letter, you state several concerns about these patents, including their validity, their potential impact on the American consumer, the cost to industry, and the potential loss of domestic jobs.  Second, you request that we consider ordering a Director-initiated reexamination of the patents in question to verify their validity.

As you know, Congress plays a vitally important role in developing America's patent law and policies -- dating back to the first Patent Act, which was enacted in 1790.  Moreover, patents are an essential part of our heritage and are rooted in our Constitution (Article 1, clause 8, section 8). The U.S. patent system has been a key catalyst for spurring economic development and technological innovation throughout our Nation's history.  At the same time, the innovations it has fostered have improved the American people's standard of living and quality of life, while creating jobs and economic security.

While Director-ordered Reexaminations are permitted under the Patent Act (35 U.S.C. §§ 301, 304 *et seq.*), the statute permits only a limited scope of prior art material submitted by the public to be reviewed and considered by the Office.  The USPTO is in receipt of a prior art submission under 37 C.F.R. § 1.501 for each of the call center technology patents in question.

Pursuant to established handling procedures under 37 C.F.R. § 1.501, we are currently reviewing the prior art submissions for the patents in question to determine whether the patent operation will recommend the Director to initiate reexamination of any of the patents.  This review is taking a considerable amount of time due to the number of patents in question and the amount of prior art involved.  Please be assured, however, that the USPTO is working toward completing this review as quickly and accurately as possible.

2

We hope this information will be useful in responding to your constituents.  If you require any additional information, please do not hesitate to contact our office.

Sincerely,

Chris J. Katopis
Director of Congressional Relations

Prepared by J.Cooksey/3/4/04
 Based on folder 9556
Folder 9601
C : Under Sec. / Cong.Lia.

02/09/2004 16:21 FAX 202 225 2082          S. BACHUS          ☒001

# Congress of the United States
## House of Representatives
### Washington, DC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CONGRESSMAN SPENCER BACHUS
## SIXTH DISTRICT, ALABAMA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO: _Under Secretary Jon Dudas_

FROM: _Congressman Spencer Bachus_

DATE: _2/9/04_

FAX #: _703-305-0440_

SUBJECT: _____

NUMBER OF PAGES: _3_

442 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515

PHONE:  (202) 225-4921
FAX:  (202) 225-2082

PRINTED ON RECYCLED PAPER

SPENCER BACHUS
6TH DISTRICT, ALABAMA

COMMITTEES:
FINANCIAL SERVICES
CHAIRMAN, SUBCOMMITTEE ON FINANCIAL
INSTITUTIONS AND CONSUMER CREDIT

TRANSPORTATION AND
INFRASTRUCTURE

JUDICIARY

442 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-4921

1900 INTERNATIONAL PARK DRIVE
SUITE 107
BIRMINGHAM, AL 35243
(205) 969-2296

NORTHPORT CIVIC CENTER
3500 McFARLAND BOULEVARD
P.O. DRAWER 569
NORTHPORT, AL 35476
(205) 333-9894

703 SECOND AVENUE NORTH
P.O. BOX 502
CLANTON, AL 35045
(205) 280-6704
http://www.house.gov/bachus

# Congress of the United States
## House of Representatives
## Washington, DC

February 6, 2004

Mr. Jon Dudas
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office
212 Crystal City Drive
Suite 906
Arlington, Virginia  22202

Dear Mr. Dudas:

We are writing to express our concerns regarding sixteen patents, related to call center technology, that are part of a larger patent portfolio assigned to Ronald Katz Technology Licensing.

As you are aware, there exists a significant number of technical publications and articles that seem to indicate Mr. Katz was not the person responsible for inventing some or all of the technology claimed in the issued patents.  In fact, in December, 2003, the United States District Court for the Central District of California issued an opinion that invalidated several of the claims in these same patents.  Based on this information we request that your office consider ordering a Director initiated  reexamination of the patents in question to verify their validity.

This is a serious situation and we ask that the Patent Office work to address this matter according to its congressional mandate.  Mr. Katz is currently threatening numerous companies – many in the financial services industry – with patent infringement suits that will cost millions to defend – or, should a company agree to enter into a license agreement with Mr. Katz, raise the cost of services to consumers well in excess of one billion dollars.  Even more troublesome is the prospect that some companies would move their customer service operations (which use some of the technology described in the Katz patents) overseas, resulting in the loss of thousands of jobs here at home.  These are not acceptable options given the questions concerning the validity of the patents.

In light of the impact of these patents on the American consumer, the cost to industry and the potential loss of domestic jobs, we request you strongly consider a Director ordered reexamination proceeding.  While we understand that your office has indicated that companies should approach the Patent Office through a third party reexamination proceeding, we ask that

Case 1:00-cv-00544-GMS     Document 78-2     Filed 01/17/2007     Page 41 of 55

Page 2
February 6, 2004

you be sensitive to the fact that this issue is not isolated to any one company or coalition of companies. The Patent Office, having issued these patents, has a responsibility to ensure their legitimacy and to uphold the integrity of our patent laws. .

    We look forward to hearing your response to this matter.

      Sincerely,

Spencer Bachus
Member of Congress

Melissa A. Hart
Member of Congress

STB:jc



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAR  8 2004

The Honorable Spencer Bachus
U.S. House of Representatives
Washington, D.C. 20515

Dear Representative Bachus:

Thank you for your co-signed letter regarding your concerns about sixteen patents, related to call center technology, assigned to Ronald Katz Technology Licensing.   We at the United States Patent and Trademark Office (USPTO) appreciate hearing from you.

In your letter, you state several concerns about these patents, including their validity, their potential impact on the American consumer, the cost to industry, and the potential loss of domestic jobs.  Second, you request that we consider ordering a Director-initiated reexamination of the patents in question to verify their validity.

As you know, Congress plays a vitally important role in developing America's patent law and policies -- dating back to the first Patent Act, which was enacted in 1790.  Moreover, patents are an essential part of our heritage and are rooted in our Constitution (Article 1, clause 8, section 8). The U.S. patent system has been a key catalyst for spurring economic development and technological innovation throughout our Nation's history.  At the same time, the innovations it has fostered have improved the American people's standard of living and quality of life, while creating jobs and economic security.

While Director-ordered Reexaminations are permitted under the Patent Act (35 U.S.C. §§ 301, 304 *et seq.*), the statute permits only a limited scope of prior art material submitted by the public to be reviewed and considered by the Office.  The USPTO is in receipt of a prior art submission under 37 C.F.R. § 1.501 for each of the call center technology patents in question.

Pursuant to established handling procedures under 37 C.F.R. § 1.501, we are currently reviewing the prior art submissions for the patents in question to determine whether the patent operation will recommend the Director to initiate reexamination of any of the patents.  This review is taking a considerable amount of time due to the number of patents in question and the amount of prior art involved.  Please be assured, however, that the USPTO is working toward completing this review as quickly and accurately as possible.

2

We hope this information will be useful in responding to your constituents.  If you require any additional information, please do not hesitate to contact our office.

Sincerely,

Chris J. Katopis
Director of Congressional Relations

**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAR  8 2004

The Honorable Melissa A. Hart
U.S. House of Representatives
Washington, D.C.  20515

Dear Representative Hart:

Thank you for your co-signed letter regarding your concerns about sixteen patents, related to call center technology, assigned to Ronald Katz Technology Licensing.   We at the United States Patent and Trademark Office (USPTO) appreciate hearing from you.

In your letter, you state several concerns about these patents, including their validity, their potential impact on the American consumer, the cost to industry, and the potential loss of domestic jobs.  Second, you request that we consider ordering a Director-initiated reexamination of the patents in question to verify their validity.

As you know, Congress plays a vitally important role in developing America's patent law and policies -- dating back to the first Patent Act, which was enacted in 1790.  Moreover, patents are an essential part of our heritage and are rooted in our Constitution (Article 1, clause 8, section 8).  The U.S. patent system has been a key catalyst for spurring economic development and technological innovation throughout our Nation's history.  At the same time, the innovations it has fostered have improved the American people's standard of living and quality of life, while creating jobs and economic security.

While Director-ordered Reexaminations are permitted under the Patent Act (35 U.S.C. §§ 301, 304 *et seq.*), the statute permits only a limited scope of prior art material submitted by the public to be reviewed and considered by the Office.  The USPTO is in receipt of a prior art submission under 37 C.F.R. § 1.501 for each of the call center technology patents in question.

Pursuant to established handling procedures under 37 C.F.R. § 1.501, we are currently reviewing the prior art submissions for the patents in question to determine whether the patent operation will recommend the Director to initiate reexamination of any of the patents.  This review is taking a considerable amount of time due to the number of patents in question and the amount of prior art involved.  Please be assured, however, that the USPTO is working toward completing this review as quickly and accurately as possible.

2

We hope this information will be useful in responding to your constituents.  If you require any additional information, please do not hesitate to contact our office.

Sincerely,

Chris J. Katopis
Director of Congressional Relations

Prepared by R.Spar/Bahr/Kunin/Patents
Revised by C.Katopis & T.Preston
Edited by J.Cooksey/2/19/04
Revised per C.Katopis/E.Meltzer/3/4/04
Folder 9556
C  :  Under Sec. / Cong.Lia.



## Senate Judiciary Committee
### Subcommittee on Administrative Oversight and the Courts
### Senator Jeff Sessions, Chairman
Phone: (202)224-7572   Fax: (202)228-0545

To: *Director Rogan*

Fax Number: *703-305-8664*

From: *Senator Jeff Sessions*

Phone:

Date: *3-25-03*

Pages (including cover sheet): *3*

Comments: *Response Requested*

JEFF SESSIONS
   ALABAMA

COMMITTEES:
ARMED SERVICES
JUDICIARY
HEALTH, EDUCATION, LABOR, AND PENSIONS
BUDGET
JOINT ECONOMIC

# United States Senate

WASHINGTON, DC 20510–0104

March 24, 2003

Mr. James E. Rogan
Director
United States Patent and Trademark Office
2121 Crystal City Drive
Suite 906
Arlington, Virginia 22202

Dear Mr. Rogan:

I am concerned that businesses across the country, including business owned by my constituents in Alabama and businesses in a broad range industries, may each be paying tens of millions of dollars because of approximately 50 patents that may have been issued without proper examination by the U.S. Patent and Trademark Office. The patents I am concerned with, referred to as the Katz Patent Portfolio, were issued to Ronald A. Katz and cover telephone call center technology.

I know that the U.S. Patent and Trademark Office usually only has about 14 hours to examine each patent application, and that the thousands of pages submitted with the Katz patent applications likely made those reviews a daunting task. It has come to my attention that many of the patents issued contain duplicative technological descriptions, which causes me legitimate concern. (Please see the enclosure that highlights duplicative language in three of the Katz patents.)

It is my understanding that the Patent Office may be initiating a reexamination of the Katz Patent Portfolio. As you know, Congress recently broadened the type of materials that can be considered in a reexamination to correct a mistake. Congress recognized that, in view of the resources that are available to the Patent Office and the sheer extent and complexity of some patents, reexaminations may be necessary in order to correct mistakes, and it broadened the scope of the Patent Office's ability to consider materials in connection with such reviews.

In view of the potential effect of these patents on the businesses cited above, and the expanded scope of the reexamination of the Katz Patent Portfolio, I am respectfully requesting that your office inform me if the Patent and Trademark Office is indeed considering initiating a reexamination of the Katz Patent Portfolio. If you believe that such a reexamination is indeed on the horizon, when do you believe this reexamination will occur? Your prompt reply to this matter is greatly appreciated.

March 24, 2003
Page 2

      If I am unavailable, my legislative counsel, Cindy Barnes at 202-224-5368, will be able to assist you with any questions you may have regarding my inquiry.

                         Very truly yours,

                         Jeff Sessions
                         United States Senator

JS:baa



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Under Secretary of Commerce For Intellectual Property and
Director of the United States Patent and Trademark Office
Washington, DC  20231
www.uspto.gov

The Honorable Jeff Sessions
United States Senate
Washington, D.C.  20510-0104

APR  2   2003

Attention:  Cindy Barnes

Dear Senator Sessions:

Thank you for your letter regarding the patent portfolio of Ronald A. Katz, and requesting information as to whether or not the United States Patent and Trademark Office (USPTO) may be initiating a reexamination of any of Mr. Katz' patents.

As you know, the reexamination statute and rules permit any person to file a request for reexamination by the USPTO of any claim of a patent on the basis of prior art cited under the provisions of 35 U.S.C. § 301.  If the cited prior art raises a "substantial new question of patentability," (35 U.S.C. § 303(a)) reexamination will be ordered.

To date, the USPTO has not received a request for reexamination related to any of Mr. Katz' patents.  No reexamination of any of the patents in the Katz patent portfolio is currently planned.  Should the USPTO receive such a request for reexamination, we will of course handle it as expeditiously as possible.

We hope this information is helpful.

Sincerely,

Chris J. Katopis
Deputy Administrator for External Affairs

EXHIBIT E

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
UNDER SECRETARY OF COMMERCE AND
DIRECTOR OF THE U.S. PATENT AND TRADEMARK
OFFICE
Washington, D.C. 20231

Patent No. *5,259,023*                    Paper No. *27*

## NOTICE OF DIRECTOR ORDERED REEXAMINATION

Notice is hereby given that reexamination of U.S. Patent No. *5,259,023*

was ordered on *MARCH 26, 2004* at the Director's initiative under

35 U.S.C. 303(a) and 37 CFR 1.520. The reexamination proceeding has been assigned

Control No. 90/ *006,977* .

This Notice incorporates by reference into the <u>patent file</u>, all papers entered into the

reexamination file.

**Note: This Notice should be *entered* into the <u>patent file</u> and *given* a paper number.**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
UNDER SECRETARY OF COMMERCE AND
DIRECTOR OF THE U.S. PATENT AND TRADEMARK
OFFICE
Washington, D.C. 20231

Patent No. *5,255,309*                    Paper No. *21*


# NOTICE OF DIRECTOR ORDERED REEXAMINATION


Notice is hereby given that reexamination of U.S. Patent No. *5,255,309*

was ordered on *MARCH 26, 2004* at the Director's initiative under

35 U.S.C. 303(a) and 37 CFR 1.520.  The reexamination proceeding has been assigned

Control No. 90/ *006,976* .


This Notice incorporates by reference into the patent file, all papers entered into the

reexamination file.


**Note: This Notice should be *entered* into the patent file and *given* a paper number.**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
UNDER SECRETARY OF COMMERCE AND
DIRECTOR OF THE U.S. PATENT AND TRADEMARK
OFFICE
Washington, D.C. 20231

Patent No. *6,292,547*

Paper No. *26*

# NOTICE OF DIRECTOR ORDERED REEXAMINATION

Notice is hereby given that reexamination of U.S. Patent No. *6,292,547*

was ordered on *MARCH 26, 2004* at the Director's initiative under

35 U.S.C. 303(a) and 37 CFR 1.520. The reexamination proceeding has been assigned

Control No. 90/*006,979* .

This Notice incorporates by reference into the <u>patent file</u>, all papers entered into the

reexamination file.

**Note: This Notice should be *entered* into the <u>patent file</u> and *given* a paper number.**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
UNDER SECRETARY OF COMMERCE AND
DIRECTOR OF THE U.S. PATENT AND TRADEMARK
OFFICE
Washington, D.C. 20231

Patent No. _5,561,707_          Paper No. _41_

# NOTICE OF DIRECTOR ORDERED REEXAMINATION

Notice is hereby given that reexamination of U.S. Patent No. _5,561,707_

was ordered on _MARCH 26, 2004_ at the Director's initiative under

35 U.S.C. 303(a) and 37 CFR 1.520.  The reexamination proceeding has been assigned

Control No. 90/ _006,978_ .

This Notice incorporates by reference into the patent file, all papers entered into the

reexamination file.

Note: This Notice should be *entered* into the patent file and *given* a paper number.